**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| **HARLEYSVILLE PREFERRED INSURANCE COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Action No. CV-2020-340-TFM-B** |
| **v.** | ) ) | |
| **INTERNATIONAL PAPER CO., JRD CONTRACTING & LAND CLEARING, INC., JOHN R. DAILEY SR., and JRD CONTRACTING, INC.,** | ) ) ) ) ) | |
| **Defendants.** | ) ) | |

---

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS**

---

William E. Shreve, Jr.
J. Breanne S. Zarzour
**PHELPS DUNBAR, LLP**
P.O. Box 2727
Mobile, AL  36652
251-432-4481
william.shreve@phelps.com
brie.zarzour@phelps.com

Christina M. Bolin
Edgar M. Elliott, IV
**CHRISTIAN & SMALL LLP**
505 North 20th St., Ste. 1800
Birmingham, AL  35203
(205) 785-6588
cmbolin@csattorneys.com
emelliott@csattorneys.com

**ATTORNEYS FOR PLAINTIFF**

**HARLEYSVILLE PREFERRED INSURANCE COMPANY**

## TABLE OF CONTENTS

STANDARD FOR JUDGMENT ON THE PLEADINGS, DOCUMENTS THAT MAY BE CONSIDERED, AND CHOICE OF LAW……………………….2

FACTS……………………….3

ARGUMENT……………………….7

I.      HARLEYSVILLE HAS NO DUTY TO DEFEND OR INDEMNIFY IP AS AN ADDITIONAL INSURED AGAINST THE ALABAMA ACTION……………………….7

        A.      Harleysville has no duty to defend IP……………………….7

                1.      The Pollution Exclusion bars coverage for the Alabama action……………9

                2.      IP's and Land Clearing's breaches of the Policies' notice conditions also bar coverage for the Alabama action……………………….17

                3.      IP was neither entitled to policy delivery nor prejudiced by non-delivery……………………….20

        B.      Harleysville has no duty to indemnify IP……………………….24

II.     HARLEYSVILLE DOES NOT OWE COVERAGE TO LAND CLEARING OR IP FOR THE TENNESSEE ACTION AND JUDGMENT……………………….24

        A.      The Pollution Exclusion bars coverage for the Tennessee action and judgment….26

        B.      Land Clearing's breaches of the Policies' notice conditions also bar coverage for the Tennessee action and judgment……………………….27

III.    IP HAS NO BAD-FAITH CLAIM AGAINST HARLEYSVILLE……………………….28

        A.      IP has no bad-faith claim for Harleysville's denying coverage to IP, as an additional insured, for the Alabama action……………………….29

        B.      IP has no bad-faith claim for Harleysville's denying coverage for the Tennessee action and judgment……………………….31

CONCLUSION……………………….33

Plaintiff Harleysville Preferred Insurance Company (**"Harleysville"**) issued commercial general liability insurance policies (**"Policies"**) to Defendant JRD Contracting & Land Clearing, Inc. (**"Land Clearing"**).  The Policies contain endorsements under which Defendant International Paper Co. (**"IP"**) qualifies as an additional insured to the extent described in the endorsements.

Harleysville seeks a declaratory judgment that (1) Harleysville does not owe coverage to IP for the claims in <u>John R. Dailey Sr. and JRD Contracting, Inc. v. International Paper Co.</u>, pending in Wilcox County Circuit Court (**"Alabama action"**), in which the Plaintiffs allege they allowed a waste produced by IP's mill, called Organo-Ash, to be deposited on their property because IP did not advise them and they did not know that Organo-Ash was a harmful contaminant; and (2) Harleysville does not owe coverage to Land Clearing for the claims in <u>International Paper Co. v. JRD Contracting & Land Clearing, Inc.</u>, filed in federal court in Tennessee (**"Tennessee action"**), in which IP alleges that its contractor Land Clearing deposited the Organo-Ash on the Plaintiffs' property and that Land Clearing owes IP contractual indemnity for the Alabama action. IP obtained a default judgment against Land Clearing in the Tennessee action.

IP has counterclaimed against Harleysville.  Count I asks for a declaratory judgment that Harleysville owes coverage for the Alabama action, Count II alleges that Harleysville breached the Policies by denying coverage, and Count III avers that Harleysville denied coverage in bad faith.  Count IV asks for a declaratory judgment that Harleysville owes Land Clearing coverage for the Tennessee action and that Harleysville must therefore fulfill Land Clearing's contractual-indemnity obligation to its judgment creditor IP by providing IP a defense and indemnity for the Alabama action; Count V claims that Harleysville breached the Policies by denying IP, as Land Clearing's judgment creditor, a defense and indemnity for the Alabama action; and Count VI asserts that Harleysville denied such defense and indemnity in bad faith.

Harleysville is entitled to judgment on the pleadings on its claims and on all of IP's counterclaims. The Policies' Pollution Exclusion bars coverage for the Alabama action, as well as for the Tennessee action and judgment, and IP's and Land Clearing's breaches of the Policies' notice conditions also bar coverage for both actions.

<u>STANDARD FOR JUDGMENT ON THE PLEADINGS,<br>DOCUMENTS THAT MAY BE CONSIDERED, AND CHOICE OF LAW</u>

"Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." <u>Douglas Asphalt Co. v. Qore, Inc.,</u> 541 F.3d 1269, 1273 (11th Cir. 2008). The court may consider documents attached to the pleadings, <u>see Yeager v. Ocwen Loan Serv., LLC,</u> 237 F. Supp. 3d 1211, 1215 (M.D. Ala. 2017); documents in support of the motion that are central to the pleader's claim and whose authenticity is undisputed, <u>see Perez v. Wells Fargo N.A.,</u> 774 F.3d 1329, 1340 n.12 (11th Cir. 2014); and public records, <u>see Universal Express, Inc. v. SEC,</u> 177 Fed. Appx. 52, 53-54 (11th Cir. 2006). The documents cited herein fall within these categories.[1]

In diversity cases, "the choice-of-law rules of the forum state determine which state's

---

[1] These documents are: **(1) Policies (Docs. 1-1, 1-2, & 1-3)** – attached to complaint, referenced in and central to Harleysville's claim and IP's counterclaim; **(2) complaints in Alabama and Tennessee actions (Docs. 1-4, 39-2, 20-3)** – public records, referenced in and central to claim and counterclaim; **(3) judgment for IP in Tennessee action (Doc. 28-2)** – public record, referenced in and central to claim and counterclaim (Doc. 33 at ¶¶ 40-42, 63, 71, 76); **(4) deposition testimony of Dailey Sr. (Doc. 1-5)** – attached to complaint, referenced in and central to claim and counterclaim (Doc. 1 at ¶¶ 32, 41, 43, 45; Doc. 33 at ¶ 21, 48f., 53f.); **(5) Waste Services Agreement (Doc. 9)** – public record (attached to Tennessee complaint [Doc. 20-3, PageID.855, 862]), referenced in and central to claim and counterclaim (Doc. 1 at ¶¶ 14, 38, 53, 59-67, 70, 72, 73, 75; Doc. 33 at ¶¶ 5-8, 17, 23, 40-43, 48f. & 48g., 53f., 53g., 58); **(6) Harleysville's 5/15/2020 letter to IP's counsel (Doc. 39-3)** – referenced in and central to counterclaim (Doc. 33 at ¶¶ 34-36, 47, 48, 53, 66, 72, 73); **(7) IP's counsel's 6/4/2020 letter to Harleysville (Doc. 39-4)** – referenced in and central to counterclaim (Doc. 33 at ¶¶ 37, 38, 58, 76); **(8) IP's notice of removal in Alabama action (Doc. 39-1)** – public record, central to claim (shows date IP served with complaint) (Doc. 1, PageID.17 [¶ 50]). The authenticity of these is undisputed.

substantive law applies," and under Alabama's rules, "the law of the state where the insurance policy was delivered to the insured controls the interpretation of the insurance contract." Travelers Indem. Co. v. General Star Indem. Co., 157 F. Supp. 2d 1273, 1285 (S.D. Ala. 2001). The Policies were delivered to Land Clearing in Alabama (Doc. 1-1, PageID.47; Doc. 1-2, PageID.200; Doc. 1-3, PageID.352), so Alabama law applies.

FACTS

This statement of facts is based on (1) Harleysville's allegations that IP has admitted (the other Defendants, in default (Docs. 27 & 38), have admitted all well-pleaded factual allegations), (2) allegations in IP's counterclaim, and (3) facts shown by documents the Court may consider.

Harleysville issued commercial general liability (CGL) policies to Land Clearing for policy periods that include August 31, 2015 through August 31, 2018 (**"Policies"**) (Doc. 1-1, PageID.47; Doc. 1-2, PageID.200; Doc. 1-3, PageID.352). The Policies exclude coverage for injury or damage arising out of pollution (Doc. 1-1, PageID.65; Doc. 1-2, PageID.218; Doc. 1-3, PageID.370). The policies also require notice of an "occurrence" that might result in a claim, and of an actual claim or suit, "as soon as practicable," and require "immediate[]" forwarding of suit papers to Harleysville (Doc. 1-1, PageID.72-73; Doc. 1-2, PageID.225-26; Doc. 1-3, PageID.377-78).

