**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **HARLEYSVILLE PREFERRED** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No.:** |
| | ) | **1:20-CV-00340-TFM-B** |
| **INTERNATIONAL PAPER COMPANY,** | ) | |
| **JRD CONTRACTING & LAND** | ) | **ORAL ARGUMENT REQUESTED** |
| **CLEARING, INC., JOHN R. DAILEY** | ) | |
| **SR., AND JRD CONTRACTING, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

===================================================================

**DEFENDANT INTERNATIONAL PAPERS COMPANY'S
OPPOSITION TO HARLEYSVILLE'S MOTION FOR
JUDGMENT ON THE PLEADINGS
AND CROSS MOTION FOR JUDGMENT ON THE PLEADINGS**

| | |
|---|---|
| | **John M. Johnson** |
| | **Brian P. Kappel** |
| **A. David Fawal** | **Charles M. Hearn** |
| **BUTLER SNOW LLP** | **LIGHTFOOT, FRANKLIN & WHITE, LLC** |
| One Federal Place, Suite 1000 | The Clark Building |
| 1819 5th Avenue North | 400 20th Street North |
| Birmingham, Alabama 35203 | Birmingham, Alabama 35203 |
| Telephone:  (205) 297-2200 | Telephone:  (205) 581-0700 |
| Facsimile:  (205) 297-2100 | Facsimile:  (205) 581-0799 |
| david.fawal@butlersnow.com | jjohnson@lightfootlaw.com |
| | bkappel@lightfootlaw.com |
| | chearn@lightfootlaw.com |

*Attorneys for International Paper Co.*

# TABLE OF CONTENTS

Table of Exhibits ...................................................................................................... ii

Introduction ............................................................................................................. 1

Statement of Undisputed Facts ............................................................................... 2

Legal Argument ...................................................................................................... 6

    A.   MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD ......................................... 6

    B.   PLAINTIFF'S FAILURE TO DELIVER THE POLICY TO IP PURSUANT TO ALA. CODE §27-14-19 (1975) PREJUDICED IP AND ESTOPS THE ASSERTION OF CONDITIONS AND/OR EXCLUSIONS UNDER THE POLICY .............................................................. 7

    C.   IF THE COURT FINDS PLAINTIFF IS NOT ESTOPPED FROM RELYING ON THE NOTICE CONDITION IN THE POLICY, THEN IP'S NOTICE TO PLAINTIFF WAS REASONABLE AS A MATTER OF LAW .................................................................... 11

    D.   HARLEYSVILLE HAS A DUTY TO DEFEND IP AND IMPROPERLY DENIED COVERAGE AND DEFENSE ...................................................................................... 15

    E.   THE DUTY TO INDEMNIFY ISSUE IS NOT RIPE ........................................................ 26

    F.   IP'S COUNTERCLAIMS OF BREACH OF CONTRACT AND BAD FAITH ........................ 28

    G.   IP'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO THE DUTY TO DEFEND ... 28

Conclusion ............................................................................................................ 29

Certificate of Service ............................................................................................ 32

i

**TABLE OF EXHIBITS**

Documents attached as exhibits and referenced are central to (1) the claims in the underlying Alabama action, the Tennessee action, and this action; (2) pleadings and documents which the court can take judicial notice; and/or (3) public records. The authenticity of these is undisputed.

Exhibit A -    IP Tennessee Action Declaratory Judgment Complaint against JRD Contracting and Land Clearing dated February 14, 2020

Exhibit B -    Certificate of Insurance dated March 24, 2017

Exhibit C -    Alabama Action Complaint *with Exhibits* filed May 18, 2018

Exhibit D -    Services Agreement between IP and JRD Contracting and Land Clearing, Inc.

Exhibit E -    IP counsel Johnson's letter to Counsel for Dailey Sr and JRD Contracting, Inc. dated August 21, 2019

Exhibit F -    IP counsel Mathis' letter to Harleysville Ins. Co. dated March 23, 2020 without exhibits

Exhibit G -    IP counsel Mathis' email to Harleysville's adjuster dated April 22, 2020

Exhibit H -    Nationwide/Harleysville Adjuster's email to IP counsel Mathis dated May 6, 2020

Exhibit I -    Letter of Ruben Soto with IP to Mr. Dailey Sr. dated December 20, 2017

Exhibit J -    Affidavit of Clifford R. Lange, PhD. dated July 30, 2020

COMES NOW Defendant International Paper Company (hereinafter "IP") and files its opposition to Plaintiff Harleysville Preferred Insurance Company's (hereinafter "Plaintiff" or "Harleysville") Motion for Judgment on the Pleadings [Doc.40] and Brief in Support [Doc. 44] and also submits its Cross-Motion for Judgment on the Pleadings as to the issue of Harleysville's duty to defend.  IP submits the following in support:

### INTRODUCTION

This declaratory judgment action arises out of Plaintiff's denial of coverage, defense and indemnity to additional insured, IP, under a commercial liability policy in force during all times relevant to the facts in the pending litigation *John R. Dailey, Sr. and JRD Contracting, Inc[1]. vs. IP, et. al*, Civil Action No. CV-2018-900045 (Circuit Court of Wilcox County, Alabama) (hereinafter "Alabama action" or "underlying action") and indemnity relating to the default judgment obtained by IP against JRD Contracting & Land Clearing, Inc. (hereinafter "JRD Land Clearing") in the federal action *IP v. JRD Contracting & Land Clearing, Inc.*, Civil Action No. 2:20-cv-02113 (U.S. District Court for the Western District of Tennessee) (hereinafter "Tennessee action"). Pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, Plaintiff seeks declarations regarding (1) whether Plaintiff owes coverage, defense and indemnity to IP in the Alabama action; and (2) whether Plaintiff owes coverage to JRD Land Clearing for all claims asserted in the Tennessee action, in which IP claims that JRD Land Clearing owes IP contractual indemnity for the Alabama action.  Plaintiff filed a Motion for Judgment on the Pleadings asserting there are no material facts in dispute and that it is entitled to judgment as a matter of law. There are indeed numerous material facts in dispute as to several issues precluding relief under Rule 12(c), and Plaintiff's motion is due to be denied. Moreover, IP's own Cross-Motion for Judgment on the Pleadings, as to the issue of Plaintiff's duty to defend, is due to be granted.

---

[1] Hereinafter "JRD Contracting."

1

## STATEMENT OF UNDISPUTED FACTS

1.    Plaintiff Harleysville issued commercial general liability policies to JRD Land Clearing for policy periods from August 31, 2015 through August 13, 2018. The policies were in full force and effect at all times relevant to the Alabama action.  [Docs. 1-1, 1-2 and 1-3]

2.    JRD Contracting is an Alabama Corporation with its principal place of business in Camden, Alabama.   [Doc 1, ¶ 5]   JRD Land Clearing is an Alabama corporation with its principal place of business in Camden, Alabama. [Doc. 1, ¶ 3] John R. Dailey Sr. ("Dailey Sr.") is a citizen of Alabama. [Doc. 1, ¶4]

3.    IP is the owner and operator of a paper mill in Pine Hill, Wilcox County, Alabama. [Exhibit A, Doc 1, ¶6] At all times relevant, IP was listed as an additional insured on the policies of insurance issued by Plaintiff.  [Exhibit B]

4.    IP produces Organo-Ash as part of its paper-manufacturing process at the Pine Hill Mill.  Organo-Ash is a mixture of wood and coal ash. [Exhibit A, Doc 1, ¶7] Organo-Ash is a good source of organic material, contains essential nutrients for plants and provides significant nitrogen when used as a top dressing.  [Exhibit C, Doc. 1, Exhibit 2, pgs. 27, 30, 33, 36, and 39] Organo-Ash is also suitable for use in landscaping projects, roadway embankments and subsurface fills for recreational areas.  [Exhibit C, Doc. 1, Exhibit 3, p. 43]

