IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HARLEYSVILLE PREFERRED INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>INTERNATIONAL PAPER CO., JRD & LAND CLEARING, INC., JOHN R. DAILEY SR., and JRD, INC., )<br>)<br>Defendants. ) | CIVIL ACTION NO. CV-2020-340-TFM-B |

PLAINTIFF'S REPLY TO DEFENDANT INTERNATIONAL PAPER
COMPANY'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS, AND PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANT'S CROSS MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Harleysville Preferred Insurance Company (**"Harleysville"**) files this brief as (1) its reply to the brief (Doc. 55) filed by Defendant International Paper Company ("**IP**") in opposition to Harleysville's motion for judgment on the pleadings (**"J.O.P."**), and (2) its brief in opposition to IP's cross motion for J.O.P. (also Doc. 55). The Court should grant Harleysville's motion and deny IP's cross motion.

RESPONSE TO IP'S STATEMENT OF FACTS

IP states that "[a]ttached to the Complaint in the Alabama action were various exhibits regarding the organic makeup of Organo-Ash," which IP describes as stating that Organo-Ash is "a good source of soil organic material" and that Organo-Ash is "safe to use in landscaping areas, roadway embankments and for recreational uses such as 'athletic fields'" (Doc. 55, PageID.1218-19 [¶ 8]). IP refers to these supposed "exhibits to the complaint" repeatedly in its argument that Harleysville has a duty to defend (Doc. 55, PageID.1237-39, 1244). The complaint in the Alabama action, however, <u>references no exhibits and contains no exhibits</u> (Doc. 1-4). The documents to

which IP refers <u>are exhibits to a notice of IP's 30(b)(6) deposition</u> (Doc. 55-3, PageID.1278-1351). The notice has a separate state-court document number (Doc. 3) from the complaint (Doc. 2) (see Doc. 55-3, PageID.1261, 1278). These exhibits are not relevant to the duty to defend, because they contradict the complaint's allegations that Organo-Ash "contains harmful materials, substances, and/or toxins," i.e., "contaminants"; is "environmentally harmful"; and is "not safe for the land or environment" (Doc. 1-4, PageID.510-11 [¶¶ 15, 19(c)], 513-16 [¶¶ 27-29]; see also PageID.510-11 [¶ 19(a)], 513-16 [¶¶ 26, 33, 35, & 39]).[1]

IP states that after Harleysville denied coverage and IP's counsel sent its June 4, 2020 letter disputing the denial, "[i]nstead of investigating the information provided by IP in its June 4, 2020 letter, [Harleysville] filed this Declaratory Judgment action on June 30, 2020" (Doc. 55, PageID.1220 [¶ 16]). In fact, the next day (July 1, 2020), having already "investigated" the information in IP's letter, Harleysville's counsel sent correspondence to IP's counsel explaining why that information did not alter Harleysville's position that it does not owe coverage (see Ex. A attached hereto).

---

[1] In referring to the complaint in the Alabama action, citations herein are to the original complaint, which is the complaint IP sent Harleysville on March 23, 2020 (Doc. 1 at 1 & n.3), and the complaint that IP cites in its brief (Doc. 55, PageID.1215 [Ex. C]; Doc. 55-3, PageID.1258, 1261). The Plaintiffs in the Alabama action filed an amended complaint on August 28, 2019 (Doc. 39-2, PageID.1107), but the amendment merely adds a claim for a declaratory judgment that the provisions of an Organo-Ash Utilization Agreement signed by John R. Dailey Sr. but pertaining to other property does not exculpate IP from liability (Doc. 39-2, PageID.1107, 1121-25, 1127-28). The amended complaint is otherwise the same as the original complaint (Doc. 29-2, PageID.1107-1120, 1126-28; Doc. 1-4, PageID.503-518).

ARGUMENT

**I.  HARLEYSVILLE HAS NO DUTY TO DEFEND OR INDEMNIFY IP AS AN ADDITIONAL INSURED AGAINST THE ALABAMA ACTION.**

   **A.  Harleysville has no duty to defend IP.**

   **1.  The Pollution Exclusion bars coverage for the Alabama action.**

The relevant question in determining an insurer's duty to defend is: What claim is the plaintiff asserting against the insured? If the claim falls within the policy's coverage, the insurer has a duty to defend; if not, the insurer has no such duty. The insured's denials of the plaintiff's claim, evidence that the claim is not true, or defenses to the claim, are not relevant. These are fundamental principles of Alabama insurance law that IP ignores.

