IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| HARLEYSVILLE PREFERRED INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No.: 1:20-CV-00340-TFM-B |
| INTERNATIONAL PAPER COMPANY, JRD CONTRACTING & LAND CLEARING, INC., JOHN R. DAILEY SR., AND JRD CONTRACTING, INC. | ) ) ) ) ) ) | ORAL ARGUMENT REQUESTED |
| Defendants. | ) | |

**DEFENDANT INTERNATIONAL PAPER COMPANY'S
REPLY TO HARLEYSVILLE'S OPPOSITION TO
DEFENDANT'S CROSS MOTION FOR JUDGMENT ON THE PLEADINGS**

COMES NOW Defendant International Paper Company (hereinafter "IP") and files its reply[1] to Plaintiff Harleysville Preferred Insurance Company's (hereinafter "Plaintiff" or "Harleysville") opposition [Doc 56] to Defendant IP's Cross Motion for Judgment on the Pleadings (hereinafter "Cross Motion") as follows:

A. **REPLY TO HARLEYSVILLE'S OPPOSITION TO IP'S UNDISPUTED FACTS**

Harleysville inaccurately describes how the complaint in the underlying Alabama action [Doc. 55, Exhibit C] was filed and served. Specifically, Harleysville accuses IP of improperly referring to certain exhibits that were filed at the same time as the complaint and served along with that complaint, but again Harleysville is incorrect. As the Alabama docket makes clear,

---

[1] IP incorporates, as though fully set forth herein, the arguments and case law set out in Doc. 55 filed with this Court.

these exhibits, which included the letters from Dr. Clifford Lange referenced in IP's Opposition [Doc. 55], were effectively part and parcel with the complaint, just as the deposition notice was. Indeed, the Alabama plaintiffs filed and served the deposition notice and accompanying exhibits alongside the complaint referenced in IP's motion. Because of the way the Alabama plaintiffs proceeded – filing the exhibits on the public docket along with their complaint and their discovery – the exhibits were as much a part of the plaintiffs' claims as the complaint itself, and Harleysville strains credulity arguing that they are of no import.

Because the deposition notice and exhibits were filed on the public docket, the Court can take judicial notice of them. *State Farm Fire and Cas. Co., v. Lacks*, 840 F. Supp.2d 1292, 1294 (M.D. Ala. 2012). Moreover, since Harleysville had access to the deposition notice and exhibits prior to rendering its coverage decision to deny coverage, defense, and indemnity, and because those exhibits impact and (as described below) expand upon allegations made within the four corners of the complaint, Harleysville cannot now ignore them. The complaint and those exhibits present a fact question as to the application of Harleysville's policy exclusions requiring Harleysville to assume its duty to defend and this Court should therefore grant IP's Cross Motion.

      **B.**    **HARLEYSVILLE'S OPPOSITION FAILS TO OVERCOME IP'S WELL-SUPPORTED ARGUMENTS AS TO DELIVERY OF THE POLICY AND ESTOPPEL**

Harleysville talks out of both sides of its mouth in its opposition, first denying that it violated Ala. Code § 27-14-19 because (it claims) IP is not a named insured, and then, after conceding IP is labeled a named insured on the certificate of insurance (COI), complete with its corporate mailing address, suggesting that § 27-14-19 simply does not apply to IP because IP is a big company. Harleysville is wrong on both fronts. Instead, because Harleysville plainly violated § 27-14-19 to IP's detriment, Harleysville is estopped as a matter of law from asserting

exclusions and conditions in the policy and arguing certain exclusions and conditions apply to bar coverage.

To begin, Harleysville claims IP is not named as an additional insured under its policy, suggesting that § 27-14-19 does not require delivery of a policy to unnamed additional insureds because insurers normally would not know the identity of such a party or where to mail the policy. [Doc. 44, p. 21]. But this argument ignores clear record evidence (1) that IP is named as an additional insured on the COI and (2) that Harleysville already had IP's mailing address and therefore knew exactly where it needed to mail the policy named additional insured or unnamed additional insured. [Doc. 55, p. 8]. More to the point, Harleysville acknowledges in its opposition that a person or entity's status as an additional insured under the statute is a question of fact for the jury. *Brown Machine Works & Supply Co. v. Insurance Co. of North America*, 659 So.2d 51 (Ala. 1995). [Doc. 56, p. 11]. Because IP's status cannot be decided as a matter of law on these facts, Harleysville is not entitled to judgment as a matter of law under Rule 12(c), and IP's Cross Motion should be granted to the extent it seeks a defense.