IP's paper mill in Pine Hill, Alabama generates a waste called Organo-Ash, consisting of "[w]ood and coal ash generated from two power boilers, wood fiber from two paper machines, process waste (lime mud, grit, and dregs material) from the lime kiln, and OOC waste from the paper recycling plant" (Doc. 9, PageID.586, 600, 601 [¶ 1.0], 607-09). In June 2016, IP and Land Clearing entered into a "Waste Services Agreement," wherein Land Clearing agreed "to provide certain waste handling and disposal services" including "hauling organo from the ash ponds" and "transporting [it] to…designated land application sites" (Doc. 9, PageID.586, 601 [¶ 2.0], 605).

Land Clearing agreed to defend and indemnify IP against any claim arising out of "the performance by [Land Clearing]…of this Agreement" (Doc. 9, PageID.591-92 [Art. 16, ¶ 6]).  Land Clearing also agreed to maintain workers' compensation, employer's liability, CGL, automobile liability, and contractor's pollution liability insurance, and to "make IP an additional insured on" the CGL, automobile, and contractor's pollution liability policies (id., PageID.590-91 [Art. 16, ¶¶ 1 & 4]).

Harleysville's CGL Policies do not list IP by name as an additional insured, but include endorsements automatically adding "any person or organization for whom you [Land Clearing] are performing operations…as specified under a written contract…that requires that such person or organization be added as an additional insured"; provided, however, that "[s]uch person or organization is an additional insured only with respect to liability caused…by [Land Clearing's] acts or omissions" in the performance of work "only as specified in the [contract]" (Doc. 1-1, PageID.104, 106; Doc. 1-2, PageID.257, 259; Doc. 1-3, PageID.410, 412).  Since Land Clearing performed operations for IP under the Waste Services Agreement, and since that agreement required that Land Clearing make IP an additional insured on Land Clearing's CGL insurance, IP is an additional insured under the Policies to the extent described in the endorsements.

John R. Dailey Jr. was Land Clearing's president, and he was also the sole shareholder of and operated JRD Contracting, Inc. (**"JRD"**) (Doc. 1-5, PageID.523 [pp. 11-12], 531-32 [pp. 41, 46]; Doc. 20-3, PageID.858 n.1).  The Policies list JRD in the "Named Insured Schedule" (though incorrectly as "JRD Contracting Company, Inc.") (Doc. 1-1, PageID.50;  Doc. 1-2, PageID.203; Doc. 1-3, PageID.355; Doc. 33, PageID.1051 [¶ 42]).

JRD and John R. Dailey **Sr.** owned property in Wilcox County on which Dailey Sr. had a maintenance shop (Doc. 1-4, PageID.504-08; Doc. 1-5, PageID.525 [pp. 17-20], 531 [pp. 41-42]).  Land Clearing brought its dump trucks to the maintenance shop for repair when the trucks' bed-

4

lift mechanisms failed (Doc. 1-5, PageID.525-26 [pp. 19-21], 537 [p. 68]).   The truck beds sometimes contained Organo-Ash and had to be emptied before repair (Doc. 1-5, PageID.525-26 [pp. 20-21], 537 [p. 68]).   Land Clearing used an excavator located at JRD and Dailey Sr.'s property to remove Organo-Ash from the truck beds and deposit it in a "stockpile" on that property (Doc. 1-5, PageID.525-26 [pp. 20-21], 531-32 [pp. 43, 45], 537-38 [pp. 68-69, 71]).

On May 18, 2018, JRD and Dailey Sr. sued IP in state court (**"Alabama action"**), alleging that "Organo-Ash…was deposited on Plaintiffs' property"; that "Organo-Ash…contains harmful materials, substances, and/or toxins, including metallic elements, and these contaminants have damaged the land and soil"; and that IP did not advise JRD and Dailey Sr., and they did not know, that Organo-Ash "contained harmful materials and substances" and "was not safe for the land or environment" (Doc. 1-4, PageID.503, 510, 513 [¶¶ 15, 17, 26, 27]).   The complaint includes claims for negligence, misrepresentation, suppression, nuisance, trespass, and wantonness; seeks compensatory damages for "[p]roperty damage" and "[e]motional distress and mental anguish"; and demands punitive damages (Doc. 1-4, PageID.510-18).   JRD and Dailey Sr. filed an amended complaint adding a claim for a declaratory judgment that the provisions of an Organo-Ash Utilization Agreement signed by Dailey Sr. but pertaining to other property does not exculpate IP from liability (Doc. 39-2, PageID.1107, 1121-28).   IP alleges it is an additional insured for the Alabama action "because [JRD and Dailey Sr.'s] injuries arose out of…Land Clearing's conduct as necessitated by the [Waste] Services Agreement" (Doc. 33, PageID.1070 [¶ 48g.]).[2]

On February 14, 2020, IP sued Land Clearing in federal court in Tennessee (**"Tennessee**

---

[2]   Harleysville contends that the Alabama action is outside the scope of additional-insured coverage for IP (Doc. 1, PageID.18-19 [¶¶ 51-53]), but for purposes of this motion, will assume that IP is an additional insured for the Alabama action.

**action"**), for breaching the Waste Services Agreement by "failing to place its insurance carriers on notice of the claims against IP in the [Alabama action]," and by "failing to defend and indemnify IP in the [Alabama action]" (Doc. 20-3, PageID.860 [¶¶ 30 & 31]).

By letter dated March 23, 2020, IP's counsel first notified Harleysville of the Alabama action (Doc. 33, PageID.1066 [¶ 29]).   On March 30, 2020, Land Clearing first notified Harleysville of the Alabama action and of IP's contractual-indemnity claim, when Land Clearing requested a defense and indemnity for the Tennessee action (the complaint in the Tennessee case referenced the Alabama action and included the Alabama complaint as an exhibit) (Doc. 33, PageID.1066 [¶ 30]; Doc. 20-3, PageID.855, 858-59 [¶¶ 15, 16, 18, 19], 899).

On May 15, 2020, Harleysville denied coverage to Land Clearing for the Tennessee action (Doc. 33, PageID.1068 [¶ 36]).   That same date, Harleysville denied coverage to IP for the Alabama action, based on, among other things, the Pollution Exclusion and IP's breach of the Policies' notice conditions (Doc. 33, PageID.1067 [¶ 34]; Doc. 39-3, PageID.1137-41). Harleysville's letter concluded by stating:  "If IP has other information that bears on the issue of coverage, or if IP believes that Harleysville is mistaken as to the facts or in its application of the Policies' provisions to the facts, please provide us with such information or with the basis for such belief, and Harleysville will consider same" (Doc. 39-3, PageID.1146).

IP's counsel responded by letter dated June 4, 2020, claiming that, even though the Policies define "pollutants" as including "contaminants" and "waste," even though the Alabama action alleged that Organo-Ash was a "contaminant," and even though the Waste Services Agreement describes Organo-Ash as "waste," Organo-Ash actually is <u>not</u> a "contaminant," "waste," or "pollutant" (Doc. 33, PageID.1068 [¶ 37]; Doc. 39-4, PageID.1148-49).  The letter also asserted that Harleysville was estopped to deny coverage because it had not delivered the Policies to IP;

6

that the terms "discharge, dispersal, seepage, migration, release or escape" in the Pollution Exclusion were ambiguous; and that IP's delay in giving notice was "reasonable as a matter of law" or presented a fact question (Doc. 39-4, PageID.1147, 1149).  The letter asked Harleysville to "reconsider its decision to decline coverage" (Doc. 39-4, PageID.1150).  The letter did not claim that Harleysville's investigation was inadequate.

Harleysville filed this declaratory-judgment action on June 30, 2020 (Doc. 1).

On July 17, 2020, the court in the Tennessee action entered a default judgment for IP, finding that Land Clearing breached the Waste Services Agreement "by failing to place its insurance carriers on notice of the claims against [IP] in the [Alabama action]," and "by failing to defend and indemnify [IP] in the [Alabama action]" (Doc. 28-2, PageID.1010-11).

<u>ARGUMENT</u>

I.   **H**ARLEYSVILLE HAS NO DUTY TO DEFEND OR INDEMNIFY **IP** AS AN ADDITIONAL INSURED AGAINST THE **A**LABAMA ACTION.

A.   **Harleysville has no duty to defend IP.**

An insurer's duty to defend "is determined by the language of the insurance policy and by the allegations in the [plaintiff's] complaint…against the insured." <u>Ajdarodini v. State Auto Mut. Ins. Co.</u>, 628 So. 2d 312, 313 (Ala. 1993).  "If the allegations accuse the insured of actions for which the insurance company has provided protection, the insurance company is obligated to defend[.]" <u>Id.</u>  If the allegations leave no uncertainty that the plaintiff's claims are not covered, the insurer has no duty to investigate beyond the complaint and no duty to defend.  <u>See</u> <u>Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.</u>, 990 F.2d 598, 606 (11th Cir. 1993) (applying Alabama law; complaint was not "so vague as to require an independent investigation by [insurer] before denying coverage," and because "complaint's allegation of intentional interference fell within the policy exclusion," insurer had no duty to defend); <u>Encompass Ins. Co. of Am. v.</u>

Yankah, 2007 WL 9717755, *3 (S.D. Ala. Jan. 16, 2007) (Granade, C.J.) ("An insurer does not have a duty to defend when the complaint shows either non-existence of coverage or the applicability of a policy exclusion.").