5.    IP retains the services of independent contractors to collect and transport the Organo-Ash from IP's Pine Hill Mill to landowners that have enrolled into an Organo-Ash program.  JRD Land Clearing entered into a Services Agreement with IP in August 2016 for that purpose. [Exhibit D]

6.    The Services Agreement required JRD Land Clearing to maintain insurance coverage as specified in Article 16 of the Agreement. [Exhibit D, Article 16]   Additionally, JRD Land Clearing was required to "make IP an additional insured on [JRD Contracting's]

Commercial General Liability ….” Policy.  *See* Exhibit D, Article 16, ¶4.   [Doc. 34, p.23] The

Services Agreement also contains an indemnity provision. Under the indemnity provision, JRD

Land Clearing agreed to:

> assume[] the defense and entire responsibility and liability for any and all
> damage or injury of any kind or nature whatsoever . . . to all persons,
> whether employed by [JRD Land Clearing] or otherwise . . . . If any
> person makes a claim for any such damage or injury . . ., [JRD Land
> Clearing] agrees to indemnify and save harmless the IP, its agents,
> servants and employees from and against any and all loss, damages, injury
> or expenses including reasonable attorney’s fees that IP may sustain as a
> result of any such claims, and [JRD Land Clearing] agrees to assume, on
> behalf of IP, the defense of any action at law or in equity, which may be
> brought against IP upon such claim and to pay on behalf of IP upon its
> demand, the amount of any judgment that may be entered against IP in any
> such action.

[Exhibit D, Article 16, ¶ 6] In 2017, IP terminated the Services Agreement with JRD Land

Clearing [Exhibit A, Doc. 1, ¶14]

     7.     On May 18, 2018, Dailey Sr. and JRD Contracting filed a lawsuit against IP and

others in the Circuit Court of Wilcox Co., Alabama (i.e., the Alabama action) alleging conduct

that occurred prior to IP’s termination of the Services Agreement with JRD Land Clearing.

[Exhibit C and Doc 39-2] Over time, it is alleged Organo-Ash was stockpiled on the subject

property in the Alabama action causing damage to the real property. [Exhibit A, Doc. 1, ¶18 and

Exhibit C, Doc. 1, ¶15]

     8.     Attached to the Complaint in the Alabama action were various exhibits regarding

the organic makeup of Organo-Ash.  Included in the Exhibits were letters from Dr. Clifford

Lange from Auburn University over numerous years detailing his analysis of Organo-Ash.  Dr.

Lange described Organo-Ash as a “good source of soil organic material,” it would “provide

significant nitrogen when used as top dressing”, and that “calcium, iron, potassium, magnesium,

sulfur and sodium, which are essential nutrients for plants” were present in Organo-Ash.

[Exhibit C, Doc 1, Ex. 2, pgs. 27,30,33,36 and 37]   A Synterra Technical Memorandum dated December 11, 2015 was also attached as an exhibit which, amongst other testing, was to determine if Organo-Ash presented an environmental hazard. The Synterra memo concluded that Organo-Ash was safe to use in landscaping areas, roadway embankments and for recreational uses such as "athletic fields."  [Exhibit C, Doc. 1, Ex. 3, pgs. 42-45]

9.      IP had no record of Organo-Ash being sent to JRD. Inc.'s subject property at issue in the Alabama action.  On February 13, 2019, after months of IP seeking information about the source of the alleged Organo-Ash, the Alabama action Plaintiffs made supplemental discovery responses to IP's discovery, disclosing for the first time JRD Land Clearing had placed the Organo-Ash on the subject property.  [Doc. 34, p. 24, ¶19]

10.      Even though the subject property in the Alabama action was not designated as an Organo-Ash land application site, and in direct violation of the Services Agreement, JRD Land Clearing stockpiled residual Organo-Ash from its dump trucks on that subject property. The deposition of Dailey Sr. on April 17, 2019 confirmed JRD Land Clearing was the source of the Organo-Ash being deposited on the subject property, not IP. [Exhibit A, Doc. 1, ¶17, Doc. 34, p. 24, ¶¶ 19-21, and Doc. 1-5, pgs. 68:16-25 and 69:1-10]

11.      After learning additional facts, in July 2019, IP reviewed a relevant certificate of insurance identifying Harleysville as the insurer and including IP as a named additional insured. [Doc. 34, p. 24, ¶22] On August 21, 2019, IP's counsel made a formal demand to JRD Land Clearing that it provide IP a defense and indemnification in the Alabama action pursuant to the Services Agreement. IP also demanded JRD Land Clearing put Harleysville on notice of the claims made in the Alabama action and provide copies of the relevant policies. [Exhibit E]

12.     Unbeknownst to IP, JRD Land Clearing failed to notify Harleysville of the Alabama action, and further failed to provide the policies as requested.  [Exhibit A, Doc. 1, ¶ 22] On February 14, 2020, IP filed a declaratory judgment action against JRD Land Clearing (i.e. Tennessee action). [Exhibit A]

13.     On March 23, 2020, IP's counsel made a written demand to Harleysville for a defense and indemnity for IP in the Alabama action and requested copies of the subject policies. [Exhibit F] On March 30, 2020, JRD Land Clearing's counsel made a written demand to Harleysville for a defense and indemnity for JRD Land Clearing in the Alabama action. [Doc. 34, p. 25, ¶30]

14.     On April 22, 2020, IP's counsel again requested Harleysville provide a copy of the relevant policies. [Exhibit G] On May 6, 2020, IP's counsel received for the first time a copy of the relevant policies from Harleysville. Prior to this date, despite repeated requests, JRD Land Clearing and Harleysville failed to deliver the requested relevant insurance policies to IP. [Exhibit H]

15.     On May 15, 2020, Harleysville denied IP's request for coverage, defense and indemnity relating to the Alabama action and indemnity in the Tennessee action.  [Doc. 39-3]

16.     On June 4, 2020, IP responded to Harleysville's denial letter, providing additional information refuting Harleysville's reasons for denial. [Doc. 39-4] Instead of investigating the information provided by IP in its June 4, 2020 letter, Plaintiff filed this Declaratory Judgment action on June 30, 2020. [Doc. 1]

17.     On July 17, 2020, the Court in the Tennessee action granted IP's Motion for Default Judgment and held: (1) JRD Land Clearing is required to defend and indemnify IP in the Alabama Action per the terms of the Services Agreement and JRD Land Clearing was required

to place its insurance carriers on notice of the claims against IP in the Alabama Action; and (2) JRD Land Clearing breached the Services Agreement by failing to defend and indemnify IP in the Alabama Action.  The Court reserved the issue of damages for JRD Land Clearing's breach pending resolution of the Alabama action. [Doc28-2] Plaintiff is responsible for providing that defense and indemnity, both directly since IP is an additional insured under the applicable policies and indirectly through JRD Land Clearing, which Plaintiff is required to defend and indemnify under the applicable policies.  [Doc. 34, p. 27, ¶43]

**LEGAL ARGUMENT**

**A.     MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD**

Pursuant to FED.R.CIV.P. 12(c), judgment on the pleadings is appropriate when the facts as alleged in the complaint are accepted as true and are viewed in the light most favorable to the nonmoving party.  *State Farm Fire and Cas. Co. v. Lacks*, 840 F.Supp.2d 1292, 1294 (M.D. Ala. 2012). The court may also consider "any exhibits attached to the complaint as well as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Id.* Relief sought under Rule 12(c) "is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008) (emphasis added) (internal citations omitted). Here there are multiple material facts in dispute which bar the relief Plaintiff seeks pursuant to Rule 12(c), and conversely, support IP's own motion for judgment on the pleadings.