Tapscott v. Allstate Ins. Co., 526 So. 2d 570 (Ala. 1988) is illustrative. The plaintiff in the underlying action sued Allstate's insured, Tapscott, for "maliciously and falsely imprisoning, detaining, and arresting him" and "intentional infliction of emotional distress." Id. at 571. The policy excluded coverage for "bodily injury…intentionally caused by an insured person." Id. at 572 (emphasis omitted). The court stated that "[t]here is clearly no dispute over what **allegations** are made in the complaint," and that "[i]f there is any **claim** at all under the pleadings and evidence before the court…, it is a **claim** for an intentional tort." Id. (emphasis added). The court acknowledged that the parties "disagree over whether…Tapscott *actually intended* to imprison, detain, arrest, or inflict emotional distress on [the plaintiff]," but found that this disagreement was immaterial because it "goes to the merits of the complaint rather than the issue in this [declaratory-judgment action]." Id. (emphasis in original). The court stated that the "only consideration [in determining Allstate's duty to defend] is whether, based on the allegations in the complaint and other admissible evidence, the plaintiff **alleges** intentional conduct." Id. (emphases added). The court noted that in addition to the complaint's allegations of intent, the plaintiff had testified he

was "claiming that the acts were intentional" and that "the Tapscotts intended to harm [him][.]" Id. at 575.  Tapscott filed an affidavit "stating that his acts were not intended to cause any harm," id. at 572, but the court stated that Tapscott's denial "in no way affects the nature of the plaintiff's **claim** for an intentional tort, and certainly, it has no bearing on Allstate's responsibility to defend or indemnify," id. at 575 (emphases added).  The court concluded that there was "no dispute…that this case involved only **claims** for intentional conduct," id. at 572 (emphasis added), and affirmed the trial court's summary judgment declaring "that Allstate was not required to defend or indemnify Tapscott," id. at 571.

Every claim in the complaint in the Alabama action is based on the deposit of Organo-Ash on JRD Contracting, Inc. (**"JRD"**) and John R. Dailey Sr.'s property and on Organo-Ash's being a harmful "contaminant" that damaged the property (Doc. 1-4, PageID.510-18).  In addition, Dailey Sr. testified:

> Q.   As I understand what you're saying, Mr. Dailey, your only allegation in this case is that this organo-ash material is somehow harmful; is that right?
>
> A.   Yes.

(Doc. 1-5, PageID.534 [p. 54]).  According to IP, though, there is evidence "that Organo-Ash is not a pollutant, contaminant or waste, but instead, a beneficial organic material safe for use in landscaping projects and even on athletic fields" (Doc. 55, PageID.1238), so "there is a genuine issue of material facts in dispute; i.e. IP's assertion Organo-Ash is safe and underlying Plaintiff's assertion that Organo-Ash is not safe" (Doc. 55, PageID.1244).  Like the issue of Tapscott's intent, whether Organo-Ash "is safe" or "is not safe" goes to the merits of the complaint in the Alabama action, not the issue in this declaratory-judgment action.  IP's contention that Organo-Ash "is safe" is no different than Tapscott's affidavit denying that he intended to harm the plaintiff – it has no bearing on Harleysville's responsibility to defend or indemnify.  As stated in Tapscott, the only

consideration in determining Harleysville's duty to defend is whether, based on the allegations in the complaint and other admissible evidence, JRD and Dailey Sr. <u>allege</u> injury or damage covered by the Policies. They do not, because all of their claims allege injury or damage arising out of pollution, to which the Pollution Exclusion applies.