On the second point, after conceding that the statute requires policy delivery after all, Harleysville argues that "[r]egardless of whether IP was entitled to policy delivery," no prejudice occurred because IP is a large company. [Doc. 56, pgs. 11-12] Nonsense. It is plain from the facts that Harleysville is arguing for the application of a policy exclusion (from a policy Harleysville did not give to IP) that failure to deliver the policy did indeed prejudice IP. Also, Harleysville's argument attempts to write an exception into the statutory language of § 27-14-19 that an insurer is absolved of its statutory duty if the insured or entity entitled to policy delivery is a large company that has general knowledge of commercial general liability policies and that is deemed by the insurer to be "sophisticated." Harleysville's argument would effectively usurp

the Alabama legislature by creating a new class of insureds who no longer have the statutory protection prescribed to them by under § 27-14-19. A plain reading of § 27-14-19 neither expressly or impliedly provides such an exception, and Harleysville is not empowered to unilaterally overrule the Alabama legislature as to who is entitled to policy delivery.

The uncontroverted evidence before the Court is that Harleysville failed to meet its statutory duty in delivering the policy at issue to IP, a known additional insured. General knowledge of commercial general liability policies does not equate to an additional insured, who never received delivery of the policy pursuant to §27-14-19, having full actual or constructive knowledge of the specific contractual language set out as conditions in that particular contract of insurance. Harleysville claims IP fails to address the cases set out in footnote 5 of its opposition; however, the issue of prejudice and the detriment caused by Harleysville's failure to meet its statutory mandate are both addressed in IP's Cross Motion. [See Doc. 56, pgs. 8-10]. Harleysville is utilizing its policy as both a sword and a shield in this instance, and the simple fact of its denial of coverage to IP based on the notice requirement is paramount evidence of prejudice given the statutory mandate for policy delivery. It sum, Harleysville's failure to comply with § 27-14-19 prejudiced IP, and Harleysville should be estopped from denying coverage based on any condition, limitation and/or exclusion in the policy at issue. IP has demonstrated coverage and a duty to defend in support of its Cross Motion for Judgment on the Pleadings.

### C. IP'S NOTICE WAS REASONABLE AND THE DISPUTED FACTS SURROUNDING NOTICE IS A QUESTION FOR THE JURY

Harleysville argues IP's failure to provide reasonable notice voids coverage, and therefore, absolves Harleysville of the duty to defend IP in the Alabama action. But Harleysville's opposition on this issue of notice is based upon multiple disputed facts and

conflicting inferences, all of which preclude the relief Harleysville seeks. Indeed, the issue of whether notice was reasonable based on all the facts and circumstances is a question for the trier of fact:

> Where facts are disputed or where conflicting inferences may reasonably be drawn from the evidence, the question of the reasonableness of a delay in giving notice is a question of fact for the jury.

*Southern Guaranty Ins. Co. v. Thomas*, 334 So.2d 879, 882 (Ala. 1976), *Travelers Indem. Co. of Conn. v. Miller*, 86 So.3d 338, 344 (Ala. 2011).

### D. HARLEYSVILLE FAILS TO EXPLAIN ITS DISREGARD OF THE LANGUAGE OF THE COMPLAINT AND THE EXTRINSIC EVIDENCE FILED WITH THE COMPLAINT DEMONSTRATING IT HAD A DUTY TO DEFEND IP IN THE UNDERLYING CASE

Harleysville initially argued in its Rule 12(c) motion that the duty to defend issue is confined to an examination of the underlying complaint and policy. [Doc 44, p. 7] But, Harleysville itself utilizes deposition testimony from the Alabama action in support of its claim that it had no duty to defend IP. [Doc. 56, p. 4] Accordingly, Harleysville cannot plausibly argue that the extrinsic evidence filed with the complaint is immaterial to the present dispute.

Setting aside Harleysville's hypocritical stance on relevant evidence, the Alabama Supreme Court "has rejected the argument that the insurer's obligation to defend must be determined solely from the facts alleged in the complaint." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So.2d 1006, 1010 (Ala. 2005) (other citations omitted). The duty to defend analysis also includes consideration of extrinsic facts which may be proved by admissible evidence. *Porterfield v. Audubon Indem. Co.,* 856 So. 2d 789, 792 (Ala. 2002). When the allegations of the underlying complaint are contradictory or assert covered and non-covered acts under the policy, the insurer "is under a duty to at least defend the allegations covered in the policy." *Acceptance Ins. Co. v. Brown*, 832 So.2d 1, 14 (Ala 2001). That is exactly the result dictated here.