If there is "any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend," Blackburn v. Fidelity & Deposit Co., 667 So. 2d 661, 668 (Ala. 1995), and a court may "look to facts which may be proved by admissible evidence," Pacific Indem. Co. v. Run-A-Ford Co., 161 So. 2d 789, 795 (Ala. 1964). Extrinsic evidence is relevant if it supplies coverage-related facts omitted from the complaint, see Run-A-Ford, 161 So. 2d at 789-93, 795, or clarifies allegations that are vague or ambiguous, see Acceptance Ins. Co. v. Brown, 832 So. 2d 1, 14-15 (Ala. 2001).

**However**, because "the duty to defend hinges upon the facts and claims that have been **asserted** against the insured," Worthington Fed. Bank v. Everest Nat'l Ins. Co., 110 F. Supp. 3d 1211, 1235 (N.D. Ala. 2015) (emphasis in original), and not on whether those facts and claims are true, extrinsic evidence that **contradicts** the complaint's allegations or **denies that they are true** is irrelevant and cannot create a duty to defend. See Sentry Ins. Co. v. Miller, 914 F. Supp. 496, 500 (M.D. Ala. 1996) ("No case cited to this court holds that coverage may be determined on the basis of evidence conflicting with a complaint's allegations. Such an inquiry would require a court in a declaratory judgment action to decide substantive issues pending in a previously filed legal action."), aff'd in part, rev'd in part, 114 F.3d 1202 (11th Cir. 1997); Tapscott v. Allstate Ins. Co., 526 So. 2d 570, 572, 575 (Ala. 1988) (no duty to defend intentional-tort claims where policy contained intentional-injury exclusion; "whether [insured] actually intended to imprison, detain, arrest, or inflict emotion distress on [plaintiff]…goes to the merits of the complaint rather than the

issue in this [declaratory-judgment action]," and insured's affidavit "denying the allegations in the complaint in no way affects the nature of the plaintiff's claim for an intentional tort, and…has no bearing on [insurer's] responsibility to defend or indemnify"); Ladner & Co. v. Southern Guar. Ins. Co., 347 So. 2d 100, 103 (Ala. 1977) (no duty to defend intentional-fraud claim; while insured "denies knowing that the lots…would flood,…that is a matter to be determined in the [underlying] lawsuit," and insured's "denial in no way changes the nature of the [plaintiffs'] claim").

### 1.   The Pollution Exclusion bars coverage for the Alabama action.

The Pollution Exclusion states that the insurance does not apply to:

> *f.    Pollution*
>
> > *(1)    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":*
> >
> > > *(a)    At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any insured….; [or]*
> > >
> > > *(b)    At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; [or]*
> > >
> > > *(c)    Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:*
> > >
> > > > *(i)    Any insured….*

(Doc. 1-1, PageID.65; Doc. 1-2, PageID.218; Doc. 1-3, PageID.370).   The Policies define "pollutants" as follows:  "[A]ny solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.   Waste includes materials to be recycled, reconditioned or reclaimed." (Doc. 1-1, PageID.77; Doc. 1-2, PageID.230; Doc. 1-3, PageID.382) (emphases added).   The Pollution Exclusion applies to the Alabama action because

(1) JRD and Dailey Sr. allege that Organo-Ash is a harmful "contaminant," *i.e.*, a "pollutant," (2) their alleged injury and damage arose out of the "discharge, dispersal, seepage, migration, release or escape" of Organo-Ash, and (3) the circumstances described in ¶¶ f.(1)(a), f.(1)(b), and/or f.(1)(c) of the exclusion existed.

### *The Alabama action alleges that Organo-Ash is a "contaminant," i.e., a "pollutant"*

JRD and Dailey Sr.'s complaint against IP alleges that Organo-Ash is "hazardous and harmful," "not safe for the land or environment," and "contains harmful materials, substances, and/or toxins, including metallic elements, and these <u>contaminants</u> have damaged the land and soil" (Doc. 39-2, PageID.1125 [¶ 54], 1123 [¶ 50], 1113 [¶ 15], 1117 [¶ 27]; Doc. 1-4, PageID.510 [¶ 15], 513 [¶ 27]) (emphasis added).  Because a "contaminant" is a "pollutant" as defined in the Policies, the complaint effectively alleges that Organo-Ash is a "pollutant."

IP claims that Organo-Ash is not a "contaminant" but a "beneficial use material" (Doc. 39-4, PageID.1148; Doc. 33, PageID.30 [¶ 53a.]).  The duty to defend, however, depends on the claim the plaintiff <u>asserts</u> against the insured, not on the defendant's denials, or on evidence the claim is not true.  <u>See</u> <u>Sentry</u>, 914 F. Supp. at 500; <u>Tapscott</u>, 526 So. 2d at 572, 575; <u>Ladner & Co.</u>, 347 So. 2d at 103.  JRD and Dailey Sr.'s claims are based entirely on Organo-Ash's being a harmful "contaminant" that damaged their property (Doc. 1-4, PageID.509-18; Doc. 1-5, PageID.534 [p. 54]; Doc. 39-2, PageID.1112-28).  IP's denying that Organo-Ash is a "contaminant" contradicts the complaint, is not relevant to the duty to defend, and cannot create such a duty.  <u>See</u> <u>id.</u>

### *JRD and Dailey Sr.'s damage arose out of a "discharge," etc., of Organo-Ash*

The Pollution Exclusion applies to damage arising out of a "discharge, dispersal, seepage, migration, release or escape" (**hereafter "'discharge,' *etc.*"**) of a pollutant.  In <u>Essex Insurance Co. v. Avondale Mills</u>, 639 So. 2d 1339 (Ala. 1994), the court construed a pollution exclusion

containing the words "discharge, dispersal, release, or escape," and stated that these "term[s] used to describe the method in which the 'pollution' is disseminated, such as 'discharge' and 'dispersal,' are terms commonly associated with environmental law and materials classified as "hazardous waste.'" Id. at 1341 (emphasis added).  In a later case, the court stated that, "[g]iven [the] Court's characterization in Essex…of 'discharge' and 'dispersal' as terms commonly associated with environmental law, an insurer subsequently employing those terms can be presumed to have intended the same construction[.]"  Porterfield v. Audubon Indem. Co., 856 So. 2d 789, 806 (Ala. 2002) (emphases added).  This presumption also applies to the terms "release" and "escape," as Essex merely used "discharge" and "dispersal" as examples.  See id., 639 So. 2d at 1341 ("such as 'discharge' and 'dispersal'") (emphasis added).  See also Nautilus Ins. Co. v. Jabar, 188 F.3d 27, 30 (1st Cir. 1999) ("the terms used in the [pollution] exclusion clause, such as 'discharge,' 'dispersal,' 'release' and 'escape,' are terms of art in environmental law") (emphases added).

Thus, as used in the Pollution Exclusion, the words "discharge" and "release" (and "dispersal" and "escape") have the same meaning as in environmental law, which law "is largely based on statute."  Daniel A. Farber, The Story of Boomer:  Pollution and the Common Law, 32 Ecology L.Q. 113, 133 (2005).  Many environmental statutes and regulations employ and define the terms "discharge" and "release."  Typical are the regulation under the Resource Conservation & Recovery Act, 42 U.S.C. § 6901, et seq. ("RCRA"), defining "discharge" as "the accidental or intentional spilling, leaking, pumping, pouring, emitting, emptying, or dumping of hazardous waste into or on any land or water," 40 C.F.R. § 260.10; and the definition in the Comprehensive Environmental Response, Compensation & Liability Act, 42 U.S.C. § 9601 ("CERCLA"), stating that "release" means "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment," 42 U.S.C. § 9601(22).

11

A number of other federal and Alabama statutes and regulations contain these same or substantially similar definitions of "discharge" and "release."[3]

The complaint in the Alabama action alleges that Organo-Ash from IP was "deposited on [JRD and Dailey Sr.'s] property" (Doc. 1-4, PageID.510 [¶ 17]).  Dailey Sr. explained that Land Clearing used an excavator to remove Organo-Ash from its dump trucks and dump it on the property (Doc. 1-5, PageID.525-26 [pp.17-21], 531-32 [pp. 43, 45], 537-38 [pp. 68-69, 71]). Hence, a "discharge" or "release" – as those terms are used in environmental law and therefore in the Pollution Exclusion – occurred in the form of pouring, emptying, discharging, dumping, or disposing of Organo-Ash on JRD and Dailey Sr.'s property.  See Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 669 (5th Cir. 1989) (defendant's "disposing of [hazardous] wastes on the property" "met the release requirement"); Northwestern Mut. Life Ins. Co. v. Atlantic Research Corp., 847 F. Supp. 389, 396 (E.D. Va. 1994) ("[t]he fact that hazardous substances exist in the soil and groundwater…of the property indicates that these substances have been spilled, leaked, emitted, discharged, leached, etc., into the environment," i.e., that a "release" occurred).