Courts have held that a fact is material "if it 'might affect the outcome of the suit under the governing law.'"  *Auto-Owners Ins. Co. v. McMillan Trucking Inc.*, 242 F. Supp. 3d 1259, 1263 (N.D. Ala. 2017) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  Further, "[t]here is a 'genuine dispute' as to a material fact 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

*McMillan*, 242 F. Supp. 3d at 1263.  In such instances, the court "should not weigh the evidence but must simply determine whether there are any genuine issues that should be addressed at trial." *Id.*  As will be shown in more detail below, there is a genuine dispute as to multiple material facts that preclude Plaintiff the relief sought.  Specifically, there are material fact disputes as to:

    (1)    the status of IP as an additional insured under the policy of insurance;

    (2)    whether Plaintiff was required to provide a copy of the policy to IP as a named additional insured pursuant to Ala. Code § 27-14-19 (1975);

    (3)    whether the failure of Plaintiff to provide a copy of the policy to IP pursuant to Ala. Code §27-14-17 prejudices IP and estops Plaintiff from asserting conditions and/or exclusions under the policy of insurance;

    (4)    whether the alleged delay in IP's notice to Plaintiff was reasonable under the circumstances;

    (5)    whether the Pollution Exclusion is applicable given the factual evidence (attached to the Complaint in the Alabama action) establishing Organo-Ash is not a pollutant, contaminant and/or waste and factual evidence that Organo-Ash was not regulated by the Alabama Department of Environmental Management as a waste, at all times relevant to the Alabama action;

    (6)    whether Harleysville failed to conduct a thorough investigation into IP's demand for coverage, defense and indemnity prior to issuing its denial; and

    (7)    whether the allegations in the Alabama action triggered Plaintiff's duty to defend IP.

Plaintiff's Motion for Judgment on the Pleadings is due to be denied as a matter of law, and IP's is due to be granted as to Harleysville's duty to defend.

    **B.    PLAINTIFF'S FAILURE TO DELIVER THE POLICY TO IP PURSUANT TO ALA. CODE §27-14-19 (1975) PREJUDICED IP AND ESTOPS THE ASSERTION OF CONDITIONS AND/OR EXCLUSIONS UNDER THE POLICY**

    ALA. CODE §27-14-19(a) requires that "every policy shall be mailed or delivered to the insured *or to the person entitled* thereto within a reasonable period of time after its issuance." (emphasis added).  Failure to comply with §27-14-19 may result in the insurer being "estopped

from asserting conditions of, or exclusions from, coverage where such a purchaser or insured is prejudiced…." *Brown Mach. Works & Supply Co. Inc. v. Ins. Co. of N. Am.*, 659 So.2d 51, 61 (Ala. 1995).   "Permitting such an estoppel is a reasonable means to further the obviously beneficent purpose of the statute." *Id.* at 58.

Plaintiff conditionally concedes IP is "an additional insured under the Policies to the extent described in the endorsements." [Doc 44, p. 4]   Plaintiff, however, mischaracterizes IP as an "unnamed" additional insured.  [Doc. 44, p. 21]   To the contrary, IP is actually an additional insured named on the Certificate of Insurance ("COI") at issue:

> DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
> International Paper Company, its subsidiaries and affiliated Companies are named as Additional Insured for the General Liability and Auto Liability.
> Waiver of Subrogation applies to the additional insured with respect to General Liability, Auto Liability and Workers Compensation.

[Exhibit B] In light of IP being named as an additional insured on the COI, an analysis of the "hypothetical spectrum of possible insureds or of persons…" entitled to delivery of a policy pursuant to §27-14-19 is not required.  *Brown*, 659 So.2d at 60.  Because IP is specifically listed, it would qualify as a "*person entitled*" to delivery of applicable policies pursuant to §27-14-19(a) and Harleysville's arguments to the contrary entirely miss its mark.

As an additional insured listed on the COI, Plaintiff was on notice of the existence of IP and was required to provide IP with a copy of the policy within a reasonable time after issuance pursuant to §27-14-19. At a minimum, IP's entitlement to the Policy under these facts is one example of disputed material facts precluding the relief sought by Plaintiff pursuant to Rule 12(c). Under these circumstances, a genuine issue of material fact exists as to whether IP, as a known additional insured named on the COI, is entitled to the delivery of the policy at issue within a reasonable time after its issuance as required under §27-14-19.  Plaintiff was statutorily mandated by §27-14-19 to provide a copy of the actual applicable policies to IP without delay.

Plaintiff's failure to provide a copy of the applicable policies to IP, a named additional insured, within a reasonable time after issuance has indeed prejudiced[2] IP, which also highlights the existence of another disputed material issue of fact. Failing to receive delivery of a policy of insurance is only actionable when prejudice can be demonstrated. *Nance v. Southerland*, 79 So.3d. 612, 622 (Ala. Civ. App. 2010) (citing *Akpan v. Farmers Ins. Exch., Inc.,* 961 So.2d 865, 871 (Ala.Civ.App.2007)). "Prejudice obviously may occur when an insured has no actual or constructive knowledge of a limitation on, or exclusion from, coverage until delivery of the policy…" *Nance*, 79 So.3d at 622. While the Services Agreement between JRD Land Clearing and IP specifically sets out the scope and requirements of JRD Land Clearing in securing appropriate policies, IP did not have actual or constructive knowledge of the specific terms, conditions, limitations and/or exclusions of the policies issued to JRD Land Clearing [Exhibit D, Articles 16.1(c), 16.4 and 16.5]. The COI clearly states that it "is issued as a matter of information only…" [Exhibit B] and does not set out the specific terms, conditions, limitations and/or exclusions of the policies. "[A]n additional insured cannot rely on certificates of insurance alone as proof of coverage as 'the insurance policy is the controlling document.'" *Madison County v. Evanston Ins. Co.*, 340 F. Supp. 3d 1232, 1287 (N.D. Ala. 2018). When a company requires another to obtain insurance naming it as an additional insured, "that party should not rely on a mere certificate of insurance…" *Id.* Without conceding any of Harleysville's claimed coverage issues and in arguendo, had IP timely received a copy of the applicable policy secured

---

[2] Plaintiff incorrectly asserts IP did not claim in the June 4, 2020 letter of counsel, has not pleaded and cannot show prejudice. [Doc. 44, p. 21]. To the contrary, the letter of IP's counsel of June 4, 2020, raises the issue of estoppel for failure to deliver copies, cites §27-14-19, cites *Brown*, 659 So.2d at 58 which discusses the statutory mandate of insurers to deliver policies and the issue of prejudice.[Doc. 39-4] Further, paragraphs 11 and 19 of IP's Answer and Counterclaims [Doc. 34] pleads estoppel and the issue of Plaintiff's failure to fulfil its statutory and other obligations under Alabama law. Prejudice is inherently intertwined with any analysis of the above. Lastly, IP has shown concrete prejudice in Section B of its Opposition above.

by JRD Land Clearing and issued by Plaintiff, IP could have learned whether the policy actually provided the expected coverage required by the terms of the Services Agreement, addressed any inadequacies of those policies with JRD Land Clearing, and if deficient, demanded JRD Land Clearing secure the scope of insurance coverage agreed to by the parties in the Services Agreement and if, by chance, those inadequacies were not remedied by JRD Land Clearing, then IP had the option to terminate the Services Agreement. The arguments made by Plaintiff regarding IP being a large, sophisticated corporation and having knowledge of standard commercial general liability contracts in no way absolves Plaintiff of its statutory mandate to deliver policies to those known to be entitled to receive them.  The detailed circumstances above demonstrate prejudice to IP due to the failure of Plaintiff to comply with §27-14-19 by failing to deliver the policy of insurance within a reasonable time after issuance which would place IP on actual notice of the specific terms, limitations, conditions and exclusions of the policies purchased by JRD Land Clearing. At a minimum, a genuine fact dispute exists which bars Plaintiff's Rule 12(c) relief.

IP's counsel requested copies of the relevant policies from JRD Land Clearing in August 2019 but never received them. [Exhibit E] In March and April 2020, both prior to Plaintiff's denial of coverage, defense and indemnity, IP's counsel requested copies of relevant policies from Plaintiff. [Exhibits F and G] It was not until May 6, 2020, that Plaintiff emailed copies of the relevant policies to IP's counsel. [Exhibit H] Plaintiff denied coverage, defense and indemnity nine days later based on the notice provision and exclusions of applicable policies IP had just received. Again, IP did not have actual or constructive knowledge of the terms, conditions, limitations and exclusions of the applicable policies until nine days before Plaintiff's denial letter.