IP argues that "[t]he trespass and nuisance causes of action against IP are without regard to the alleged status of Organo-Ash as a contaminant or pollutant" (Doc. 55, PageID.1234). Not so. The nuisance and trespass claims "incorporate by reference the [complaint's prior] allegations" (Doc. 1-4, PageID.514 [¶ 32], 515 [¶ 38]), which include "that the Organo-Ash on [the Plaintiffs'] property contains <u>harmful materials, substances, and/or toxins</u>, including metallic elements, and these <u>contaminants</u> have damaged the land and soil," that the Organo-Ash "contained <u>environmentally harmful</u> materials and substances," and that Organo-Ash "was <u>not safe for the land or environment</u>" (Doc. 1-4, PageID. 510 [¶ 15], 511 [¶ 19(c)], 513 [¶ 27]) (emphases added). The nuisance claim alleges that "[b]y allowing Organo-Ash, which ash contained <u>harmful materials and substances</u>…, onto Plaintiffs' property, [IP] interfered with Plaintiffs' use and enjoyment of their property and has <u>harmed both Plaintiffs and their property</u>," and that IP's "supplying <u>harmful</u> Organo-Ash constitutes a nuisance" (Doc. 1-4, PageID.514-15 [¶¶ 33 & 35]) (emphases added). The trespass claim alleges that "[b]y allowing <u>harmful</u> Organo-Ash onto Plaintiffs' property, [IP] impaired and interfered with Plaintiffs' right to exclusive possession, enjoyment and use of their property" (Doc. 1-4, PageID.515-16 [¶ 39]) (emphasis added). Hence, the nuisance and trespass claims are based on, and allege injury or damage arising out of, Organo-Ash's being a harmful "contaminant," that is, a "pollutant."[2]

---

[2] If the nuisance and trespass claims were <u>not</u> based on Organo-Ash's being a harmful "contaminant," JRD and Dailey Sr. would <u>have no</u> nuisance or trespass claim. The complaint alleges that JRD and Dailey Sr. "<u>allow[ed]</u>" Organo-Ash to be deposited on their property (not

IP asserts that "the Pollution Exclusion would not be applicable to the underlying causes of action for misrepresentation and concealment in the duty to defend analysis" (Doc. 55, PageID.1234). IP fails to explain why the exclusion "would not be applicable to" these claims, nor does IP cite any supporting authority. The misrepresentation and concealment claims, after incorporating the prior allegations by reference (Doc. 1-4, PageID.511-12 [¶ 20 & 25]), aver that IP misrepresented "that the Organo-Ash did not contain any harmful materials or substances, that the ash was perfectly safe for the land and environment, and that the ash would not cause any harm"; that IP concealed "that the Organo-Ash was not environmentally safe, that it contained harmful materials and substances, and could be harmful to Plaintiffs' property"; and that "[i]f Plaintiffs had been aware that the Organo-Ash was not safe for the land or environment, that it contained harmful materials or substances, and that it could cause harm to their property…, then they would have refrained from allowing the ash to be deposited on their property" (Doc. 1-4, PageID.511-14 [¶¶ 21, 26, & 29]) (emphases added). These claims thus allege injury or damage arising out of pollution and are excluded from coverage. See Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Snead Door, LLC, 2013 WL 550483, *3-4, 6 (N.D. Ala. Feb. 12, 2013) (pollution exclusion barred coverage for fraud and misrepresentation claims).

IP further contends that the Alabama action alleges "that IP may have been 'unaware of the actual contents of the Organo-Ash'" and that IP represented that Organo-ash was safe and not harmful, so there are "issues of fact regarding the alleged make-up of Organo-Ash…within the four corners of the underlying complaint" that "trigger a duty to defend" (Doc. 55, PageID.1233).

---

knowing that it was harmful), (Doc. 1-4, PageID.514 [¶ 29]) (emphasis added), and such consent would defeat trespass and nuisance. See Bobo v. Young, 61 So. 2d 814, 816 (Ala. 1952) ("Consent is always a good defense to an action for damages for trespass,…and *a fortiorari* in this case must be a good defense to a bill seeking to enjoin the trespass and abate the same as a nuisance.").