Trying to avoid this result, Harleysville cites *Tapscott v. Allstate Ins. Co.* 56 So.2d 570 (Ala. 1988), suggesting it establishes the lack of any duty to defend, because Harleysville and IP disagree on whether Organo-Ash is a pollutant or contaminant or if it is safe. However, there is no need to delve into that kind of analysis because it is clear that there is a dispute about the nature of Organo-Ash inherent in the underlying complaint in the Alabama action. Harleysville erroneously portrays the complaint as <u>only</u> containing allegations that Organo-Ash is a contaminant and pollutant. To the contrary, the underlying complaint includes allegations on both sides of that question, including the allegation that IP "represented to Plaintiffs that the Organo-Ash was perfectly safe" and that "Organo-Ash did not contain any harmful materials or substances, that the ash was perfectly safe for the land and environment, and that the ash would not cause any harm." [Doc 55, Exhibit C, p. 9, ¶ 13 and p. 11-12, ¶ 21]. The four corners of the complaint thus clearly contain some level of disputed material facts triggering a duty to defend, at a minimum, under a reservation of rights. Further, the filing of the deposition notice contemporaneously with the complaint in the Alabama action provided Harleysville with additional evidence ripe for consideration in the duty to defend analysis. Harleysville, in denying coverage, defense, and indemnity, cherry picked the allegations in the complaint which supported denial while ignoring or failing to consider <u>all the allegations</u> contained in the complaint and other extrinsic evidence filed contemporaneously with the complaint.

Exclusionary language contained in insurance policies must be interpreted as narrowly as possible in order to provide maximum coverage for the insured and must be construed most strongly against the insurer. *Porterfield,* 856 So. 2d at 799-800. In this matter, Harleysville selectively chose the allegations of the complaint in the Alabama action which benefited itself, gave those allegations a broad interpretation to find no coverage, ignored other allegations and

construed the pollution exclusion most strongly in its own favor. While Harleysville claims it investigated this matter [Doc. 56, p. 2], Harleysville sets forth no facts or arguments detailing its investigation prior to denial of coverage.

      E.      **HARLEYSVILLE FAILS TO SHOW HOW THE INDEMNITY ISSUE IS RIPE**

Harleysville's opposition is a prime example of putting the cart before the horse. Harleysville argues because there is no duty to defend, the issue of the duty to indemnify is moot. [Doc. 56, p. 13-14] Harleysville's opposition claims IP has argued that the duty to <u>defend</u> is not ripe [Doc. 56, p.13] but a review of IP's opposition confirms it asserts the "duty to indemnify is not ripe." The evidence before the Court demonstrates pointedly to a duty to defend based on consideration of all allegations contained in the complaint of the Alabama action and other admissible, extrinsic evidence filed contemporaneously with the complaint. Harleysville chooses to isolate allegations in the complaint that support denial of coverage while ignoring the remaining allegations that trigger a duty to defend. Due to the overwhelming evidence of a duty to defend on the part of Harleysville, the issue of indemnity is not ripe.

      F.      **IN LIGHT OF HARLEYSVILLE'S ERRONEOUS CLAIM DENIAL AND REFUSAL TO DEFEND, IP'S BAD FAITH CLAIM SHOULD SURVIVE TO BE ADDRESSED AT A LATER TIME**

IP's opposition [Doc 55] contains numerous arguments to demonstrate Harleysville's bad faith failure to conduct a thorough investigation prior to its bad faith denial of coverage, defense and indemnity. As set forth above, Harleysville was selective in the allegations it chose to review in reaching its decision to deny coverage. Harleysville did not have an arguable or debatable reason to deny coverage given the totality of the allegations contained in the complaint of the Alabama action and the accompanying filings. The complaint contained contradictory allegations regarding the actual nature of Organo-Ash which established a dispute as to a material fact. Harleysville cherry picked only those allegations in the complaint which suited its

7

narrative and simply ignored the rest. Harleysville had actual knowledge that the complaint in the Alabama action contained allegations that Organo-Ash was safe, would not cause harm, did not contain harmful materials or substances and that the ash was perfectly safe for the environment. Having actual knowledge that the four corners of the complaint contained a dispute as to a material fact, Harleysville denied coverage, defense and indemnity. Further, Harleysville had actual knowledge of the letters from Dr. Clifford Lange filed contemporaneously with the complaint which raised sufficient evidence as to the contradictory allegations contained in the complaint. Acting in bad faith, Harleysville sought a reason to deny coverage, defense and indemnity.