The result is the same if the terms "discharge" and "release" are given their ordinary meanings.  See Charter Oak Fire Ins. Co. v. City of Fairhope, 478 F. Supp. 3d 1218, 1226 (S.D. Ala. 2020) (Moorer, J.) ("[w]here a policy does not define a word or phrase, the Court should construe it according to its ordinary meaning").  "Discharge" as a verb means "to relieve of a

---

[3] **Federal statute and regulations**: 33 U.S.C. § 2701(7) ("discharge"); 15 C.F.R. § 990.30 ("discharge"); 30 C.F.R. § 254.6 ("discharge"); 33 C.F.R. §§ 151.05, 151.103, 159.3, 159.305 ("discharge"); 33 C.F.R. § 127.005 ("release"); 40 C.F.R. §§ 109.2(b), 112.2, 113.3(e), 116.3, 140.1(b) ("discharge"); 40 C.F.R. § 300.5 ("discharge" and "release"); 40 C.F.R. §§ 280.12, 302.3, 355.61, 372.3 ("release"); 43 C.F.R. § 11.14(n) ("discharge"); 45 C.F.R. § 671.3 ("release"). **Alabama statutes and regulations**:  Ala. Code §§ 22-27-2(8), 33-6A-1(2) ("discharge"), 22-30A-2(11), 22-30E-3(17) ("release"); Ala. Admin. Code §§ 335-13-1-.03(37), 335-16-1-.02(p) ("discharge"), 335-14-1-.02(75) & (236) ("discharge" & "release").

charge, load, or burden: a: UNLOAD // *discharge* a cargo ship"; or "to let or put off… // *discharge* cargo"; or "to throw off or deliver a load, charge, or burden"; and as noun means "the act of discharging or unloading." merriam-webster.com.  Land Clearing, using an excavator, unloaded (discharged) Organo-Ash from its dump trucks, and unloaded (discharged) Organo-Ash from the excavator onto the ground; relieved the dump trucks of a charge, load, or burden of Organo-Ash (discharged it), and relieved the excavator of a charge, load, or burden of Organo-Ash (discharged it) by dumping it on the ground; put off (discharged) Organo-Ash from its dump trucks and from the excavator; and delivered a load, charge, or burden of Organo-Ash (discharged it) by using an excavator to remove it from the dump trucks and dump it on the ground.

"Release" means "stop holding something," macmillandictionary.com, "to let go or let loose," collinsdictionary.com, "let (something) fall or spill from a container," vocabulary.com, or "to allow a substance to flow out from somewhere," dictionary.cambridge.org.  The excavator stopped holding Organo-Ash, let go of Organo-Ash, let Organo-Ash fall or spill from the excavator, and allowed Organo-Ash to flow out of the excavator, when the excavator dumped Organo-Ash on the ground.

IP's counsel's June 4, 2020 letter stated that the "Porterfield and Evanston Ins. courts…determined that th[e] terms ['discharge, dispersal, seepage, migration, release, or escape']…are ambiguous" (Doc. 39-4, PageID.1149).  Porterfield, 856 So. 2d 789, held only that "'discharge,' 'dispersal,' 'release,' or 'escape' are ambiguous in the context of flaking and peeling lead paint in a residential apartment," id. at 806 (emphasis added) – a completely different situation.  And Evanston Insurance Co. v. J & J Cable Construction, LLC, 2016 WL 534079 (M.D. Ala. Sept. 22, 2016) held that "sewage is not a pollutant within the terms of the [pollution] exclusion," id. at *5, not that the terms "discharge," *etc.*, are ambiguous.  Applying these terms to

the facts of this case is straightforward and leads to no ambiguity.

### *The circumstances described in ¶¶ f.(1)(a), f.(1)(b), and/or f.(1)(c) existed*

Paragraph f.(1)(c) of the Pollution Exclusion states that the exclusion applies to a "discharge," *etc.*, of pollutants "[w]hich are or were at any time <u>transported, handled, stored,</u> treated, <u>disposed of,</u> or processed <u>as waste by or for…[a]ny insured</u>" (emphases added).   The contract that IP made with Land Clearing for the disposal of Organo-Ash is titled "**Waste** Services Agreement" (Doc. 9, PageID.586) – a fact that IP tries to avoid in its counterclaim by referring to the agreement merely as the "Services Agreement" (Doc. 33, PageID.1064 [¶¶ 5-8], 1066 [¶ 23], 1070 [¶ 48.f.], 1072-73 [¶¶ 53.f. & 58]).   The **Waste** Services Agreement states that IP hired Land Clearing "to provide certain **waste handling** and **disposal** services" and that Land Clearing was to "haul[]" and "**transport**" Organo-Ash (Doc. 9, PageID.586); describes Organo-Ash as including "process **waste**" and "OOC **waste**" (Doc. 9, PageID.601 [¶ 1.0], 607-08 [¶ 3.0]); lists Organo-Ash as a "TYPE[] OF **WASTE**" (Doc. 9, PageID.607 [¶ 3.0]); includes a "**Waste** Description" for Organo-Ash (Doc. 9, PageID.608); and contains a "**WASTE** HAULING PROCESS DIAGRAM" (Doc. 9, PageID.609) (all emphases added).[4]   Thus, Organo-Ash (<u>waste</u>) was <u>disposed of by</u> IP (an additional insured), by having Land Clearing (an insured) haul it away <u>for</u> IP.   Organo-Ash (<u>waste</u>) was <u>transported and handled as waste by</u> Land Clearing (an insured), <u>for</u> IP (an additional insured).   Organo-Ash (<u>waste</u>) was <u>stored or disposed of by</u> Land Clearing

---

[4] The Waste Services Agreement's descriptions of Organo-Ash as "waste" are consistent with and do not contradict the complaint (see Doc. 1-4, PageID.509 [¶ 11]; Doc. 39-2, PageID.1112 [¶ 11]).   An insurer may use extrinsic evidence of coverage-related facts omitted from and that do not contradict the complaint, to establish that an exclusion applies and that the insurer does not owe a duty to defend.   See <u>Alfa Mut. Ins. Co. v. Jones</u>, 555 So. 2d 77, 78 (Ala. 1989); <u>Atlantic Mut. Fire Ins. Co. v. Cook</u>, 619 F.2d 553, 555 (5th Cir. 1980) (applying Alabama law).

14

(an insured) in a "stockpile" on JRD and Dailey Sr.'s property. Paragraph f.(1)(c) is therefore applicable.

Paragraph f.(1)(b) applies to a "discharge," *etc.*, of pollutants "[a]t…any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste" (emphases added). Organo-Ash (waste) was "discharged," *etc.*, at JRD and Dailey Sr.'s property, which property was used by Land Clearing (an insured) for the handling (via an excavator) of Organo-Ash (waste) and for the storage or disposal of Organo-Ash (waste) in a "stockpile." Hence, Paragraph f.(1)(b) is also applicable.

IP alleges that "Organo-Ash is not a waste" but a 'beneficial use material' approved for use "as a soil amendment, much like a fertilizer" (Doc. 33, PageID.1069 [¶ 48.a.]). But IP's paper-manufacturing process generated Organo-Ash as "waste"; Organo-Ash was "stockpiled" on JRD and Dailey Sr.'s property, not being used as a "soil amendment"; and the Policies' definition of "pollutants," which includes "waste," states that "[w]aste includes materials to be recycled, reconditioned or reclaimed" (Doc. 1-1, PageID.77; Doc. 1-2, PageID.230; Doc. 1-3, PageID.382).

For similar reasons and based the same definition, the court rejected an argument like IP's in Ross Development Corp. v. Fireman's Fund Insurance Co., 910 F. Supp. 2d 828 (D.S.C. 2012). The insured in Ross manufactured fertilizer and generated pyrite slag as a byproduct. Id. at 832, 834-36. The insured and its judgment creditor argued that pyrite slag was not "waste" because it "had value for use in road construction and stabilization and was 'marketable,'" and that pyrite slag had not been "handled, stored, disposed of, processed, or treated as waste" on the subject property because it was "used to line road beds and fill in low-lying areas." Id. at 831, 834, 835. The court found that the judgment creditor's "restrictive interpretation of the term 'waste' improperly focuses on whether the pyrite slag had a value for some secondary purpose not directly

15

related to [the insured's] manufacture of fertilizer." Id. at 834. The court stated that "[m]any byproducts can be repurposed or recycled and thus have some value in a different context," but that "[t]his does not mean that the byproduct is not 'waste' with respect to the manufacturing process in which it is created." Id. The court quoted a dictionary definition of "waste" as "damaged, defective, or superfluous material produced during or left over from a manufacturing process or industrial operation; material not usable for the ordinary or main purpose of manufacture." Id. The court concluded that "the pyrite slag generated by [the insured] as a byproduct of its fertilizer manufacturing operations unambiguously falls into the meaning of the term 'waste,'" that the pollution exclusion "specifies that waste 'includes materials to be recycled, reconditioned or reclaimed,'" and that "this clause contradicts the assertion that 'waste' must be completely useless or valueless." Id. at 835-36. Hence, the fact that Organo-Ash is "waste" from IP's paper-manufacturing process means that it is "waste" for purposes of ¶¶ f.(1)(c) and f.(1)(b), no matter whether it has some secondary "beneficial use."

Paragraph f.(1)(a) applies to a "discharge," *etc.*, of a pollutant "[a]t…any premises, site or location which is or was at any time owned or occupied by…any insured." JRD and Dailey Sr.'s complaint alleges that "[Dailey Sr.] and JRD Contracting, Inc. are the owners of parcels" on which Organo-Ash was deposited, and that IP "owed Plaintiffs, the landowners, a duty of care with respect to the supplying of the Organo-Ash that was deposited on Plaintiffs' property" (Doc. 1-4, PageID.504-08 [¶ 9], 510 [¶ 17]) (emphases added). JRD Contracting, Inc. was an insured under the Policies (though mistakenly listed as JRD Contracting Company, Inc.) (Doc. 1-1, PageID.50; Doc. 1-2, PageID.203; Doc. 1-3, PageID.355; Doc. 33, PageID.1051 [¶ 42]). Because the complaint alleges that JRD was an owner of the property, ¶ f.(1)(b) is also applicable.