Lastly, a clear demonstration of prejudice is the fact that Plaintiff failed to deliver the policy of insurance to IP within a reasonable time after the issuance and then denied coverage on the basis that IP breached the policy's notice conditions. It is highly disingenuous of Plaintiff to claim IP breached a condition of the policy that IP did not receive until nine days prior to denial (and, as Harleysville's argument goes, was never entitled to receive).  Based on the foregoing, Plaintiff failed to comply with §27-14-19 which prejudiced IP, and Plaintiff is estopped from denying coverage based on any condition, limitation and/or exclusion in the policy at issue as a matter of law.  Indeed, should the Court agree with IP on this issue, the analysis ends, Plaintiff's motion must be denied, and IP's motion must be granted.

**C.    IF THE COURT FINDS PLAINTIFF IS NOT ESTOPPED FROM RELYING ON THE NOTICE CONDITION IN THE POLICY, THEN IP'S NOTICE TO PLAINTIFF WAS REASONABLE AS A MATTER OF LAW**

Plaintiff argues that it should be relieved of its duty to defend IP in the underlying litigation because IP and JRD Land Clearing breached the policy's notice conditions by failing to give timely notice of the underlying occurrence and lawsuit. [Doc 44, p.17] Again, it is disingenuous for Plaintiff to claim IP breached the policy of insurance which was never delivered to IP as a known additional insured (and, as Harleysville's argument goes, IP was never entitled to receive), yet deny coverage and defense for failing to comply with the provisions contained therein to which it had no notice. The applicable COI was for informational purposes only and did not set out the specific policy terms, limitations, conditions and exclusions necessary to place IP on actual or constructive notice[3].  For purposes of argument only, even if JRD Land Clearing failed to provide notice to Plaintiff it should not preclude IP from coverage

---

[3] As set out in section B above, COIs alone should not be relied upon. *See Evanston*, 340 F. Supp.3d at 1287.  Further, JRD Land Clearing is not seeking coverage and a defense under the policy of insurance in the Alabama action.

and defense under the applicable policy when IP's notice to Plaintiff as an additional insured was reasonable as a matter of law.

Plaintiff cites policy language which requires notice of a claim or suit and written notice of the same "as soon as practicable" and any other involved insured must "immediately" submit copies of any demands, lawsuits, etc. relating to the claim or suit.  [Doc. 44, p.17] Under Alabama law, the phrase "as soon as practicable," when used in the context of notice, is construed to require notice "within a reasonable time in view of the facts and circumstances of the case." *State Farm Fire and Cas. Co. v. Bullin*, 2021 WL 1820688 at *3 (S.D. Ala. May 6, 2021) (DuBose, J.); *Assurance Co. of America v. Admiral Ins. Co.,* 2001 WL 1897494, at *6 (S.D. Ala. May 18, 2011) (Granade, J.),[4] *Progressive Specialty Ins. Co. v. Steele ex rel. Steele*, 985 So. 2d 932, 941 (Ala. Civ. App. 2007). When analyzing whether a delay in giving notice was reasonable, courts consider only two factors: "the length of the delay and the reasons for the delay." *Bullin*, 2021 WL 1820688, at *3. If there are disputed facts as to the question of reasonableness of a delay in giving notice, then such is a fact question for the jury. *Id. see also American Liberty Ins. Co. v. Soules*, 258 So.2d 872, 881 (Ala. 1972).  In this matter, there are disputed facts as to the reasonableness of the delay in giving notice; therefore, the relief sought by Plaintiff pursuant to Rule 12(c) should be denied as a matter of law.

IP and JRD Land Clearing were parties to a June 1, 2016, Services Agreement. [Exhibit D] Pursuant to the Services Agreement, JRD Land Clearing was to procure commercial general

---

[4] While the courts in *Bullin* and *Assurance* found the delayed notice unreasonable, the facts of those cases are distinguishable from this matter.  In *Bullin*, the court held the insured, who had previously received a copy of the policy, was presumed under Alabama law to know the policy provisions so his argument of not having access to the policy while incarcerated was an insufficient excuse under the circumstances.  In *Assurance*, while one insurer was on notice of the underlying injury, it claimed no communication for over a year, no knowledge of the civil lawsuit or that the second insurer had brokered a settlement.  When the second insurer sought coverage for the settlement, the court held the delay in notice was not reasonable.

liability insurance along with other specific policies and JRD Land Clearing was required to make IP an additional insured.  JRD Land Clearing procured policies of insurance and those policies were in full force and effect at all times relevant to the underlying action.  [Doc. 34, p.23].  On April 6, 2017, IP provided 30-day notice of its decision to terminate the Services Agreement with JRD Land Clearing. On May 18, 2018, John R. Dailey, Sr. and JRD Contracting filed suit against IP and others in the Alabama action, alleging they had suffered damages from Organo-Ash being deposited on property owned by them.  IP had no record of Organo-Ash being sent to any property at issue in the suit and, on multiple occasions through discovery and otherwise, sought information from John R. Dailey, Sr. and JRD Contracting regarding the alleged source of the Organo-Ash.  On February 13, 2019, John R. Dailey, Sr. and JRD Contracting made supplemental responses to IP's discovery requests in the Alabama action, disclosing for the first time that the source of the Organo-Ash was JRD Land Clearing.  On April 17, 2019, IP's counsel took the deposition of John R. Dailey, Sr. in the Alabama action. Dailey, Sr. testified that the Organo-Ash was deposited on the subject properties by JRD Land Clearing. In July 2019, IP reviewed the relevant COI identifying Harleysville as JRD Land Clearing's insurer.  [Doc. 34, p. 24, ¶ 16-22]

On August 21, 2019, IP's counsel made a formal demand to JRD Land Clearing to provide IP a defense and indemnity in the Alabama action pursuant to the Services Agreement. That correspondence also demanded that JRD Land Clearing put Harleysville on notice of the claims made in the Alabama action and provide copies of the relevant policies, which Harleysville had previously failed to provide. Unbeknownst to IP, JRD Land Clearing failed to notify Harleysville of the Alabama action. JRD Land Clearing also failed to provide IP copies of the relevant policies. On February 14, 2020, IP sued JRD Land Clearing in the Tennessee action.

JRD Land Clearing did not appear in the Tennessee action or otherwise answer IP's Complaint in that action. On March 23, 2020, IP's counsel made a written demand to Harleysville for a defense and indemnity for IP in the Alabama action and requested copies of the subject policies. On March 30, 2020, JRD Land Clearing's counsel made written demand to Harleysville for defense and indemnity for JRD Land Clearing in the Tennessee action.  Harleysville responded by requesting that IP take no adverse action against JRD Land Clearing in the Tennessee action until May 22, 2020.  IP consented to Harleysville's request and did not move for a default judgment against JRD Land Clearing although entitled to do so. [Doc. 34, p. 25, ¶¶ 14 and 23-32]. On April 22, 2020, IP's counsel again requested Harleysville provide a copy of the relevant policies. [Exhibit G] IP did not receive the policies until May 6, 2020. On May 15, 2020, Harleysville denied IP's request for coverage in writing to IP's counsel. [Doc. 34, p. 26, ¶34]