This is nonsense. Whether IP was unaware of Organo-Ash's contents has nothing to do with the Pollution Exclusion, which applies to any injury or damage "arising out of" pollution (Doc. 1-1, PageID.65; Doc. 1-2, PageID.218; Doc. 1-3, PageID.370). The negligence claim incorporates the prior allegation that Organo-Ash is a harmful "contaminant," and otherwise alleges injury or damage arising out of pollution (Doc. 1-4, PageID.510-11 [¶¶ 15-19]). And the misrepresentation claim alleges that IP's representation was false, in other words, that Organo-Ash is actually unsafe and harmful (Doc. 1-4, PageID.511-12 [¶¶ 21 & 22]). Again, the duty to defend depends on the claim asserted, and the above claims allege injury or damage arising out of pollution.

IP also argues that "[t]he terms 'discharge,' 'disperse,' 'seep,' 'mitigate [sic],' 'release,' or 'escape' are not defined in the [Policies] and must be construed against Harleysville" (Doc. 55, PageID.1239). Of the above terms, the two applicable here are "discharge" and "release" (see Doc. 44, PageID.1176-79). Those terms could be construed against Harleysville only if they were ambiguous, which they are not. See State Farm Mut. Auto. Ins. Co. v. Brown, 26 So. 3d 1167, 1169 (Ala. 2009) (if terms used in policy "are reasonably certain in their meaning, they are not ambiguous as a matter of law and the rule of construction in favor of the insured does not apply"). That the Policies do not define "discharge" and "release" does not make these terms ambiguous. See Safeway Ins. Co. v. Herrera, 912 So. 2d 1140, 1143 (Ala. 2005) ("that a word or a phrase used in a provision in an insurance policy is not defined in the policy does not mean that the word or phrase is inherently ambiguous"). Harleysville's prior brief explained that, whether construed in accordance with their environmental-law meanings or their common meanings, the words "discharge" and "release" unambiguously apply to Land Clearing's using an excavator to remove Organo-Ash from dump-truck beds and deposit it on the ground (Doc. 44, PageID.1176-79). IP offers no response and provides no explanation how Land Clearing's activity does not constitute

a "discharge" or "release."[3]

### 2. IP's breach of the Policies' notice conditions also bars coverage for the Alabama action.

IP was served with the Alabama action on May 21, 2018 (Doc. 39-1, PageID.1104 [¶ 3]). IP states that it did not learn until February 13, 2019, that Land Clearing was responsible for depositing the Organo-Ash on JRD and Dailey Sr.'s property (Doc. 55, PageID.1228). IP also contends that it was not until July 2019 that IP "reviewed the relevant [certificate of insurance] identifying Harleysville as…Land Clearing's insurer" (id.) – even though IP should have already known of Harleysville since the June 2016 Waste Services Agreement obligated Land Clearing to "provide IP with copies of policy endorsements reflecting IP's status as an additional insured" (Doc. 9, PageID.591 [¶ 4]). IP's choice of words in its brief suggests that IP did already know about Harleysville. IP only says that it "reviewed" the certificate of insurance in July 2019 (Doc. 55, PageID.1219 [¶ 11], 1228), not that it first obtained the certificate at that time or did not have it before then.

In any event, after IP reviewed the certificate in July 2019, IP delayed eight months before sending Harleysville the complaint on March 23, 2020 (Doc. 33, PageID.1053 [¶ 50], 1066 [¶ 29]).

---

[3] JRD and Dailey Sr.'s amended complaint filed August 28, 2019 adds a claim for a declaratory judgment that the provisions of an Organo-Ash Utilization Agreement signed by Dailey Sr. but pertaining to other property does not exculpate IP from liability (Doc. 39-2, PageID.1107, 1121-25, 1127-28). IP does not argue that Harleysville has a duty to defend this claim; IP does not mention the claim at all. The Policies' insuring agreement states that Harleysville "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and that Harleysville "will have the right and duty to defend the insured against any 'suit' seeking those damages" (Doc. 1-1, PageID.63; Doc. 1-2, PageID.216; Doc. 1-3, PageID.368) (emphases added). Harleysville has no duty to defend the claim for a declaratory judgment because the claim does not seek "damages," see Huntingdon Ridge Townhouse Homeowners Ass'n, Inc. v. QBE Ins. Corp., 2009 WL 4060458, *6-7 (M.D. Tenn. Nov. 20, 2009); because if it had, the Pollution Exclusion would apply; and because IP breached the Policies' notice conditions.