As an additional insured under the contract, IP has legal standing to bring a bad faith claim against Harleysville. In *Bashir's Inc. v. Sharif*, 2012 WL 12895644, *1-3 (N.D. Ala. Oct. 30, 2012) (Proctor, J.), the court examined whether an additional insured had legal standing to bring a cause of action for bad faith against an insurer. The court in *Bashir's* reached the conclusion that additional insureds do indeed have standing:

> The rationale behind giving additional insureds the same standing as named insureds to raise bad faith claims was perhaps best articulated in *Northwestern Mut. Ins. Co. v. Farmers Ins. Group*, 143 Cal. Rptr. 415, 421[(Cal. Ct. App. 1978)], in which the court distinguished the rights of an additional insured from those of a third party beneficiary, finding that although an additional insured was not a contracting party, it was still a party to the contract. The relationship between the insurer and the additional insured, noted the court, "is the same as that between the insurer and the named insured." *Id.* at 422. The insurer "is obligated to pay the liability of the [additional] insured up to the policy limits" and the insurer "has the right to control litigation and settlement negotiations." *Id.* The additional insured and the named insured are also subject to the same risks should the insurer refuse to act in good faith. *Id*. at 423. For these reasons, the court in Northwestern found that an insured need not be "named" to gain standing to raise a bad faith claim. *Id.* Neither does the insured need to be the one who pays the premiums. *Id.* at 422. Rather, an additional insured may be a member of a group for whose benefit the contract was made and be treated as a party to the contract. *Id.* at 423. This interpretation has since been adopted in other jurisdictions that have directly addressed this issue.

*Id* at *2. Due to Harleysville's erroneous claim denial and refusal to defend, IP's Cross Motion is due to be granted.

## CONCLUSION

The evidence before the Court demonstrates Harleysville failed to consider all allegations in the complaint filed in the Alabama action, and instead isolated those causes of action which supported a denial based on conditions and exclusions in the policy in bad faith. IP has more than demonstrated that a duty to defend was triggered by the complaint in the Alabama action and the admissible extrinsic evidence available to Harleysville prior to its denial decision. This denial was in bad faith because it lacked a sufficient basis in fact and because Harleysville did not conduct a reasonable or adequate investigation of the underlying facts. Based on the foregoing and the arguments and law set forth in IP's Cross Motion, that motion is due to be granted.

Respectfully submitted this the 16th day of June, 2021.

/s/ A. David Fawal
A. David Fawal [ASB-4593-W82A]
david.fawal@butlersnow.com

**OF COUNSEL:**
**BUTLER SNOW LLP**
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, Alabama 35203
Telephone: (205) 297-2200
Facsimile: (205) 297-2100

*One of the Attorneys for International Paper Co.*

                      /s/ **Brian P. Kappel**
                      **Brian P. Kappel**
                      **bkappel@lightfootlaw.com**
                      John M. Johnson (jjohnson@lighfootlaw.com)
                      Charles M. Hearn (chearn@lightfootlaw.com)

**OF COUNSEL:**
**LIGHTFOOT, FRANKLIN & WHITE, LLC**
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
Telephone:   (205) 581-0700
Facsimile:   (205) 581-0799

                      *Attorneys for International Paper Co.*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing has been served upon all parties to this action by e-file using the Court's CM/ECF system and/or by depositing a copy of same in the U.S. Mail, postage prepaid and properly addressed as follows:

William E. Shreve, JR.
J. Breanne Zarzour
**PHELPS DUNBAR, LLP**
P.O. Box 2727
Mobile, Alabama 36652

JRD Contracting & Land Clearing, Inc.
2100 Camden Bypass
Camden, AL 36726

John R. Dailey, Sr.
2100 Camden Bypass
Camden, AL 36726

JRD Contracting, Inc.
2100 Camden Bypass
Camden, AL 36726

Edgar M. Elliott IV
**CHRISTIAN & SMALL LLP**
505 North 20th St., Suite 1800
Birmingham, AL 35203
emelliott@csattorneys.com

Christina M. Bolin
**CHRISTIAN & SMALL LLP**
1 Timber Way Ste 101
Spanish Fort, AL 36527-5634
cmbolin@csattorneys.com

      Done this the 16th day of June, 2021.

                              /s/ A. David Fawal
                              OF COUNSEL