16

### *The Pollution Exclusion bars coverage for every claim in the Alabama action*

The Pollution Exclusion applies to injury or damage "arising out of" pollution.  The words "[a]rising out of" are "of much broader significance than 'caused by,'" and are "ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from,' or, in short, 'incident to, or having connection with[.]'"  State Farm Fire & Cas. Co. v. Erwin, 393 So. 2d 996, 998 (Ala. 1981) (internal quotation marks omitted).  All of JRD and Dailey Sr.'s claims are based on and "arise out of" the alleged pollution (Doc. 1-4, PageID.510-18; Doc. 39-2, PageID.1112-28).  See Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Snead Door, LLC, 2013 WL 550483, *3-4, 6 (N.D. Ala. Feb. 12, 2013) (pollution exclusion barred coverage for claims including negligence, fraud, and intentional/negligent misrepresentation).  Harleysville therefore has no duty to defend IP.

### 2.    IP's and Land Clearing's breaches of the Policies' notice conditions also bar coverage for the Alabama action.

The Policies identify Land Clearing and JRD as Named Insureds, and state that "the words 'you' and 'your' refer to the Named Insured[s]" (Doc. 1-1, PageID.47, 50, 63; Doc. 1-2, PageID.200, 203, 216; Doc. 1-3, PageID.352, 355, 368).  The Policies' "Conditions" state that "[i]f a claim is made or 'suit' is brought against any insured, you [Land Clearing and JRD] must…[n]otify us as soon as practicable" and "see to it that we receive written notice of the claim or 'suit' as soon as practicable," and that "[y]ou [Land Clearing and JRD] and any other involved insured [IP] must…[i]mmediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit'" (Doc. 1-1, PageID.72-73; Doc. 1-2, PageID.225-26; Doc. 1-3, PageID.377-78) (emphasis added).

The terms "'as soon as practicable' and 'immediately'… mean that notice must be given 'within a reasonable time' in view of all the facts and circumstances of the case." Southern Guar.

Ins. Co. v. Thomas, 334 So. 2d 879, 882 (Ala. 1976).  The "'only factors to be considered are the

length of the delay…and the reasons therefor.  Absence of prejudice to the insurer from the delay

is not a factor to be considered.'"  Nationwide Mut. Fire Ins. Co. v. Estate of Files, 10 So. 3d 533,

535 (Ala. 2008).  "When an insured fails to timely notify its insurer about an accident or a lawsuit

or fails to forward suit papers as required by the policy, the insurer may deny coverage."

Pennsylvania Nat'l Mut. Cas. Ins. Co. v. J.F. Morgan General Contractors, Inc., 79 F. Supp. 3d

1245, 1253 (N.D. Ala. 2015).

JRD and Dailey Sr. filed the Alabama action on May 18, 2018, and IP was served on May

21, 2018 (Doc. 1-4, PageID.503; Doc. 39-1, PageID.1104 [¶ 3]).  Neither Land Clearing, JRD, nor

IP notified Harleysville of the suit or sent Harleysville the complaint.

IP alleges that "[o]n February 13, 2019, [JRD and Dailey Sr.]…disclos[ed] for the first

time that the source of the Organo-Ash [on their property] was…Land Clearing (Doc. 33,

PageID.1065 [¶ 20]).  IP also avers that "[i]n July 2019, more than a year after IP was served, IP

obtained…certificates of insurance identifying Harleysville as…Land Clearing's insurer" (Doc.

33, PageID.1065 [¶ 22]).  Still, when IP obtained the certificates, it did not send Harleysville the

complaint.  Instead, after waiting a month, IP's counsel on August 21, 2019 asked Land Clearing

to notify its insurers of the suit (Doc. 33, PageID.1066 [¶ 24]).  Land Clearing did not respond to

this request and failed to notify its insurers (Doc. 39-3 at PageID.1140; Doc. 33, PageID.1066

[¶ 25]).  After waiting another five months and 24 days (August 21, 2019 to February 14, 2020),

having heard nothing from Harleysville, IP sued Land Clearing in Tennessee, alleging that Land

Clearing failed to notify its insurers of the Alabama action (Doc. 33, PageID.1066 [¶ 27]; Doc. 20-

3, PageID.859 [¶¶ 22 & 30]).  Even then, IP did not send Harleysville the complaint.

After waiting another month and nine days, on March 23, 2020, IP's counsel first notified

Harleysville of the Alabama action and sent Harleysville the complaint (Doc. 33, PageID.1053 [¶ 50], 1066 [¶ 29]). Land Clearing first notified Harleysville of the Alabama action on March 30, 2020, by demanding coverage for the Tennessee action (the Tennessee complaint referenced the Alabama action and attached the Alabama complaint as an exhibit) (Doc. 33, PageID.1066 [¶ 30]; Doc. 20-3, PageID.858-59 [¶¶ 15, 16, 18, 19], 899). IP and Land Clearing thus delayed one year and 10 months after IP was served in the Alabama action, eight months after IP obtained the certificates, and seven months after IP asked Land Clearing to notify its insurers and received no response from Land Clearing, before IP decided to give notice itself and send Harleysville the complaint, and before Land Clearing sent Harleysville the Tennessee complaint that included the Alabama complaint as an exhibit.

IP and Land Clearing have no reasonable excuse for the delay. The June 2016 Waste Services Agreement obligated Land Clearing to make IP an additional insured on Land Clearing's CGL insurance and to "provide IP with copies of policy endorsements reflecting IP's status as an additional insured" (Doc. 9, PageID.591 [¶ 4]). Thus, IP should have known the identity of Land Clearing's CGL insurer (Harleysville) since 2016 – long before IP received the certificates in July 2019 – and should have known that it had to comply with Harleysville's notice conditions. See J.F. Morgan, 79 F. Supp. 3d at 1247, 1254-55 (where subcontract "required [subcontractor] to have a [CGL] policy and to name [general contractor] as an 'additional insured,'" general contractor "had constructive knowledge of the [CGL] policy and its notice requirements" and was bound thereby); Standifer v. Aetna Cas. & Sur. Co., 319 F. Supp. 1385, 1388 (N.D. Ala. 1970) ("an omnibus insured without knowledge of…the insurer's identity is bound by policy conditions governing notice and forwarding of suit papers," and his "failure to use due diligence in pursuing available means of ascertaining the existence and terms of the policy resulting in unreasonable

delay in complying with its conditions will relieve the insurer of liability").

Moreover, once IP obtained the certificates identifying Harleysville, IP delayed eight months before sending Harleysville the complaint.  The Policies imposed a duty upon IP, as an "involved insured," to "immediately" send Harleysville the complaint (Doc. 1-1, PageID.73; Doc. 1-2, PageID.226; Doc. 1-3, PageID.378).  IP could not simply rely on a demand that Land Clearing "put Harleysville on notice of…the Alabama case," particularly where Land Clearing did not respond to that demand and made no commitment to notify Harleysville.  Cf. J.F. Morgan, 79 F. Supp. 3d at 1248, 1252-56, 1259 (additional insured's failure to "immediately" forward complaint precluded coverage, even though named insured notified insurer of suit, where named insured also failed to send insurer the complaint).

Because IP and Land Clearing have no reasonable excuse for the delay, the length of the delay – one year and 10 months from service, eight months from IP's receipt of the certificates, and seven months from IP's requesting that Land Clearing notify its insurers and receiving no response from Land Clearing – is unreasonable as a matter of law.  See Estate of Files, 10 So. 3d at 536 (five-month delay unreasonable as a matter of law; citing cases holding four-month, six-month, and eight-month delays unreasonable as a matter of law).  Where an insured "'fails to show a reasonable excuse or the existence of circumstances which would justify a protracted delay, the Court should as a matter of law hold that there has been a breach of the condition as to notice.'" Thomas, 334 So. 2d at 882-83.

### 3.  **IP was neither entitled to policy delivery nor prejudiced by non-delivery.**

Ala. Code § 27-14-19(a) states that "every policy shall be mailed or delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance[.]"  In Brown Machine Works & Supply Co. v. Insurance Co. of North America, 659 So. 2d 51 (Ala. 1995), the

court held that "§ 27–14–19 requires that the insurance policy be 'mailed or delivered' <u>to the purchaser of a policy and to the named insured</u>," and that "an insurer may be estopped from asserting conditions of, or exclusions from, coverage where such a purchaser or insured <u>is prejudiced by</u> the insurer's failure to comply with the statute." <u>Id.</u> at 61 (emphases added).  The court "le[ft] open the question of what other insureds…the statutory phrase 'the insured or...the person entitled thereto' may include." <u>Id.</u>

IP alleges that "it was listed as an additional insured" in the Policies and that "Harleysville failed to provide IP a copy of the policies" (Doc. 33, PageID.1065 [¶¶ 14-15]).  None of the Policies "listed" IP by name; IP was an <u>unnamed</u> additional insured by virtue of certain endorsements (Doc. 1-1, PageID.104, 106; Doc. 1-2, PageID.257, 259; Doc. 1-3, PageID.410, 412).  IP's counsel's June 4, 2020 letter did not cite any case holding that unnamed additional insureds are entitled to policy delivery (Doc. 39-4, PageID.1147).  Requiring delivery to unnamed additional insureds would make little sense, because if not named, the insurer in most cases would not know these insureds' identities or addresses and so would not know to whom or where to send the policy.