There is no concrete rule as to what constitutes a reasonable time in view of all the facts and circumstances in the context of notice. Some courts have found that delays of four and eight months were unreasonable while other courts have found much longer delays in providing notice were not unreasonable.  *See USF Ins. Co. v. Metcalf Realty Co., Inc.,* 2013 WL 4679833 (N.D. Ala. Aug. 30, 2013) (four-month delay unreasonable); *Pharr v. Cont. Cas. Co.*, 429 So.2d 1018 (Ala. 1983) (eight-month delay unreasonable); and *United States Fid. & Guar. Co. v. Bonitz Insulation Co. of Ala.*, 424 So.2d 569 (Ala. 1982) (four year delay in providing notice was not unreasonable under the circumstances). "If conflicting inferences [regarding the reasonableness of the delay] can be drawn from the evidence, the question of reasonableness is submitted to the trier of fact." *Travelers Indem. Co. of Conn. v. Miller*, 86 So.3d 338, 344 (Ala. 2011); s*ee also Soules*, 258 So.2d at 881.  Reasonable minds could differ over whether IP's delay was reasonable under the circumstances. For example, a trier of fact could infer that it was reasonable for IP to

assume JRD Land Clearing would place its insurer on notice given IP's demand in August 2019. A trier of fact could also infer that IP's notice was reasonable under the circumstances given Plaintiff's failure to provide IP with a copy of the applicable policy of insurance containing the specific terms, conditions, limitations and exclusions; i.e. specific notice requirements, until May 6, 2020. Although IP contends notice was reasonable under the circumstances as set forth above, Plaintiff disputes IP's reasonableness argument. Therefore, these conflicting positions create a genuine dispute as to a material fact which must be determined by the jury, thus precluding Plaintiff's relief sought under Rule 12(c). *See Miller*, 86 So.3d at 344 and *Soules*, 258 So.2d at 881. Further based on the violation of §27-14-19, Harleysville is estopped from asserting the notice condition to deny coverage and a defense for IP in the Alabama action and indemnity in the Tennessee action. For this reason, IP's motion for judgment on the pleadings as to Plaintiff's duty to defend is due to be granted.

### D. HARLEYSVILLE HAS A DUTY TO DEFEND IP AND IMPROPERLY DENIED COVERAGE AND DEFENSE

Plaintiff concedes IP is an additional insured under the policy of insurance. [Doc 44, p. 6 of 36]. Under Alabama law, an insurer's duty to defend is broader than its duty to indemnify. *Graham v. Preferred Abstainers Ins. Co.*, 689 So. 2d 188 (Ala. Civ. App. 1997). An insurer's duty to defend is primarily determined by comparing the language of the insurance policy with the allegations made in a complaint filed against the insured. *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 14 (Ala. 2001); *Adjarodini v. State Auto Mut. Ins. Co.*, 628 So. 2d 312, 313 (Ala. 1993). If the allegations of a complaint set forth a set of facts within the coverage of the insurance policy, the insurer is obligated to defend the insured regardless of the ultimate liability of the insured. *Chandler v. Ala. Mut. Ins. Co.*, 585 So. 2d 1365, 1367 (Ala. 1991). The Alabama Supreme Court "has rejected the argument that the insurer's obligation to defend must be

determined solely from the facts alleged in the complaint in the action against the insured." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So.2d 1006, 1010 (Ala. 2005) quoting *Ladner & Co., Inc. v. Southern Guaranty Ins. Co.*, 347 So.2d 100, 103 (Ala. 1977). Further, if any uncertainty exists on whether the alleged facts of the underlying complaint trigger a duty to defend, "the insurer must investigate the facts surrounding the incident" … "to determine whether it has a duty to defend the insured." *Merchants,* 928 So.2d at 1012 (Ala. 2005). "When a complaint alleges both acts covered under the policy and acts not covered, the insurer is under a duty to at least defend the allegations covered by the policy." *Acceptance*, 832 So.2d at 14. *See Blackburn v. Fid. & Deposit Co. of Md.*, 667 So.2d 661, 670 (Ala.1995) and *Tapscott v. Allstate Ins. Co.,* 526 So.2d 570, 574 (Ala.1988).

If any of the allegations or other available evidence demonstrate "potential coverage …, any doubt as to liability and the insurer's duty to defend should be resolved in favor of the insured." *Scottsdale Ins. Co. v. American Safety Indem. Co.,* 2010 WL 8624757, at *3 (S.D. Ala. Nov. 10, 2010) (Steele, J.). Based on the totality of the language of the policy, the complaint in the underlying Alabama action and attached exhibits and other available admissible evidence, there has been a demonstration of coverage and any doubt should have been resolved in favor of IP; however, Plaintiff prematurely and improperly denied coverage, defense and indemnity.

### 1.    Burden of Proof

If an insurer invokes an exclusion under the policy as a basis for denying a defense, "the insurer bears the burden of pointing to allegations of the complaint or other available evidence by which the claim was clearly excludable." *Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc*, 990 F.2d 598, 605 (11th Cir. 1993) (citing *U.S. Fidelity & Guar. Co. v. Armstrong*, 479 So.2d 1164, 1168 (Ala. 1985). "If the insurer fails to establish such evidence, the insurer bears a duty to defend even if subsequent developments indicate circumstances that

16

would render the claim excludable." *Universal*, 990 F.2d at 605-606 (citing *Armstrong*, 479 So.2d at 1168-69). The most prudent course of action would be for an insurer to defend under a reservation of rights which "allows the insurer to challenge its liability on the underlying claim while still fulfilling its duty…." *Twin City Fire Ins. Co. v. Colonial Life & Acc. Ins. Co.*, 839 So.2d 614, 616 (Ala. 2002). The Court may consider extrinsic evidence to find a duty to defend exists but if the allegations of the complaint are sufficient to trigger the duty to defend, the Court may not consider extrinsic evidence to "disestablish" the duty to defend. *Lacks*, 840 F.Supp.2d at 1296. Plaintiff was self-serving in its selection of evidence, and ignored other information, to support the assertion of conditions and exclusions in the policy to deny defense and indemnity to IP. All available admissible evidence in the underlying Alabama action prior to Plaintiff's denial in May 2020, reveals Plaintiff improperly sought only evidence that supported denial.

> **2.    The Underlying Complaint Contains Allegations Which Trigger, at a Minimum, a Duty to Defend: An Occurrence, Property Damage, Bodily Injury, Unintentional Acts**

The policy of insurance at issue in this matter provides coverage for property damage and bodily injury if they are caused by an accident or occurrence as defined under the policy. [Docs. 1-1, 1-2 and 1-3] The complaint in the underlying Alabama action filed in 2018 contains allegations of an occurrence, property damage and bodily injury which triggers coverage; i.e. negligence, misrepresentation, suppression/concealment, private nuisance, trespass and wantonness. Plaintiff [Docs. 40 and 44] does not argue that IP has failed to meet its burden of establishing an occurrence, property damage and bodily injury triggering coverage but instead argues that IP's failure to provide reasonable notice and the policy's Pollution Exclusion trumps all; i.e. bars coverage for the underlying Alabama action and Tennessee action and eliminates Plaintiff's duty to defend and indemnify IP. [Doc. 44, p. 9] By taking such approach, Plaintiff

17

ignores the other allegations in the complaint that conflict with its position and trigger a duty to defend without the invocation of the Pollution Exclusion.