Eight months is unreasonable as a matter of law unless IP has a reasonable excuse. See <u>Nationwide Mut. Fire Ins. Co. v. Estate of Files</u>, 10 So. 3d 533, 536 (Ala. 2008). The only excuse proffered is that about a month after IP reviewed the certificate, "[o]n August 21, 2019, "IP's counsel …demanded that…Land Clearing put Harleysville on notice of the Alabama action," and that "[u]nbeknownst to IP,…Land Clearing failed to notify Harleysville of the Alabama action" (Doc. 55, PageID.1228).

IP's excuse is not reasonable. IP does not dispute that, when IP demanded that Land Clearing notify Harleysville, Land Clearing did not respond (Doc. 39-3, PageID.1140), and thus gave IP no commitment or assurance that Land Clearing would do what IP demanded. Moreover, after making its demand, IP heard nothing from Harleysville for the next seven months, until IP itself notified Harleysville of the Alabama action and sent Harleysville the complaint on March 23, 2020. IP should have realized long before then that Land Clearing had not notified Harleysville, and IP <u>did</u> realize this at some time before February 14, 2020, the date IP filed the Tennessee action alleging that Land Clearing "fail[ed] to place its insurance carriers on notice of the claims against IP" (Doc. 20-3, PageID.860 [¶ 30]). Even after filing that suit and making that allegation, IP waited another month and nine days before sending Harleysville the complaint in the Alabama action.

IP has not cited any case supporting that its excuse is reasonable. IP cites <u>United States Fidelity & Guaranty Co. v. Bonitz Insulation Co.</u>, 424 So. 2d 569 (Ala. 1982), as holding that a "four year delay in providing notice was not unreasonable under the circumstances" (Doc. 55, PageID.1229), but the circumstances were nothing like those here. The insured installed the roof of a school gym that began leaking and continued to leak over the next four years, despite repair efforts. <u>Id.</u> at 570-71. The policy required notice of "an <u>occurrence</u>…as soon as practicable." <u>Id.</u>

- 9 -

at 572 (emphasis added). The insured's president "testified that it was not unusual for leaks of this type to occur, that he was unaware of the extent of the problem, and that he thought that Vulcan Roofing Company was taking care of the problem." Id. at 573. The court held that the reasonableness of the insured's delay was a question of fact, and affirmed the trial court's finding "that the delay by [the insured] in giving notice of a potential claim…was not unreasonable." Id. at 572-73 (emphasis added).

This case, unlike Bonitz, does not involve delayed notice of an occurrence that might (or might not) result in a lawsuit, but delayed notice of a lawsuit that had already been filed and served. When an insured delays notifying an insurer of an occurrence, the delay may be excused "because of [the insured's] belief," if reasonable, "that the occurrence would not give rise to a claim." CIE Serv. Corp. v. Smith, 460 So. 2d 1244, 1246 (Ala. 1984). An insured served with a lawsuit has no such excuse. The occurrence has already matured into a claim in the form of a lawsuit, and the suit is an existing fact of which the insured must notify the insurer within a reasonable time.

Upon service of IP with the complaint in the Alabama action, or when IP learned that Land Clearing deposited the Organo-Ash and that Harleysville was Land Clearing's insurer, IP had a duty to send Harleysville the complaint within a reasonable time. But IP, with no reasonable excuse, delayed one year and ten months after it was served, eight months after IP reviewed the certificate of insurance showing that Harleysville was Land Clearing's insurer, and seven months after IP asked Land Clearing to notify its insurers and received no response from Land Clearing, before sending Harleysville the complaint. The cases Harleysville cited in its prior brief [4] – which

---

[4] Nationwide Mut. Fire Ins. Co. v. Estate of Files, 10 So. 3d 533, 536 (Ala. 2008); Pennsylvania Nat'l Mut. Cas. Ins. Co. v. J.F. Morgan General Contractors, Inc., 79 F. Supp. 3d 1245, 1252-59 (N.D. Ala. 2015); Standifer v. Aetna Cas. & Sur. Co., 319 F. Supp. 1385, 1388 (N.D. Ala. 1970); Southern Guar. Ins. Co. v. Thomas, 334 So. 2d 879, 882-83 (Ala. 1976).