Regardless, IP did not claim in its counsel's June 4, 2020 letter, has not pled, and cannot show that it was <u>prejudiced</u> by non-delivery of the Policies, particularly with respect to the Pollution Exclusion or the notice conditions.  To establish prejudice, IP would have to demonstrate that it did not know that Land Clearing's Policies would contain such provisions, and that if Harleysville had delivered the Policies, IP would have read the Pollution Exclusion and the notice conditions and taken some different action.  See <u>W.G. Yates & Sons Constr. Co. v. Zurich Am. Ins. Co.</u>, 2008 WL 161921, *9 & n.19 (S.D. Ala. Jan. 8, 2008) (Steele, J.); <u>Great Am. Ins. Co. v. Jefferson Cty. Comm'n</u>, 776 F. Supp. 2d 1252, 1262 (N.D. Ala. 2010).

In <u>Yates</u>, Zurich did not deliver an "Owners and Contractors Protective Liability (OCP)

policy" that a subcontractor procured for Yates, with Yates being the named insured.  Id. at *3.

Zurich denied coverage for a personal-injury claim, based on an exclusion.  Id. at *3, 4.  The court

ruled that Zurich was not estopped to deny coverage, because Yates "failed to demonstrate the

requisite prejudice."  Id. at *9.  The court stated that Yates "does not profess to have been shocked

by the Exclusion's existence, or to have been in any way caught unawares that the Policy did not

cover bodily injury arising from Yates's employees' acts or omissions," and that "[a]ny such

assertion of surprise would be patently incredible."  Id. at *9 & n.19.  The court explained that the

"policy that [the subcontractor] was contractually obligated to provide for Yates was an [OCP]

policy"; that "OCP policies routinely are confined to vicarious liability, and do not extend coverage

to the named insured for the named insured's own acts or omissions except in its role of generally

supervising the subcontractor"; and that "the Exclusion…is a standard feature of OCP policies,

hardly the sort of clause as to which a sophisticated insured like Yates could legitimately claim

ignorance or surprise."  Id. (emphasis added).  See also Jefferson Cty. Comm'n, 776 F. Supp. 2d

at 1262 (finding no prejudice from non-delivery, noting that insured did not argue "that, had it

known about the condition [in the policy], it would have taken different actions").

Harleysville's CGL Policies contain standard Insurance Services Office, Inc. ("ISO")

forms, in which pollution exclusions and notice conditions are standard provisions, as they are in

CGL policies in general.  See City of Salina v. Maryland Cas. Co., 856 F. Supp. 1467, 1472 (D.

Kan. 1994) ("[The] CGL policy contained a standard [ISO] 'pollution exclusion[.]'"); Colony Ins.

Co. v. Victory Constr. LLC, 239 F. Supp. 3d 1279, 1283 (D. Or. 2017) ("The pollution exclusion

…is a standard provision found in [CGL] policies[.]"); 8 Business & Commercial Litigation in

Federal Courts § 90:47 (4th ed. Westlaw 2020) ("The standard occurrence-based CGL policy

requires notice 'as soon as practicable' of actual or potential claims or suits.").  IP did not claim in

its counsel's June 4, 2020 letter (Doc. 39-4), has not pled, and cannot now credibly claim, that it was ignorant of the Pollution Exclusion or the notice conditions or that it would have done anything different had it received the Policies.

IP is a huge corporation and a sophisticated insured. The latter is evinced in part by the Waste Services Agreement, which required that Land Clearing maintain five types of insurance and specified that the policies contain certain coverages and provisions, including the following for CGL insurance:

> Commercial General Liability Insurance that covers bodily injury, personal injury, and property damage, including but not limited to products liability, completed operations, and contractual liability coverage, with per occurrence limits of not less than $5,000,000 and an aggregate limit of not less than $5,000,000. Commercial General Liability Insurance shall include "contractual" coverage for the indemnity clause set forth in Paragraph 6 of this Article. If "defined term denoting scope of contractor's work" involves hazards due to blasting or explosions, or the hazards of the collapse of or structural injury to any building due to excavation, pile driving, shoring, underpinning, etc., then the policy shall be expressly endorsed to cover such hazards[.]

(Doc. 9, PageID.590-91). Notably, the above says nothing about coverage for pollution. Rather, the Waste Services Agreement required that Land Clearing <u>also</u> maintain "Contractor's Pollution Liability Insurance" (Doc. 9, PageID.591) – <u>which shows that IP knew that CGL insurance would not cover pollution liability and that a separate policy providing such coverage was needed.</u>

As to the notice conditions, any insured must know that he or she cannot expect a defense unless the insurer is notified that the insured has been sued and is requesting a defense. IP is far more knowledgeable and experienced than the average insured, and must have known that <u>timely</u> notice is required. <u>See</u> <u>J.F. Morgan</u>, 79 F. Supp. 3d at 1258 (additional insured was a "sophisticated business with experience with [CGL] insurance policies," "reasonably had constructive knowledge that every liability insurance policy requires an insured to forward suit papers," and "should have known to forward suit papers much sooner than 13 months after receipt"); <u>Standifer</u>, 319 F. Supp.

at 1388 ("conditions precedent in the policy [as to notice]…are standard provisions, and there is authority that they therefore are deemed to be binding on the parties notwithstanding nondelivery of the policy").  Furthermore, IP was represented by counsel (Doc. 39-1, PageID.1101-02, 1105-06), whose demand that Land Clearing notify its insurers shows that IP knew that notice was required.  And IP's counsel eventually <u>did</u> send Harleysville the complaint in the Alabama action (Doc. 33, PageID.1054 [¶ 50], 1066 [¶ 29]).  IP cannot claim ignorance that it needed to forward the complaint, when IP ultimately did so, though too late.

> **B.**      **Harleysville has no duty to indemnify IP.**

The "duty to defend is broader than the duty to indemnify," so when "there is no duty to defend…, there is also no duty to indemnify."  <u>Auto-Owners Ins. Co. v. McMillan Trucking Inc.,</u> 242 F. Supp. 3d 1259, 1266 (N.D. Ala. 2017).  Harleysville has no duty to defend IP against the Alabama action, and therefore also has no duty to indemnify IP.  <u>See</u> <u>City of Fairhope</u>, 478 F. Supp. 3d at 1232 (Moorer, J.) ("Because [insurer] has no duty to defend…, the Court necessarily finds that the narrower issue of indemnification is also determined in [insurer's] favor.").

## II.   HARLEYSVILLE DOES NOT OWE COVERAGE TO LAND CLEARING OR IP FOR THE TENNESSEE ACTION AND JUDGMENT.

The court's judgment for IP against Land Clearing in the Tennessee action states that Land Clearing "is required to defend and indemnify [IP] in the [Alabama action]…per the terms of the Waste Services Agreement," and that Land Clearing "breached the Waste Services Agreement by failing to defend and indemnify [IP] in the [Alabama action]" (Doc. 28-2, PageID.1010-11).  IP's counterclaim against Harleysville asserts that "Land Clearing is an insured under the policies"; that "[b]ecause IP is a judgment creditor of…Land Clearing," IP "may proceed directly against Harleysville for a defense and indemnity based on Harleysville's contractual obligation to…Land Clearing"; and that "[a]s a result, IP is entitled to a defense and indemnity for the claims made

against it in the Alabama case" (Doc. 33 at PageID.1074 [¶¶ 62-64, 70, 71]).

Though IP's counterclaim does not cite Ala. Code § 27-23-2, it appears from the above allegations that IP is attempting to proceed under that statute, which states that "[u]pon the recovery of a final judgment" for bodily injury or property damage, "<u>if the defendant was insured against the loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance…applied to the satisfaction of the judgment</u>" (emphasis added).[5] Section 27-23-2 "provides the exclusive remedy under Alabama law for direct actions against insurers[.]" <u>Chappell v. Texas Steakhouse of Ala. Inc.</u>, 2016 WL 3456936, *3 (M.D. Ala. May 26, 2016), <u>rpt. & rec. adopted</u>, 2016 WL 3406244 (M.D. Ala. June 16, 2016).  The statute "gives a plaintiff a remedy he or she otherwise would not have available because the plaintiff is not a party to the insurance contract upon which he or she is basing the lawsuit." <u>Ex parte State Farm Fire & Cas. Co.</u>, 300 So. 3d 562, 565 (Ala. 2020).

A "judgment creditor's right under § 27-23-2 to proceed against the insur[er]…is dependent upon the rights of the insured against its insurer under the policy." <u>St. Paul Fire & Marine Ins. Co. v. Nowlin</u>, 542 So. 2d 1190, 1194 (Ala. 1988).  "Defenses available to an insurer in an action by the insured are also available to the insurer in actions brought…pursuant to [§] 27-23-2." <u>Barton v. Nationwide Mut. Fire Ins. Co.</u>, 2021 WL 824985, *8 (N.D. Ala. March 4, 2021). A judgment creditor "can bring an action against the insurer…only if the insured was covered against the loss," <u>Maness v. Alabama Farm Bureau Mut. Cas. Ins. Co.</u>, 416 So. 2d 979, 981–82 (Ala. 1982), and only "if [the insurer has] a duty to indemnify" the insured, <u>Monroe Guar. Ins. Co. v. Pinnacle Mfg., LLC</u>, 2018 WL 792059, *2 (N.D. Ala. Feb. 8, 2018).