Plaintiff's arguments fail to address the other allegations contained in the underlying Alabama action complaint that, at a minimum, trigger a duty to defend. The underlying complaint in the Alabama action alleges as part of the negligence claim, that IP may have been "unaware of the actual contents of the Organo-Ash" [Exhibit C, Doc. 1, ¶19.e], that IP represented "the Organo-ash did not contain any harmful materials or substances, that the ash was perfectly safe for the land and environment, and that the ash would not cause any harm…" [*Id.* at ¶21]   While the Plaintiffs in the underlying Alabama action against IP disagree with these assertions, material issues of fact regarding the alleged make-up of Organo-Ash exist within the four corners of the underlying complaint and are sufficient to trigger a duty to defend. The underlying complaint also includes causes of action for nuisance and trespass. Plaintiff failed to review and/or investigate these causes of actions as viable triggers for a duty to defend regardless of the Pollution Exclusion. "[T]he determination of the existence of a nuisance necessarily depends upon the circumstances of each case and is a question of fact for the jury…" *Morgan Co. Concrete Co. v. Tanner*, 374 So.2d 1344, 1346 (Ala. 1979).  In *Snyder v. Howard Plumbing and Heating Co., Inc.*, 792 So.2d 425, 429 (Ala. Civ. App. 2000), the Court overturned summary judgment because there was substantial evidence raising questions of fact whether the elements of trespass had been met. In the case at bar, the trespass cause of action in the underlying complaint alleges IP "allowed" Organo-Ash onto the property which is overly generalized with no other factual allegations. [Exhibit C, Doc.1, ¶ 39]   Further, the underlying complaint alleges IP "created, maintained and continued" to allow Organo-Ash on the property which again fails to include any other factual allegations to support the overly generalized claim. [Exhibit C, Doc.1,

18

¶[40] The trespass and nuisance causes of action against IP are without regard to the alleged status of Organo-Ash as a contaminant or pollutant. In other words, even if Organo-Ash is a completely benign substance as evidence in the underlying Alabama action complaint suggests, the trespass and nuisance causes of action against IP are still viable, do not trigger the pollution exclusion, and warrant a defense of IP by Harleysville. Given the ambiguity of the trespass claim in the underlying Alabama action, Plaintiff was under a duty to investigate further to determine if a duty to defend was triggered as to these two causes of action or if additional information was needed before a determination could be made as to the duty to defend.

Further, embedded in the causes of action in the underlying litigation are allegations of unintentional acts which are important in an insurer's duty to defend analysis: reckless without knowledge, representations made mistakenly, should have known, wantonness and mental anguish. [Exhibit C, Doc. 1, ¶s 22, 27, 40.b. and 43]   As a basis for its denial, Plaintiff claims the Pollution Exclusion bars all coverage, defense and indemnity but the Pollution Exclusion would not be applicable to the underlying causes of action for misrepresentation and concealment in the duty to defend analysis.

In Alabama, where the facts asserted in the complaint allege negligent conduct, such claims are considered to allege an accident or occurrence that triggers the insurer's duty to defend. *Armstrong*, 479 So. 2d at 1167. The underlying complaint also asserts causes of action for wantonness which could be proven without intentional conduct. The burden of proof for wantonness can be satisfied by proof that the defendant acted "with reckless indifference to the consequences," *Armstrong Business Services, Inc. v. AmSouth Bank*, 817 So.2d 665, 679 (Ala. 2001), or with a "reckless or conscious disregard of the rights or safety of others." *George v. Alabama Power Co., 13 So.3d 360, 367* (Ala. 2008) (citations omitted). Further, when

19

wantonness is alleged "it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff." *Carr v. Intl. Refining & Mfg. Co.*, 13 So.3d 947, 963 (Ala. 2009) quoting *Alfa Mut. Ins. Co. v. Roush*, 723 So.2d 1250, 1256 (Ala. 1998). The Alabama Supreme Court has recognized that "a finding of 'reckless' conduct is not premised on intentional acts." *Edwards Dodge, Inc. v. Penn. Natl. Mut. Cas. Ins. Co.*, 510 So.2d 225, 227 (Ala. 1987). Moreover, Alabama courts have held that mental anguish constitutes "bodily injury." *American Economy Ins. Co. v. Fort Deposit Bank*, 890 F. Supp. 1011, 1017 (M.D. Ala. 1995). Whether an injury the insured inflicted upon another person is "expected or intended" from the standpoint of the insured is generally a question of fact for the jury. *State Farm Fire & Cas. Co. v. Davis*, 612 So.2d 458, 461 (Ala. 1993).

At a minimum, the unintentional causes of action asserted in the underlying Alabama action triggered a duty to defend. *See Acceptance*, 832 So. 2d at 14. The complaint in *Tanner v. State Farm Fire & Cas. Co.,* 874 So.2d 1058 (Ala. 2003), is instructive on this point, and establishes that Plaintiff in this case has a duty to defend against at least some if not all of the claims in the Alabama action:

> alleged innocent misrepresentation, reckless misrepresentation, and suppression of a material fact. Despite deposition testimony indicating that the plaintiff was contending that Tanner had injured him intentionally, the Court held that the allegations in the complaint obliged State Farm to defend Tanner against the three claims stated above.

*Merchants*, 928 So.2d at 1012. Again, Plaintiff prematurely and improperly denied coverage and defense to IP.

3.     **If the Court Finds Plaintiff is Not Estopped from Relying on an Exclusion in the Policy for Violating Ala. Code § 27-14-19, Then Harleysville Improperly Used the Pollution Exclusion to Deny Coverage and Failed to Conduct a Thorough Investigation Before Denial**

Plaintiff's arguments contained in its Brief [Doc. 44] cherry pick allegations from the underlying Alabama action complaint to argue a policy exclusion excludes coverage to IP instead of reviewing all the allegations and other available, admissible evidence prior to its denial of coverage. As will be demonstrated below, the underlying Alabama action complaint and exhibits attached thereto, provided sufficient evidence to trigger a duty to defend.   If Harleysville was uncertain as to some of the allegations in the underlying complaint, it had a duty to investigate beyond the complaint and exhibits attached to the complaint before issuing a denial.   Even if the underlying Alabama action complaint suggested that "the injury alleged may not be within the coverage of the policy, then other facts outside the complaint may be taken into consideration." *Armstrong*, 479 So.2d at 1167. After reviewing the underlying complaint's factual assertions of IP that Organo-Ash was safe, the allegations in the underlying complaint along with the attached exhibits containing expert opinions that Organo-Ash is a useful organic material for plant growth and use on athletic fields, there is no uncertainty that a duty to defend IP was triggered. Since the allegations of the complaint in the Alabama action included some which would be covered and some which might not be covered, Plaintiff should have conducted a thorough investigation prior to rendering its coverage decision. Instead, in May 2020, Harleysville invoked the notice provision and pollution exclusions of the policy as the basis for denying coverage, a duty to defend and indemnity. [Doc. 39-3] Plaintiff did so without any investigation into the underlying complaint, documents attached to the underlying complaint and other admissible evidence outside the complaint readily available which established, at a minimum, a duty to defend (under a reservation of rights if need be).

The underlying Alabama action was filed in May 2018 and had been ongoing for two years prior to Harleysville's denial. From the time Harleysville was put on notice and prior to Harleysville's denial in May 2020, critical facts vital to any *duty to defend analysis* were already established but ignored by Harleysville. As set out above, the underlying Alabama action complaint asserts IP may have been unaware of the actual contents of the Organo-Ash, represented that Organo-ash did not contain any harmful materials or substances, that Organo-Ash was perfectly safe for the land and environment, and that Organo-Ash would not cause any harm.  [Exhibit C, Doc. 1, ¶ 19.e and ¶21]   If the facts in the underlying complaint are accepted as true, then there are truly genuine issues of material fact in dispute; i.e., IP's assertion Organo-Ash is safe and underlying Plaintiff's assertion that Organo-Ash is not safe. **<u>Indeed, the plaintiffs in the underlying Alabama action included evidence with their complaint showing a question of fact as to the nature of Organo-Ash.</u>** Given that the underlying Alabama action Complaint reveals colorable contradictory assertions which might prove or disprove that Organo-Ash was a pollutant and caused harm to the property at issue, and because some of the claims against IP are not dependent on Organo-Ash's status as a pollutant or contaminant, genuine issues of material fact exist which trigger a duty to defend. *See Acceptance*, 832 So.2d at 14, *Blackburn*, 667 So.2d at 670 and *Tapscott*, 526 So.2d at 574.  Harleysville chose to accept the negative assertions of the underlying Alabama action Complaint for the purpose of denying coverage.  Given that there are material facts in dispute, Harleysville's Rule 12(c) relief is due to be denied as a matter of law and IP's motion is due to be granted.