PD.33874618.1

IP makes no effort to distinguish or otherwise address – show that under the facts presented and as a matter of law, IP breached the notice conditions.

### 3. IP was not prejudiced by non-delivery of the Policies.

The Policies do not list IP by name as an additional insured (Docs. 1-1, 1-2 & 1-3). IP nonetheless contends it is a named additional insured by virtue of a certificate of insurance, apparently issued by insurance producer Harmon Dennis Bradshaw, Inc. in Montgomery (Doc. 55, PageID.1223; Doc. 55-2, PageID.1257). The certificate contains the following disclaimers:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.
>
> IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed… A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

(Doc. 55-2, PageID.1257).

In Brown Machine Works & Supply Co. v. Insurance Co. of North America, 659 So. 2d 51 (Ala. 1995), the court held that "the purchaser of a policy and…the named insured" are entitled to policy delivery. Id. at 61. The court did not decide whether "named and unnamed additional insureds" are entitled to delivery. Id. at 60-61. The plaintiff, Brown, received a certificate of insurance naming it as an additional insured. Id. at 53. The court stated that "[t]he question of Brown's status" was "for the parties to argue to the trier of fact" and that "[t]his Court is not in a position to decide whether Brown is entitled to a copy of the policy under § 27-14-19." Id. at 60.

Regardless of whether IP was entitled to policy delivery, it was not prejudiced by non-delivery. IP states that Harleysville's "arguments…regarding IP being a large, sophisticated

corporation and having knowledge of standard commercial general liability contracts in no way absolves [Harleysville] of its statutory mandate to deliver policies to those known to be entitled to receive them" (Doc. 55, PageID.1225).  That may be, but IP <u>does not deny or dispute</u> that (1) IP is in fact "a large, sophisticated corporation…having knowledge of standard commercial general liability contracts"; (2) the Pollution Exclusion and the notice conditions are standard provisions of CGL policies; and (3) the Waste Services Agreement required that Land Clearing procure and maintain "Contractor's Pollution Liability Insurance" in addition to CGL insurance (Doc. 9, PageID.590-91), which shows that IP knew that a policy separate from the CGL policy was needed to cover pollution liability.

IP states that if it had "timely received a copy of the applicable policy," IP "<u>could have</u> learned <u>whether the policy actually provided the expected coverage</u>…[and] addressed <u>any inadequacies</u> of those policies with…Land Clearing" (Doc. 55, PageID.1224-25) (emphases added).  But IP never claims that it <u>would have</u> reviewed the Policies, that the Policies did <u>not</u> "provide the expected coverage," that the Policies <u>were</u> "inadequate," or that IP <u>actually would have</u> done anything different had it received the Policies.  Nor does IP claim that it did not know or did not expect that the Policies would contain a Pollution Exclusion or notice conditions, or that it did not know that CGL policies require an insured to timely forward suit papers to the insurer. IP did not make any of these claims in its counsel's June 4, 2020 letter either (Doc. 39-4), and could not credibly make any of them.  IP also fails to distinguish or otherwise address the cases that Harleysville cited as showing that under the facts presented, IP was not prejudiced.[5]

---

[5] <u>W.G. Yates & Sons Constr. Co. v. Zurich Am. Ins. Co.</u>, 2008 WL 161921, *9 & n.19 (S.D. Ala. Jan. 8, 2008); <u>Pennsylvania Nat'l Mut. Cas. Ins. Co. v. J.F. Morgan General Contractors, Inc.</u>, 79 F. Supp. 3d 1245, 1258 (N.D. Ala. 2015); <u>Standifer v. Aetna Cas. & Sur. Co.</u>, 319 F. Supp. 1385, 1388 (N.D. Ala. 1970).