---

[5]  IP's claim under § 27-23-2 is governed by Alabama law.  <u>See Morewitz v. West of England Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg)</u>, 62 F.3d 1356, 1358-60, 1363-64 (11th Cir. 1995).

Harleysville has defenses to coverage for Land Clearing for the Tennessee action and judgment, and has no duty to indemnify Land Clearing for that judgment; consequently, IP has no claim against Harleysville under § 27-23-2.

**A.    The Pollution Exclusion bars coverage for the Tennessee action and judgment.**

When an indemnitee seeks contractual indemnity from an insured for a third party's claim against the indemnitee, coverage for the contractual-indemnity claim depends on <u>whether the third party's claim against the indemnitee is covered under the policy</u>.  See <u>Leaf River Cellulose, LLC v. Mid-Continent Cas. Co.</u>, 2012 WL 1906529, *1-2, 4-7, 9 (S.D. Miss. May 25, 2012) (coverage for Leaf River's contractual-indemnity claim against Mid-Continent's insured, under policy with same provisions as Harleysville Policies, depended on whether plaintiff's claim in underlying action against Leaf River was covered under Mid-Continent's policy).  If the third party's claim against the indemnitee is not covered, neither is the indemnitee's claim against the insured for contractual indemnity.  See <u>Capital Alliance Ins. Co. v. Cartwright</u>, 512 S.E.2d 666, 667, 668-69 (Ga. Ct. App. 1999) (<u>applying Alabama law</u>, stating that "the automobile exclusion…bar[s] coverage [for] the underlying [plaintiff's] claim" against indemnitee, that "[e]ven though the claim against [insured] is a contractual indemnity action, the fact remains that [the underlying plaintiff's] injuries arose out of the use of a trailer, a risk excluded by the policy," and that as a result, insurer did not owe coverage to insured for contractual-indemnity claim); <u>Federated Mut. Ins. Co. v. Ever-Ready Oil Co.</u>, 2012 WL 11945481, *7-8 (D.N.M. Mar. 9, 2012) (no coverage for contractual-indemnity claim where liquor-liability exclusion barred coverage for claims against indemnitee).

In this case, Land Clearing is the insured, IP is Land Clearing's indemnitee, and JRD and Dailey Sr. are the third parties asserting claims against the indemnitee, IP.  Therefore, whether Harleysville owes coverage to Land Clearing for IP's claim and judgment in the Tennessee action

for contractual indemnity, <u>depends on whether JRD and Dailey Sr.'s claims against IP in the</u> <u>Alabama action are covered under the Policies.</u>  They are not, because the Pollution Exclusion applies, and because IP and Land Clearing breached the notice conditions.  Consequently, Harleysville does not owe coverage to Land Clearing.  See <u>Whittier Props., Inc. v. Alaska Nat'l</u> <u>Ins. Co.</u>, 185 P.3d 84, 93 (Alaska 2008) ("an insured cannot create coverage under a policy containing a pollution exclusion by agreeing to indemnify a third party for the same risk").  As a result, Harleysville also has no obligation under § 27-23-2 to satisfy the judgment by defending and indemnifying IP against the Alabama action.

### B.  Land Clearing's breaches of the Policies' notice conditions also bar coverage for the Tennessee action and judgment.

The Policies state that "[y]ou must see to it that we are notified as soon as practicable of an 'occurrence'…which may result in a claim," and that "[i]f a claim is made or 'suit' is brought against any insured, you must…[n]otify us as soon as practicable" (Doc. 1-1, PageID.72-73; Doc. 1-2, PageID.225-26; Doc. 1-3, PageID.377-78).  Such conditions "'imposing obligations on the insured are effective as against the [judgment creditor]'" under § 27-23-2.  <u>Nationwide Mut. Fire</u> <u>Ins. Co. v. Estate of Files</u>, 10 So. 3d 533, 534 (Ala. 2008).  "[I]f [the insured] failed to comply with terms of the policy imposing obligations on him," the judgment creditor "is not entitled to reach and apply the liability coverage of that policy to the satisfaction of the judgment he obtained against [the insured]."  <u>Id.</u> at 535.

IP alleges "[t]he injuries claimed in the Alabama case constitute an 'occurrence' under the policies" (Doc. 33, PageID.1070 [¶ 48d.]).  Land Clearing failed to notify Harleysville as soon as practicable of the alleged "occurrence."  JRD and Dailey Sr. filed the Alabama action against IP on May 18, 2018.  Dailey Jr. (not Sr.) was at that time JRD's sole shareholder and operated JRD (Dailey Sr. had retired) (Doc. 1-5, PageID.523 [pp. 11-12], 531 [p. 41]; Doc. 20-3, PageID.858 [¶

16 n.1]).  Dailey Jr. therefore had to know that JRD and his father had filed the Alabama action. Since Dailey Jr. was Land Clearing's president (Doc. 20-3, PageID.858 [¶ 16 n.1]; Doc. 1-5, PageID.532 [p. 46]), Land Clearing knew this as well.  Because Land Clearing was the indemnitor under the Waste Services Agreement's indemnity provision, and because Land Clearing disposed of the Organo-Ash on JRD and Dailey Sr.'s property, Land Clearing also had to know that the Alabama action might result in a claim by IP against Land Clearing for indemnity.  Yet Land Clearing failed to notify Harleysville of any "occurrence" until March 30, 2020, one year and 10 months after the Alabama action was filed (Doc. 33, PageID.1065-66 [¶¶ 18, 25, 30]).  Land Clearing also failed to notify Harleysville of IP's actual "claim" for indemnity, made on August 21, 2019, until eight months later, on March 30, 2020 (Doc. 33, PageID.1066 [¶¶ 23 & 30]).  Land Clearing has no reasonable excuse for the delay.  The length of the delay is unreasonable as a matter of law.  See Estate of Files, 10 So. 3d at 536 (five-month delay unreasonable).  Such a breach of conditions "releases the insurer from obligations imposed by the insurance contract." Reeves v. State Farm Fire & Cas. Co., 539 So. 2d 252, 254 (Ala. 1989).

Because Land Clearing breached the notice conditions, Harleysville does not owe coverage to Land Clearing for the Tennessee action and judgment, and therefore has no obligation under § 27-23-2 to satisfy the judgment by defending and indemnifying IP against the Alabama action.

## III.    IP HAS NO BAD-FAITH CLAIM AGAINST HARLEYSVILLE.

Bad faith "has four elements plus a conditional fifth element," as follows:  (a) "an insurance contract between the parties and a breach thereof by the defendant"; (b) "an intentional refusal to pay the insured's claim"; (c) "the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason)"; (d) "the insurer's actual knowledge of the absence of any legitimate or arguable reason"; and (e) "if the intentional failure to determine the existence of

a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." <u>State Farm Fire & Cas. Co. v. Brechbill</u>, 144 So. 3d 248, 257 (Ala. 2013).  Conditional element (e) is known as an "abnormal" bad-faith claim, or bad-faith failure to investigate.  <u>Brechbill</u>, 144 So. 3d at 256-58. However, "there is only <u>one</u> tort of bad-faith refusal to pay a claim, not two 'types' of bad faith or two separate torts."  <u>Id.</u> at 257-58 (emphasis in original).  A plaintiff must prove elements (a)-(c) in all cases, and must also prove either element (d) or element (e).  <u>See</u> <u>Cole v. Owners Ins. Co.</u>, 326 F. Supp. 3d 1307, 1330 (N.D. Ala. 2018) ("'[a]bnormal" bad faith adopts the elements of 'normal' bad faith," but "a plaintiff can establish that the insurer had actual knowledge of the lack of a legitimate or arguable reason to deny the claim because the insurer intentionally failed to determine whether such reason existed").

### A. IP has no bad-faith claim for Harleysville's denying coverage to IP, as an additional insured, for the Alabama action.

Count Three of IP's counterclaim alleges Harleysville "denied IP's request for coverage in bad faith because there is no logical grounds for it," "acted in bad faith in denying a defense," and "failed to fully investigate" in that Harleysville "(a) fail[ed] to look beyond the pleadings in the Alabama case; (b) fail[ed] to seek information about…Land Clearing's performance and obligations under the [Waste Services Agreement]; [and] (c) fail[ed] to investigate the content and proper classification of Organo-Ash" (Doc. 33, PageID.1073 [¶¶ 57-59]).