Attached to the Alabama action Complaint were letters from Dr. Clifford R. Lange, Ph.D. dated from 2012 through 2016, which detailed his analysis of Organo-Ash samples submitted to the Department of Civil Engineering at Auburn University documenting his years of analysis of

Organo-Ash. Dr. Lange's letters clearly indicated Organo-Ash "would be a good source of soil organic material" and confirmed his opinions that the Organo-Ash would "provide significant nitrogen when used as top dressing" and that "calcium, iron, potassium, magnesium, sulfur and sodium, which are essential nutrients for plants, are present in suitable levels for beneficial soil application." [Exhibit C, Doc. 1, Ex. 2, pgs. 27, 30, 33, 36 and 39] A Synterra Technical Memorandum dated December 11, 2015 was attached to the Alabama action complaint which concluded that Organo-Ash would be satisfactory for "fills for landscaping areas, lower zones of payment and roadway embankments, and subsurface zones of fills for recreational uses (i.e., athletic fields)." [Exhibit C, Doc. 1, Ex. 3, pgs. 42-45] The expert opinions attached to the underlying complaint clearly demonstrate that Organo-Ash is not a pollutant, contaminant or waste, but instead, a beneficial organic material safe for use in landscaping projects and even on athletic fields. Plaintiff chose to ignore these expert opinions at the time it made the decision to deny coverage, defense and indemnity to IP by improperly invoking the Pollution Exclusion of the applicable policy. The attachment of Dr. Lange's letters setting forth his opinions as to the organic makeup of Organo-Ash calling into question the underlying complaint's allegations that it was a harmful pollutant, contaminant, or waste clearly establishes a dispute of material facts. Whether there was an actual pollutant event is a genuine issue of material fact precluding Plaintiff's relief sought under Rule 12(c). These genuine issues of material fact also confirm the duty to defend was triggered and IP's motion is due to be granted.

The "other admissible evidence outside the complaint" available to Harleysville prior to its denial included, but was not limited to, discovery responses and the deposition of John R. Dailey, Sr. Other admissible evidence available to Plaintiff prior to its denial, yet ignored, established: (1) Organo-Ash is not a waste, pollutant and/or contaminant excluded under the

policy; (2) at all times relevant in the underlying Alabama action, Organo-Ash was not regulated by the Alabama Department of Environmental Management but was authorized as a soil amendment; and (3) there was no discharge of Organo-Ash or an allowance of Organo-Ash to disperse, seep, migrate, release, or escape. [Exhibits C and I] The terms "discharge," "disperse," "seep," "mitigate," "release,", or "escape" are not defined in the applicable policies at issue and must be construed against Harleysville. [Doc 1-1, 1-2 and 1-3] *See Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So.2d 687, 695 (Ala. 2001) (An insurance policy will be construed strictly against the insurer and liberally in favor of the insured.) Exclusions contained in a policy are to be "interpreted as narrowly as possible" for "maximum coverage for the insured" and must be "construed most strongly against" the insurer. *Allstate Ins. Co. v. Skelton*, 675 So.2d 377, 379 (Ala. 1996) Instead of Harleysville availing itself of all admissible evidence in its determination of coverage and the duty to defend, Harleysville ignored all of the above and relied on the Pollution Exclusion in the policy for the purpose of denying coverage. A few months after Harleysville's denial, additional admissible evidence was submitted to the Court in the underlying action by way of a July 30, 2020 Affidavit of Clifford R. Lange, Ph.D., which established Lange's oversight analysis of Organo-Ash samples for approximately 14 years for IP, analysis that confirmed Organo-Ash was a beneficial soil enhancement and not regulated as a waste. [Exhibit J]

The facts set forth in the underlying Alabama action complaint contained conflicting allegations about Organo-Ash and the attached exhibits to the complaint contained expert opinions as to the safe nature and suitable organic makeup of Organo-Ash. Instead of conducting a thorough investigation and taking the prudent action of defending IP under a reservation of rights, Harleysville instead hastily, improperly and intentionally relied on the Pollution

Exclusion as a partial basis for denying coverage and a defense for IP.  Prior to its denial in May 2020, Harleysville had sufficient evidence available to it which confirmed – at a minimum – that it had a duty to defend under a reservation of rights and more than sufficient evidence that the Pollution Exclusion more than likely would not apply.  Plaintiff's denial of coverage and defense to IP demonstrates that reliance on the Pollution Exclusion was premature and ultimately, incorrect.  Plaintiff's sole reliance on the allegations in the underlying complaint most favorable to Plaintiff resulted in a wrongful denial of coverage and duty to defend in this matter.

In the determination of whether Rule 12(c) relief is due Plaintiff, the court "is not limited to the bare allegations of the complaint in the action against the insured but may also look to facts which may be proved by admissible evidence." *Ladner*, 347 So.2d at 103. Further, the court can consider "any exhibits attached to the complaint as well as documents incorporated into the complaint by reference…" *Lacks*, 840 F.Supp.2d at 1294.  IP has set forth above facts asserted in, and expert opinions attached to, the underlying complaint which establish: (1) Plaintiff failed to conduct a thorough investigation before rendering its coverage decision, (2) Plaintiff had sufficient evidence prior to the denial that demonstrated it had a duty to defend, (3) Plaintiff had sufficient evidence that its invocation of the Pollution Exclusion in the  policy was not supported by the expert opinions attached to the underlying complaint, and (4) Plaintiff had sufficient evidence prior to denial that the Pollution Exclusion in the policy was improperly invoked to deny indemnity for the Tennessee action.  Based on the foregoing, IP has presented overwhelming evidence that there are material facts in dispute precluding Plaintiff's relief sought pursuant to Rule 12(c).  IP has also established Plaintiff was under a duty to defend based on the totality of the facts available in the underlying complaint and exhibits attached thereto. Lastly, based on the violation of Ala. Code §27-14-19, Harleysville is estopped from asserting

conditions and exclusions to deny coverage and a defense for IP.    Plaintiff's Motion for Judgment on the Pleading is due to be denied, as a matter of law. IP's Motion for Judgment on the Pleadings as to the duty to defend is due to be granted.

E.    THE DUTY TO INDEMNIFY ISSUE IS NOT RIPE

Plaintiff asks the Court to declare it has no duty to indemnify IP in the underlying Alabama action and no indemnification duty relating to the default judgment entered in the Tennessee action for which IP asserts that JRD Land Clearing owes IP contractual indemnity. Prior to reaching a discussion on the substantive merits of Plaintiff's indemnity arguments, the question of ripeness must first be resolved. Plaintiff seeks theoretical declaratory relief which may never come to pass. A determination on the issue of ripeness "protects the federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). The underlying Alabama action is ongoing. The trial in the underlying Alabama action will generate evidence concerning conduct, determinations of fact, injuries and damages, all of which will be relevant to the indemnity issue if that issue actually ripens as a result of the trial. Yet, Plaintiff requests this Court to make determinations now as to indemnity before the issue of liability in the underlying action is even addressed. It is possible IP could prevail in the underlying action, rendering any decision concerning indemnity premature and more specifically, moot.  If IP does not prevail in the underlying action, the question of whether Harleysville must indemnify IP against any judgment in the Alabama action and indemnify IP by way of the Tennessee action would then present a ripe issue.

"A matter is not ripe for resolution when it is only a hypothetical or speculative controversy." *In re Blue Cross Blue Shield Antitrust Litigation*, 2015 WL 13755436, at * 1 (N.D. Ala. Aug. 4, 2015). Based on the current posture of this case, the issue of indemnification

is not fit or ripe for judicial decision and more harm would be done if there was a premature adjudication on the indemnification issue.  In declaratory judgment actions, the determination of whether an insurer has a duty to indemnify is premature before liability in the underlying action has been determined.  In *Accident Ins. Co. v. Greg Kennedy Builder, Inc.*, 159 F. Supp.3d 1285, 1288 (S.D. Ala. 2016) (Steele, J.), the Court

> observed that '[c]ase law is legion for the proposition that an insurer's duty to indemnify is not ripe for adjudication unless and until the insured or putative insured has been held liable in the underlying action.'