PD.33874618.1

Because IP was not prejudiced, Harleysville is not estopped from asserting the Policies' exclusions and conditions.[6]

**B.     Harleysville has no duty to indemnify IP.**

IP argues that "[t]he duty to defend issue is not ripe" because the Alabama action has not been decided (Doc. 55, PageID.1241).  This Court, however, has stated that a "'determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify,'" and that "[b]ecause [the insurer] has no duty to defend [the insured] in the [underlying] action, the Court necessarily finds that the narrower issue of indemnification is also determined in [the insurer's] favor."  Charter Oak Fire Ins. Co. v. City of Fairhope, 478 F. Supp. 3d 1218, 1232 (S.D. Ala. 2020) (Moorer, J.).  See also Harleysville Mut. Ins. Co. v. Dapper, LLC, 2010 WL 3038929, *1 (M.D. Ala. Aug. 3, 2010) (Moorer, J.).  Other federal courts in Alabama agree.  See Evanston Ins. Co. v. Yeager Painting, LLC, 2018 WL 3708555, *3 (N.D. Ala. Aug. 3, 2018) (Ott, M.J.); Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Retirement Sys. of Ala., 104 F. Supp. 3d 1313, 1316 (N.D. Ala. 2015) (Smith, J.); Auto-Owners Ins. Co. v. McMillan Trucking Inc., 242 F. Supp. 3d 1259, 1266 (N.D. Ala. 2017) (Coogler, J.); Evanston Ins. Co. v. Lett, 2012 WL 4927958, *4 (S.D. Ala. Oct. 15, 2012) (Steele, C.J.).  Consequently, "if an insurer has no duty to defend an insured, a declaratory judgment claim regarding the insurer's duty to indemnify is ripe even if the underlying action is still pending."  Grange Mut. Cas. Co. v. Indian Summer Carpet Mills, Inc., 2018 WL

---

[6] IP complains that when it sent Harleysville the complaint on March 23, 2020, IP asked for copies of the Policies, asked again on April 22, 2020, and that Harleysville did not send the Policies until May 6, 2020 (Doc. 55, PageID.1225).  This makes no difference, and IP does not explain how it could be otherwise.  Nothing could change the fact that IP did not send Harleysville the complaint until March 23, the Policies were the same on May 6 as they were on March 23, and the Pollution Exclusion applied on May 6 the same as on March 23.  IP could do nothing on March 23 or May 6 but wait for Harleysville's coverage decision, which Harleysville issued on May 15 (Doc. 33, PageID.1067 [¶ 34]; Doc. 39-3, PageID.1137-41).  Harleysville's sending IP the Policies on March 23 or earlier than May 6 would not and could not have changed anything.

3536625, *2 (N.D. Ala. July 23, 2018) (Axon, J.).

## II. HARLEYSVILLE DOES NOT OWE COVERAGE TO LAND CLEARING OR IP FOR THE TENNESSEE ACTION AND JUDGMENT.

IP offers little argument concerning the Tennessee action, stating that Harleysville "had sufficient evidence prior to denial that the Pollution Exclusion…was improperly invoked to deny indemnity for the Tennessee action," and that Harleysville "improperly invoked policy exclusions for the purpose of denying…indemnity as a result of the default judgment obtained in the Tennessee action" (Doc. 55, PageID.1240, 1243).  As discussed in Harleysville's prior brief, "whether Harleysville owes coverage to Land Clearing for IP's claim and judgment in the Tennessee action for contractual indemnity, depends on whether JRD and Dailey Sr.'s claims against IP in the Alabama action are covered," and "[t]hey are not, because the Pollution Exclusion applies, and because IP and Land Clearing breached the notice conditions" (Doc. 44, PageID.1192-93).  The Pollution Exclusion applies to the Alabama action for reasons previously discussed.  IP does not contest that Land Clearing breached the conditions requiring timely notice of the alleged "occurrence" and of IP's claim for indemnity, and that Land Clearing's breaches bar coverage for Land Clearing, as well as for IP as Land Clearing's judgment creditor, for the Tennessee action and judgment (Doc. 44, PageID.1193-94).  See Estate of Files, 10 So. 3d at 534-36.