IP cannot prove elements (a) or (c)-(e) of bad faith.  IP is unable to establish element (a), that Harleysville breached the insurance contract, because the Pollution Exclusion barred coverage for the Alabama action, and so did IP's and Land Clearing's breaches of the notice conditions. Nor can IP prove element (c), the absence of an arguable or debatable reason to deny coverage. Harleysville had arguable or debatable reasons based on the Pollution Exclusion and breaches of

the notice conditions.  See National Sec. Fire & Cas. Co. v. Bowen, 417 So. 2d 179, 183 (Ala. 1982) ("'debatable reason' under [element] (c)…means an arguable reason, one that is open to dispute or question"); Gulf Atl. Life Ins. Co. v. Barnes, 405 So. 2d 916, 924 (Ala. 1981) ("When a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law."); Weaver v. Allstate Ins. Co., 574 So. 2d 771, 774 (Ala. 1990) ("'If any one reason for denial of coverage is at least 'arguable,' this court need not look any further,' and a claim for bad faith refusal to pay will not lie.").  IP's inability to prove element (a), or its inability to prove element (c), defeats the bad-faith claim in its entirety.  See State Farm Fire & Cas. Co. v. Slade, 747 So. 2d 293, 318 (Ala. 1999) (plaintiffs in all bad-faith cases must "prove an entitlement to benefits under the insurance policy"; thus, "in order to recover under a theory of…bad-faith failure to investigate," plaintiff must show that insurer "breached the [insurance] contract [element (a)]…when it refused to pay"); Brechbill, 144 So. 3d at 258 ("Regardless of whether the claim is a bad-faith refusal to pay or a bad-faith refusal to investigate, the tort of bad faith requires proof of the third element [(c)], absence of legitimate reason for denial[.]").  In addition, because Harleysville did have arguable or debatable reasons to deny coverage, it could not have had actual knowledge of the absence of any arguable or debatable reason (element (d)), and it could not have failed to determine whether it had an arguable or debatable reason (conditional element (e)).[6]

---

[6]  As to IP's allegations of bad-faith failure to investigate, to the extent, if any, that Harleysville had a duty to "look beyond the pleadings," it did, by considering Dailey Sr.'s deposition testimony, the Waste Services Agreement, and IP's allegations in the Tennessee complaint (Doc. 39-3, PageID.1135-39).  Each of these supported application of the Pollution Exclusion.  IP claims that Harleysville "fail[ed] to seek information about…Land Clearing's performance and obligations under the [Waste Services Agreement]," but the agreement itself described Land Clearing's "obligations," and the Tennessee complaint described Land Clearing's "performance" (or non-performance).  As to "fail[ure] to investigate the content and proper classification of Organo-Ash," the Policies define "pollutants" as including a "contaminant"; the Alabama action alleges that Organo-Ash is a harmful "contaminant" that damaged JRD and Dailey Sr.'s property; and that allegation is controlling for the duty to defend, no matter the "content and

**B.     IP has no bad-faith claim for Harleysville's denying coverage for the Tennessee action and judgment.**

Count Six of IP's counterclaim alleges that "[a]lthough IP can proceed directly against Harleysville as a result of [IP's] judgment against…Land Clearing," Harleysville "has denied coverage in bad faith, refused to adequately investigate, and failed to provide a defense as required under Alabama law" (Doc. 33, PageID.1075 [¶ 76]).

IP, as a judgment creditor, cannot maintain a bad-faith claim under Ala. Code § 27-23-2. "[Section] 27-23-2 provides the exclusive remedy under Alabama law for direct actions against insurers," <u>Chappell</u>, 2016 WL 3456936, *3, and "plainly limits recovery by the judgment creditor" to "'the insurance money provided for in the contract of insurance,'" <u>Dumas Bros. Mfg. Co. v. Southern Guar. Ins. Co.</u>, 431 So. 2d 534, 536 (Ala. 1983).  In <u>Dumas Brothers</u>, a judgment creditor claimed that the judgment debtor's insurer "[in] bad faith failed to settle the initial suit by [the judgment creditor]…against [the judgment debtor]," and that the insurer therefore owed extracontractual damages for the amount by which the judgment exceeded the policy limits.  <u>Id.</u> at 535 (emphasis added).  The supreme court affirmed dismissal of this claim, because § 27-23-2 only permits recovery of "the insurance money provided for in the contract[.]"  <u>Id.</u> at 535, 536.

IP cannot prove bad faith as to the Tennessee judgment in any event.  The first part of element (a) is the existence of "an insurance contract between the parties."  <u>Brechbill</u>, 144 So. 3d at 257   Though IP is an additional insured, its bad-faith claim in Count Six is not based on that status but on IP's <u>having obtained the judgment against Harleysville's insured, Land Clearing</u>; <u>Land Clearing's</u> allegedly having coverage for the judgment; and Harleysville's refusing to satisfy the judgment under § 27-23-2.  As such, IP is a <u>third-party claimant</u> ***against*** Land Clearing and

---

proper classification of Organo-Ash."  <u>See</u> <u>Sentry</u>, 914 F. Supp. at 500; <u>Tapscott</u>, 526 So. 2d at 572, 575; <u>Ladner & Co.</u>, 347 So. 2d at 103.

Harleysville, and IP *in that capacity* has no insurance contract with Harleysville.  See State Farm Fire & Cas. Co., 300 So. 3d at 565 (plaintiff suing under § 27-23-2 "is not a party to the insurance contract upon which he or she is basing the lawsuit").  Harleysville therefore owed IP no duty of good faith and fair dealing.  An insurer owes this duty "to its insured," Wright v. State Farm Fire & Cas. Co., 1997 WL 114902, *3 (M.D. Ala. Feb. 14, 1997), and bad faith is limited "to circumstances in which there is a direct contractual relationship between plaintiff and insurer, and a typical insurer/insured relationship exists," Jones v. General Ins. Co. of Am., 2009 WL 1537866, *13 (S.D. Ala. May 29, 2009) (Steele, J.).  See also Oliver v. M/V Barbary Coast, 901 F. Supp. 2d 1340, 1345 (S.D. Ala. 2012) ("[B]ad faith insurance claims by third-party beneficiaries are precluded in Alabama."); Jones, 2009 WL 1537866, *14 (plaintiff had no bad-faith claim "because she is a third-party beneficiary" and "lacks a direct contractual relationship with [insurer]").

In addition and as previously discussed, coverage for Land Clearing for IP's contractual-indemnity claim and judgment in the Tennessee action, depends on coverage for JRD and Dailey Sr.'s claims against IP in the Alabama action.  Harleysville does not owe coverage for JRD and Dailey Sr.'s claims, so it cannot have breached the Policies (second part of element (a)) in denying coverage for the Tennessee action and judgment.  Land Clearing's breaching the notice conditions by not timely notifying Harleysville of an "occurrence" that might result in IP's making a contractual-indemnity claim, and of IP's actual claim when made (on August 21, 2019 [Doc. 33, PageID.1066 [¶ 23])), are another reason Harleysville did not breach the Policies by denying coverage for the Tennessee action and judgment.  See Estate of Files, 10 So. 3d at 534-36.

Harleysville had arguable or debatable reasons for denying coverage for the Alabama action, so it also had arguable or debatable reasons for denying coverage for the Tennessee action and judgment (thus, IP cannot prove element (c)).  And, Land Clearing's breaching the notice

conditions as to an "occurrence" and as to IP's contractual-indemnity claim, gave Harleysville

another arguable or debatable reason for denying coverage for the Tennessee action and judgment.

Since Harleysville <u>had</u> arguable or debatable reasons, it <u>could not have had</u> actual knowledge of

the <u>absence</u> of arguable or debatable reasons (element (d)), and <u>could not have failed to determine</u>

whether it had such reasons (conditional element (e)).

CONCLUSION

The Court should grant judgment on the pleadings for Harleysville and against all

Defendants on Harleysville's claim for a declaratory judgment that it has no duty to defend or

indemnify IP for the Alabama action or Land Clearing for the Tennessee action. The Court should

also grant judgment on the pleadings for Harleysville on all of IP's counterclaims.

<br>

*/s/ William E. Shreve, Jr.*
WILLIAM E. SHREVE, JR.      SHREW3946
BREANNE S. ZARZOUR        ZARZJ7602
Attorneys For Plaintiff

OF COUNSEL:

PHELPS DUNBAR LLP
P.O. Box 2727
Mobile, AL  36652
Telephone:  (251) 432-4481
william.shreve@phelps.com
brie.zarzour@phelps.com

*/s/ Christina M. Bolin*
CHRISTINA M. BOLIN
EDGAR M. ELLIOTT, IV
Attorneys For Plaintiff

OF COUNSEL:

CHRISTIAN & SMALL LLP
505 North 20th St., Ste. 1800
Birmingham, AL  35203
Telephone:  (205) 785-6588
cmbolin@csattorneys.com
emelliott@csattorneys.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on May 11, 2021 filed the foregoing with the clerk of court by using the CM/ECF system, which will electronically serve the foregoing on the counsel listed below:

John M. Johnson, Esquire
Brian P. Kappel, Esquire
Charles M. Hearn, Esquire
Lightfoot, Franklin & White, LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203
jjohnson@lightfootlaw.com
bkappel@lightfootlaw.com
chearn@lightfootlaw.com

Joseph C. McCorquodale III, Esquire
Post Office Box 1137
Jackson, Alabama 36545
mccmc@mcorquodalelawfirm.com

A. David Fawal
Butler Snow LLP
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, AL  35203
david.fawal@butlersnow.com

Christina M. Bolin
Edgar M. Elliott IV
CHRISTIAN & SMALL LLP
505 North 20th St., Ste. 1800
Birmingham, AL  35203
Telephone:  (205) 785-6588
cmbolin@csattorneys.com
emelliott@csattorneys.com

*/s/ William E. Shreve, Jr.*
WILLIAM E. SHREVE, JR

PD.33638566.1