Therefore, a plaintiff seeking declaratory relief "cannot dispute that the duty-to-indemnify issue joined in this action is not yet ripe" when liability in the underlying suit is not yet established. *Id.*

"Ripeness is essentially a 'question of timing.'" *A&M Enterprises, LLC. v. Houston*, 179 F.Supp.2d 1356, 1360 (M.D. Ala. 2001).  Alabama law is clear that "[w]hether there is a duty to indemnify under the policy will depend on the facts adduced at the trial…"  *Merchants*, 928 So.2d at 1013 (Ala. 2005).  The ultimate resolution of the duty to indemnify issue

> cannot be made at a preliminary stage in the proceedings, when it is still possible for the plaintiff in the underlying lawsuit to change the theory of liability and assert a claim that is covered by the policy at issue.

*St. Paul Fire and Marine Ins. Co. v. Town of Gurley, Ala.*, 2012 WL 3637690, at *5 (N.D. Ala. Aug. 22, 2012) (internal citations omitted).

In the case at bar, liability has not yet been determined in the Alabama action and any declaratory or Rule 12(c) relief sought by Plaintiff as to the duty to indemnify is not ripe for adjudication.  Any request for a stay of these declaratory proceedings pending a resolution of the underlying action as to liability would also be without merit.  The question of ripeness "goes to whether the district court [has] subject matter jurisdiction to hear the case." *State Auto Ins. Co. v. Mays Auto Service, Inc.*, 2018 WL 1583102, at * 2 (N.D. Ala. April 2, 2018).  Once a court has determined a lack of subject matter jurisdiction then it must not continue. "Because the court is

powerless to continue asserting jurisdiction over an unripe claim, the court cannot see how it is authorized to stay such a claim until it becomes ripe." *Id.* at \*2. (*See also Canal Ins. Co. v. INA Trucking, LLC.*, 2017 WL 1146984, at \*7 (M.D. Ala. March 10, 2017).  Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings and its declaratory relief sought on the unripe issue of the duty to indemnify, is due to be denied, as a matter of law.

### F.  IP'S COUNTERCLAIMS OF BREACH OF CONTRACT AND BAD FAITH

Plaintiff is not entitled to relief under FED.R.CIV.P. 12(c) because such relief is only appropriate when there are <u>no material facts in dispute</u>.  *Lacks*, 840 F.Supp.2d at 1294. IP has demonstrated above the material facts in dispute precluding Rule 12(c) relief. Further, to the extent the Court finds the duty to defend was triggered and that Plaintiff prematurely and improperly denied coverage, defense and indemnity, IP's counter claims for breach of contract and bad faith should survive for future prosecution.

### G.  IP'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO THE DUTY TO DEFEND

For purposes of brevity, IP will not restate the pleading standard for FED.R.CIV.P. 12(c) set out in Section A above.  Based on the totality of the evidence established in IP's Opposition to Plaintiff's Motion for Judgment on The Pleadings, the facts are clear and undisputed that Plaintiff improperly invoked policy exclusions for the purpose of denying coverage, defense and indemnity for IP in the underlying Alabama action and indemnity as a result of the default judgment obtained in the Tennessee action. As demonstrated above, Plaintiff chose not to defend IP under a reservation of rights which would have been the most prudent avenue but instead chose to deny IP a defense even when all of the factual evidence and expert opinions available to it prior to rendering its claim decision established - at a minimum – that Harleysville had a duty to defend IP in the underlying Alabama action.  Based on the foregoing, IP moves the Court to grant IP's Motion for Judgment on the Pleadings as to the duty to defend issue.

## CONCLUSION

The overwhelming evidence demonstrates Plaintiff failed to meet its statutory duty in providing IP, as a known additional insured, a copy of the policy. Plaintiff then denied coverage to IP partially for breach of the notice provision of the policy IP never received and Plaintiff contends IP was never entitled to receive. Plaintiff's failure to meet its statutory duty creates disputed facts precluding Plaintiff's relief sought pursuant to Rule 12(c). Further, Plaintiff's violation of its statutory duty estops Plaintiff from asserting conditions and exclusions of coverage. If the Court finds Plaintiff is not estopped from asserting conditions and exclusions in the policy, IP's notice of the claim and suit were reasonable under the circumstances as a matter of law and creates an issue of disputed facts barring Plaintiff's Rule 12(c) relief.

IP has also established that Plaintiff has a duty to defend IP, failed to complete a thorough investigation prior to denial and improperly denied coverage and defense to IP. The allegations of the Alabama action complaint, at a minimum, trigger a duty to defend regardless of the Pollution Exclusion of the policy. Plaintiff failed to address the other causes of action which clearly triggered a duty to defend but instead asserted the Pollution Exclusion barred all coverage and duties to defend and indemnify. If the facts in the underlying action complaint are accepted as true, then there is a genuine issue of material facts in dispute; i.e. IP's assertion Organo-Ash is safe and underlying Plaintiff's assertion that Organo-Ash is not safe. Harleysville also chose to ignore expert opinions attached to the underlying action Complaint demonstrating that Organo-Ash was not a pollutant, contaminant or waste but instead is organic material containing essential nutrients for plants, a safe material for landscaping projects and use on athletic fields. The evidence is clear Harleysville chose to accept the negative assertions of the underlying action complaint for the purpose of denying coverage. Given that there are materials facts in dispute, Plaintiff's Rule 12(c) motion is due to be denied as a matter of law.

The issue of Plaintiff's duty to indemnify is not ripe for adjudication as a matter of law. Ripeness is a timing issue and a duty to indemnify analysis is premature until the issue of liability is resolved in the underlying action; therefore, Plaintiff's Rule 12(c) motion is due to be denied. Lastly, the facts are clear and undisputed that Harleysville improperly invoked policy exclusions for the purpose of denying coverage, defense and indemnity for IP in the Alabama action and indemnity in the Tennessee action.  Instead of defending IP after notice was provided, Harleysville instead chose to deny a defense even when the factual evidence and expert opinions available prior to denial established – at a minimum – a duty to defend in the underlying action. Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings is due to be denied as a matter of law.  Further, IP's Cross Motion for Judgment on the Pleadings as to the duty to defend is due to be granted.

Respectfully submitted this the 2nd day of June, 2021.

**/s/ A. David Fawal**
**A. David Fawal [ASB-4593-W82A]**
david.fawal@butlersnow.com

**OF COUNSEL:**

**BUTLER SNOW LLP**
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, Alabama 35203
Telephone:  (205) 297-2200
Facsimile:   (205) 297-2100

*One of the Attorneys for International Paper Co.*

**/s/ Brian P. Kappel**
**Brian P. Kappel**
**bkappel@lightfootlaw.com**
John M. Johnson (jjohnson@lighfootlaw.com)
Charles M. Hearn (chearn@lightfootlaw.com)

**OF COUNSEL:**
**LIGHTFOOT, FRANKLIN & WHITE, LLC**
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
Telephone:      (205) 581-0700
Facsimile:       (205) 581-0799

*Attorneys for International Paper Co.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served upon all parties to this action by e-file using the Court's CM/ECF system and/or by depositing a copy of same in the U.S. Mail, postage prepaid and properly addressed as follows:

William E. Shreve, JR.
J. Breanne Zarzour
**PHELPS DUNBAR, LLP**
P.O. Box 2727
Mobile, Alabama 36652

JRD Contracting & Land Clearing, Inc.
2100 Camden Bypass
Camden, AL 36726

John R. Dailey, Sr.
2100 Camden Bypass
Camden, AL 36726

JRD Contracting, Inc.
2100 Camden Bypass
Camden, AL 36726

Edgar M. Elliott IV
**CHRISTIAN & SMALL LLP**
505 North 20th St., Suite 1800
Birmingham, AL 35203
emelliott@csattorneys.com

Christina M. Bolin
**CHRISTIAN & SMALL LLP**
1 Timber Way Ste 101
Spanish Fort, AL 36527-5634
cmbolin@csattorneys.com

Done this the 2nd day of June, 2021.

/s/ A. David Fawal
OF COUNSEL