## III. IP HAS NO BAD-FAITH CLAIM AGAINST HARLEYSVILLE

Apart from the table of contents, the words "bad faith" appear only twice in IP's brief: Once in an argument heading stating, "IP's Counterclaims of Breach of Contract and **Bad Faith**" (Doc. 55, PageID.1243), and once in a sentence stating, "Further, to the extent the Court finds the duty to defend was triggered and that Plaintiff prematurely and improperly denied coverage, defense and indemnity, IP's counter claims for breach of contract and **bad faith** should survive for future prosecution" (id.) (emphases added).  IP does not discuss the law of bad faith, and offers no

- 14 -

argument in opposition to Harleysville's contentions that (1) Harleysville had arguable or debatable reasons to deny coverage for IP for the Alabama action, and for Land Clearing for the Tennessee action; (2) that since Harleysville had such reasons, it could not have had actual knowledge of the absence of such reasons; and (3) that it also could not have failed to determine whether it had such reasons (Doc. 44, PageID.1195-96, 1198-99).  While IP argues that Harleysville failed to adequately investigate (despite no such contention in IP's counsel's June 4, 2020 letter [Doc. 39-4]), IP's argument is based on an alleged failure to investigate facts or evidence <u>completely irrelevant to the duty to defend.</u>  And, IP never argues that this <u>alleged</u> failure constitutes bad faith.  Furthermore, IP does not dispute (1) that a judgment creditor proceeding under Ala. Code § 27-23-2, such as IP with respect to the Tennessee judgment against Land Clearing, cannot maintain a bad-faith claim; (2) that IP, in its capacity as a third-party claimant against Land Clearing in the Tennessee action, has no insurance contract with Harleysville, and therefore no right to assert bad faith; or (3) that Harleysville could not have breached the insurance contract (as required for bad faith) as to the Tennessee action, because Land Clearing breached the notice conditions (Doc. 44, PageID.1197-98).

## CONCLUSION

Harleysville, as a matter of undisputed fact and law, has no duty to defend or indemnify IP for the Alabama action, or Land Clearing for the Tennessee action and judgment, and has no obligation to IP under Ala. Code § 27-23-2.  Harleysville is therefore entitled to judgment on the pleadings, declaring that Harleysville does not owe coverage to IP or Land Clearing.  The Court should grant Harleysville's motion for such judgment, and deny IP's cross motion for judgment on the pleadings.

                                          */s/ William E. Shreve, Jr.*
                                          WILLIAM E. SHREVE, JR.    SHREW3946
                                          BREANNE S. ZARZOUR       ZARZJ7602
                                          Attorneys For Plaintiff

OF COUNSEL:

PHELPS DUNBAR LLP
P. O. Box 2727
Mobile, AL  36652
Telephone:  (251) 432-4481
william.shreve@phelps.com
brie.zarzour@phelps.com

                                          */s/ Christina May Bolin*
                                          CHRISTINA M. BOLIN   MAYCH6582
                                          EDGAR M. ELLIOTT, IV
                                          Attorneys For Plaintiff

OF COUNSEL:

CHRISTIAN & SMALL LLP
505 North 20th St., Ste. 1800
Birmingham, AL  35203
Telephone:  (205) 785-6588
cmbolin@csattorneys.com
emelliott@csattorneys.com

CERTIFICATE OF SERVICE

      I hereby certify that I have on May 10, 2021 filed the foregoing with the clerk of court by using the CM/ECF system, which will electronically serve the foregoing on the counsel listed below as being served by the CM/ECF system, and that I have mailed a copy of the foregoing to the parties listed below as being served by mail:

John M. Johnson, Esquire
Brian P. Kappel, Esquire
Charles M. Hearn, Esquire
Lightfoot, Franklin & White, LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203
jjohnson@lightfootlaw.com
bkappel@lightfootlaw.com
chearn@lightfootlaw.com
(via CM/ECF system)

PD.33874618.1

A. David Fawal
Butler Snow LLP
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, AL  35203
david.fawal@butlersnow.com
(via CM/ECF system)

Christina M. Bolin
Edgar M. Elliott IV
CHRISTIAN & SMALL LLP
505 North 20th St., Ste. 1800
Birmingham, AL  35203
Telephone:  (205) 785-6588
cmbolin@csattorneys.com
emelliott@csattorneys.com
(via CM/ECF system)

John R. Dailey, Sr.
2100 Camden Bypass
Camden, AL  36726
(via U.S. Mail, first class postage prepaid)

JRD Contracting, Inc.
2100 Camden Bypass
Camden, AL 36726
(via U.S. Mail, first class postage prepaid)

      */s/ William E. Shreve, Jr.*
      WILLIAM E. SHREVE, JR.