IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| HARLEYSVILLE PREFERRED INSURANCE CO., | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO. 1:20-cv-340-TFM-B |
| | ) | |
| INTERNATIONAL PAPER CO., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Now pending before the Court is *Plaintiff's Motion for Judgment on the Pleadings on its Claims for a Declaratory Judgment Against All Defendants and on Defendant International Paper Co.'s Counterclaims* (Doc. 40, filed 5/10/21) along with its brief in support (Doc. 44, filed 5/11/21). Also pending is *Defendant International Paper Company's…Cross Motion for Judgment on the Pleadings* (Doc. 55, filed 6/2/21). Each side filed their respective responses (Docs. 55, 56) and replies (Docs. 56, 57). The motions are fully submitted and ripe for review. After a careful review of the motions, responses, replies, pleadings, and relevant law, the Court **GRANTS** Plaintiff's motion (Doc. 41) and **DENIES** Defendant's motion (Doc. 55) for the reasons articulated below.[1]

## I.   PARTIES, JURISDICTION, AND VENUE

Plaintiff Harleysville Preferred Insurance Company ("Plaintiff" or "Harleysville") asserts its Complaint for Declaratory Judgment wherein it seeks a determination on coverage related to the policies cited in the complaint. *See* Doc. 1. Harleysville brings this suit pursuant to this Court's

---

[1] The Court previously entered a text order indicating its ruling on the motions and noted a written opinion would follow. *See* Doc. 58. This is that opinion.

diversity jurisdiction under 28 U.S.C. § 1332.  A federal court has diversity jurisdiction over a civil action between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs both of which are satisfied here.  28 U.S.C. § 1332(a)(1).

Defendants are International Paper Company ("IP"), JRD Contracting & Land Clearing ("Land Clearing"), John R. Dailey Sr. ("Dailey"),[2] and JRD Contracting, Inc. ("JRD Contracting"). The Court previously found that diversity of citizenship and the amount in controversy were both satisfied.  *See* Doc. 30.

Harleysville asserts venue is proper under 28 U.S.C. § 1391(b)(1) because all Defendants reside within the Southern District of Alabama (the Court's location).  Specifically, IP owns and operates paper mills and other facilities in Wilcox County, Baldwin County, and Dallas County all of which are within the Southern District of Alabama.  Land Clearing and JRD Contracting have their principal place of business in Camden, a city in Wilcox County – located within the Southern District of Alabama.  Finally, Dailey is also domiciled in Wilcox County, Alabama.  IP challenged venue and Defendants Dailey and JRD Contracting filed a motion to dismiss for misjoinder; but, the Court entered its Memorandum Opinion and Order denying their motions to dismiss and transfer venue and found that venue in the Southern District of Alabama was appropriate and no misjoinder had occurred.  *See* Doc. 30.

Based on the above, the Court finds jurisdiction and venue are both appropriate in this matter.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On June 30, 2020, Harleysville filed its complaint for declaratory judgment against IP,

---

[2] Not to be confused with his son John R. Dailey, Jr. who was Defendant Land Clearing's president and the sole shareholder of and operated Defendant JRD.  John R. Dailey, Jr. is not a party to this action.

Land Clearing, Dailey, and JRD Contracting.  *See* Doc. 1.  The declaratory judgment action relates to two underlying lawsuits -- *John R. Dailey Sr. and JRD Contracting, Inc. v. International Paper Company*, Civ. Act. No. CV-2018-900045.00 in the Circuit Court of Wilcox County, Alabama ("Alabama Action") and *International Paper Company v. JRD Contracting & Land Clearing, Inc.*, Civ. Act. No. 2:20-cv-2113 (W.D. Tenn.) ("Tennessee Action").  Harleysville seeks a declaration that it owes no coverage to IP based on the commercial insurance policies issued to Land Clearing, that it owes no duty to defend or indemnify IP for the claims in the Alabama Action, and that it owes no coverage to Land Clearing for the claims in the Tennessee Action.  *See* Doc. 1.

As background, IP and Land Clearing entered into a Waste Services Agreement ("WSA") under which Land Clearing contracted to handle, transport, and dispose of Organo-Ash for IP. John R. Dailey, Jr. was Land Clearing's President and the sole shareholder of and operated JRD. In the Alabama Action, Dailey and JRD Contracting claim that IP damaged their property through the deposit of Organo-Ash (a harmful substance).  Dailey testified that Land Clearing deposited the Organo-Ash on Dailey and JRD Contracting's property which ultimately damaged the property.   The complaint alleges six counts – Negligence, Fraudulent Misrepresentation, Fraudulent Suppression/Concealment, Private Nuisance, Trespass, and Wantonness.  *Id.* at 4, 6-9.

In the Tennessee Action, IP claims that Land Clearing owes IP indemnity against the Alabama Action pursuant to the WSA.  *Id.* at 4.

By letter dated March 23, 2020, IP's counsel notified Harleysville of the Alabama Action and demanded its defense and indemnification as an additional insured under the policies Harleysville issued to Land Clearing.  *Id.*  By letter dated March 25, 2020, an attorney notified the insurance producer of the Tennessee Action and asked whether a defense and coverage would be provided.  The insurance producer forwarded the letter and complaint to Harleysville.  By letters

to IP's counsel and to Land clearing dated May 15, 2020, Harleysville denied coverage for both

the Alabama Action and the Tennessee Action based on the Pollution Exclusion in the policies, IP

and Land Clearing's breaches of the Policies' notice conditions, and other grounds. *Id*. By letter

dated June 4, 2020, IP's counsel disputed the denial of coverage. Harleysville filed the instant

declaratory judgment action on June 30, 2020.

Further, in the Tennessee Action, Land Clearing did not file an answer and IP moved for

default which was entered on May 27, 2020. *Id*. at 4-5. The Court in the Western District of

Tennessee granted the request for default judgment on July 17, 2020. *See* Tennessee Action, Docs.

11, 12. The order states as follows:

> 1.  That Plaintiff is entitled to a default judgment on its declaratory judgment claim and breach of contract claim (liability only).
>
> 2.  That (a) Defendant is required to defend and indemnify Plaintiff in the action brought against Plaintiff and its employees Janet Pridgeon, Joni Harris and Shawn Blenis in the Circuit Court of Wilcox County, Alabama by John R. Dailey, Sr. and JRD Contracting, Inc. (the "Wilcox County Action"), per the terms of the Waste Services Agreement; and (b) Defendant was required to place its insurance carriers on notice of the claims against IP in the Wilcox County Action.
>
> 3.  That Defendant has breached the Waste Services Agreement by failing to defend and indemnify Plaintiff in the Wilcox County Action and by failing to place its insurance carriers on notice of the claims against Plaintiff in the Wilcox County Action. The Court reserves the issue of damages for Defendant's breach of the Waste Services Agreement pending resolution of the Wilcox County Action.
>
> 4.  That this judgment will become a final judgment without further notice pursuant to Fed. R. Civ. P. 55(b)(1) should Defendant fail to show good cause to set aside this judgment within a reasonable time pursuant to Fed. R. Civ. P. 55(c) or Fed. R. Civ. P. 60(b).

Tennessee Action, Doc. 12 at 2. As a result of this default judgment, IP has become a judgment

creditor of Land Clearing with the right to proceed directly against Harleysville under Ala. Code

§ 27-23-2 as a compulsory counterclaim.

At issues are the commercial general liability policies issued to Land Clearing bearing

policy no. MPA00000022969R effective through annual renewals from August 31, 2015 to August 31, 2018 (collectively "the Policies").  *See* Doc. 1 at 5, Exs. 1-3.  The Policies have limits of $1,000,000.00 per occurrence, $2,000,000.00 general aggregate (other than products-completed operations), and $2,000,000.00 aggregate (products/completed operations).  *Id*. at 5.  The Policies include endorsements for "Additional Insured – Owners, Lessees or Contractors –  Automatic Status When Required In Construction Agreement With You," and "Additional Insured – Owners, Lessees or Contractors – Completed Operations – Automatic Status When  Required  In Construction  Agreement  With  You."  *Id*. at 6.

On March 30, 2021, the Court denied the Defendants respective motions challenging venue and misjoinder and directed the parties to file their answers.  *See* Doc. 30.  IP filed its answer along with its own counterclaims.  *See* Doc. 33.  IP seeks a declaratory judgment that Harleysville owes coverage for the Alabama Action (Count I), that Harleysville breached the Policies by denying coverage (Count II), that Harleysville denied coverage in bad faith (Count III), declaratory judgment that Harleysville owes Land Clearing coverage for the Tennessee action and therefore must contractually fulfil its indemnity obligation to IP as a judgment creditor by then providing IP a defense and indemnity for the Alabama action (Count IV), Harleysville breached the Policies by denying IP, and Land Clearing's judgment creditor when it denied defense and indemnity for the Alabama action (Count V), and that denial was in bad faith (Count VI).

Much like the Tennessee Action, Land Clearing has not appeared in this case and upon Application by Harleysville, the Clerk entered default against Land Clearing.  *See* Docs. 25, 27. On May 7, 2021, at the request of the Plaintiff, the Clerk entered default against Dailey and JRD Contracting.  *See* Doc. 38.

On May 10, 2021, Harleysville filed its motion for judgment on the pleadings along with

a brief in support. *See* Docs. 40, 44. Harleysville asserts that it has no duty to defend IP because the pollution exclusion bars coverage for the Alabama Action, IP and Land Clearing's breaches of the notice conditions bar coverage, and IP was not entitled to policy delivery nor was it prejudiced by non-delivery. Doc. 44 at 7-24. Harleysville further asserts the pollution exclusion bars coverage for both Land Clearing and IP in the Tennessee action (to include coverage for the default judgment). IP timely responded in opposition and filed its own cross motion for judgment on the pleadings on the duty to defend issue. *See* Doc. 55. Harleysville filed a reply to the response in opposition and a response to the cross motion for judgment on the pleadings. *See* Doc. 56.

After the extensive briefing on the motions, both intertwined motions are ripe for review and the Court determines that oral argument is not necessary for resolution of the motions.

### III.   STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Judgment on the pleadings pursuant to Rule 12(c) is appropriate when "no issues of material fact exist, and the movant is entitled to judgment as a matter of law." *Ortega v. Christian*, 85 F.3d 1521, 1524-25 (11th Cir. 1996). When reviewing a judgment on the pleadings, the court must accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party. *Id*. A judgment on the pleadings is limited to consideration of "the substance of the pleadings and any judicially noticed facts." *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998). In other words, a Rule 12(c) motion "is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (applying 12(b)(6) standard of review to a 12(c) motion).

Eleventh Circuit precedent discussing the standard of review for a motion under Rule 12(c) indicates "[j]udgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002) (quoting *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001)); *see also Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002) ("If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint."). These cases have not yet been explicitly overturned. However, that same language was previously utilized in the context of a Rule 12(b)(6) motion to dismiss prior to *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007). In *Twombly*, the Supreme Court explained that this "no set of facts" language "earned its retirement" because it is simply "an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563, 127 S. Ct. at 1969. As caselaw is clear that the standards are functionally identical for a Rule 12(b)(6) and Rule 12(c) motion, the Court will apply the *Twombly* standard. *See, e.g., Perez-Acevedo v. Rivera-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (applying *Twombly* to a Rule 12(c) motion); *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549-50 (6th Cir. 2008) (same); *Doe v. MySpace Inc.*, 528 F.3d at 418 (same); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (same).

As a result, the court must draw "all reasonable inferences in the [non-movant's] favor." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1950, 173 L. Ed 868 (2009). The U.S. Supreme Court has suggested that courts adopt a

"two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 682, 129 S. Ct. at 1951-52).

## IV.   DISCUSSION AND ANALYSIS

As the Court noted, the standards for a 12(b)(6) motion to dismiss and 12(c) judgment on the pleadings are virtually identical. Typically, when faced with a 12(b)(6) motion to dismiss, a court must limit its consideration to the content of the complaint and any written instruments attached to the complaint as exhibits, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). The same is true with regard to a Rule 12(c) judgment on the pleadings. *See, e.g., Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 n.12 (11th Cir. 2014) (documents in support of the motion that are central to the pleader's claim and whose authenticity is undisputed); *Bank of Camilla v. St. Paul Mercury Ins. Co.*, 531 F. App'x 993, 994 (11th Cir. 2013) (citing *Horsley*, 304 F.3d at 1134) ("We may also consider documents attached to the plaintiff's complaint if they are (1) central to the plaintiff's claim and

(2) undisputed."); *Einsenberg v. City of Miami Beach*, 54 F. Supp. 3d 1312, 1319 (S.D. Fla. 2014) (quoting *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005)) ("In particular, the Court may 'take judicial notice of and consider documents which are public records . . . .'")

In the case at hand, the complaint attaches as exhibits: Exhibits 1 through 3, the Policies (Ex. 1, August 31, 2015-August 31, 2016; Ex. 2, August 31, 2016-August 31, 2017; Ex. 3 August 31, 2017-August 31, 2018); Ex. 4, the Alabama Action Complaint; and Ex. 5, Dailey's deposition in the Alabama Action.  Thus, these certainly can be considered.

The Court also takes judicial notice of court documents from the Tennessee Action (*International Paper Company v. JRD Contracting & Land Clearing, Inc.*, Civ. Act. No. 2:20-cv-2113 (W.D. Tenn.)) as well as the court documents from the Alabama Action (*John R. Dailey Sr. and JRD Contracting, Inc. v. International Paper Company*, Civ. Act. No. CV-2018-900045.00 (4th Cir. Ct. Ala.)) because they are public records that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (quoting Fed. R. Evid. 201(b) and holding district court may take judicial notice of public records, including prior court proceedings, without converting a motion to dismiss into a motion for summary judgment).

The Court also notes that the WSA is not only attached to the Tennessee Action complaint, but also referenced in and central to both the claim and counterclaim in this case.  Finally, the Court notes the letters exchanged between Harleysville and IP's counsel, which Harleysville submitted as part of its exhibits to the Motion for Judgment on the Pleadings and IP submitted as exhibits to its response in opposition.  *See* Doc. 39; Docs. 55-5 through 55-8.  Given that these letters are central to the claim and counterclaim as they relate to notice requirements and neither party disputes their authenticity, the Court will consider them.

The Court now turns to the arguments as they pertain to coverage for the Alabama Action and the Tennessee Action as well as the notice requirements. While Harleysville addresses the Alabama Action and the Tennessee Action in two different sections in its motion for judgment on the pleadings, the arguments functionally boil down to the same issues – the Pollution Exclusion and the Notice Requirements. The Court will address each in turn, but also notes the choice of law rules.

In diversity cases, the choice-of-law rules of the forum state determine which state's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007); *Am. Fam. Life Assur. Co. of Columbus, Ga. v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989). "Alabama applies the traditional doctrine[] of *lex loci contractus* to contract claims . . . The doctrine of *lex loci contractus* governs the validity, interpretation, and construction of the contract." *Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004) (citing *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991)). "The doctrine states that a contract is governed by the laws of the state where it is made except where parties have legally contracted with reference to the laws of another jurisdiction." *Id.* (internal quotation omitted).

Under the law established by the Alabama Supreme Court, insurance disputes are controlled by the law where the contract was issued. *See N.H. Ins. Co. v. Hill*, 516 F. App'x 803, 805 (11th Cir. 2013); *Smith v. State Farm Mut. Auto. Ins. Co.*, 952 So.2d 342, 347 (Ala. 2006) (citations omitted). In the case at hand, there is no dispute that the Policies involved in this case were issued to an insured located in Alabama (Land Clearing) and issued and delivered to that insured in Alabama. Consequently, Alabama law applies.

A.      **Failure to Deliver Policies to IP**

IP argues that Harleysville's failure to deliver the Policies to IP pursuant to Ala. Code § 27-14-19 prejudiced IP and estops the assertion of the conditions/exclusions under the policy. Because this addresses both of Harleysville's reasons for denying coverage, the Court will address it first.

Ala. Code § 27-14-19(a) states that "every policy shall be mailed or delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance[.]"  The Alabama Supreme Court then held that when an insurer has not complied with § 27-14-19 and its failure to comply has prejudiced the insured, the insurer may be estopped from asserting otherwise valid coverage conditions and exclusions. *Brown Mach. Works & Supply Co. v. Ins. Co. of N. Am.*, 659 So. 2d 51, 60-61 (Ala. 1995).  The Alabama Supreme Court left "open the question of what other insureds or beneficiaries the statutory phrase 'the insured or . . . the person entitled thereto' may include." *Id*. at 61.

In the case at hand, Harleysville acknowledges that IP would be an additional insured under the Policies, but notes that IP would be an unnamed additional insured by virtue of certain endorsements.  IP claims it was a named insured by virtue of a Certificate of Liability Insurance. Doc. 55 at 11, PageID 1223; Doc. 55-2 (Ex. B), PageID 1257.  The Certificate of Liability Insurance is a single page document issued by insurance producer Harmon Dennis Bradshaw, Inc. in Montgomery, Alabama. *Id.*  It notes that the Insured is JRD Contracting & Land Clearing, Inc. and lists Insurers Affording Coverage to include Insurer A (Harleysville Insurance Company), Insurer B (Associated General Contractors), and Insurer C (Westchester Surplus Lines Insur).  It notes under Coverage that Insurer Letter A includes Commercial General Liability, Automobile Liability, and Umbrella Liability, Insurer Letter B includes Workers Compensation and Employers

Liability, and Insurer Letter C includes Pollution.  Under the Description of Operations, it notes International Paper Company, its subsidiaries and affiliated Company are named as Additional Insured for the General Liability and Auto Liability.  Finally, at the top of the Certificate of Liability Insurance, it notes:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

> IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed... A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

Doc. 55-2 (Ex. B), PageID 1257.

IP notes that it reviewed the Certificate of Liability Insurance in July 2019 and identified Harleysville as the insurer.  IP further provides a letter between its counsel and counsel for Dailey dated August 21, 2019 which the Court considers because it is central to IP's counterclaim and is not disputed by either party.  The letter shows that IP "formally insist[s] that [Dailey's counsel] put the appropriate carriers on notice of the claims made by Mr. Dailey and produce copies of the policies as soon as possible."  Doc. 55-5, PageID 1405.  IP makes no independent effort to provide notice to Harleysville until March 23, 2020.  *See* Doc. 55-6, PageID 1407.

As noted by Harleysville, the Certificate of Liability Insurance that IP relies upon specifically notes it is informational only and confers no rights.  Doc. 55-2 (Ex. B), PageID 1257. The Policies (attached to the Complaint in their entirety as Docs. 1-1, 1-2, and 1-3), which are the controlling documents, do not list IP by name as an additional insured.  Rather IP was an unnamed insured by virtue of the endorsements discussing Additional Insureds.  *See* Doc. 1-1, PageID 104,

106; Doc. 1-2, PageID 257, 259; Doc. 1-3, PageID 410, 412.  Harleysville states "[r]equiring delivery to unnamed additional insureds would make little sense, because if not named, the insurer in most cases would not know these insureds' identities or addresses and so would not know to whom or where to send the policy."  Doc. 44 at 23.  The Court agrees.  There is no way for an insurance carrier to know to send a policy to an unnamed insured by virtue of a separate contract of which it is not part.  As such, Harleysville cannot be expected to comply with Ala. Code § 27-14-19(a) when it has no reason to be aware of any duty.  Further, IP cites no caselaw to the contrary and the main case on point, *Brown Machine Works*, left the question unresolved.  This Court will not read more into interpreting an Alabama statute than the Alabama Supreme Court did.

Further, IP has not demonstrated prejudice by the non-delivery of the Policies.  IP entered into the WSA with Land Clearing in 2016.  Doc. 55-4, PageID 1371-72.  In Article 16, Section 1, the WSA discusses various types of insurance coverage that Land Clearing is expected to maintain. *Id*.   Article 16, Section 1, Subsection (c) extensively discusses Commercial General Liability Insurance and then in Subsection (e) specifically discuss Contractor's Pollution Liability insurance. *Id*.  Section 4 then says the service provider (i.e. Land Clearing) agrees to make IP an additional insured on Service Provider's Commercial General Liability…and Contractor's Pollution Liability insurance policies, and will provide IP with copies of policy endorsements reflecting IP's status as an additional insured thereunder." *Id.*, PageID 1372.

To establish prejudice, IP would have to demonstrate that it did not know or could not know that Land Clearing's policy with Harleysville could contain a pollution exclusion and notice requirements <u>and</u> that had it received the Harleysville Policies, it would have taken a different action about the exclusion and notice conditions.

As to the exclusions, even in the WSA, IP demonstrates a knowledge and understanding

that Commercial General Liability insurance policy could have a pollution exclusion as demonstrated by the fact it separately identified the requirement for Contractor's Pollution Liability Insurance.  Even the Certificate of Liability Insurance on which IP so heavily relies very clearly shows that the Commercial General Liability policy is separate from the Pollution coverage – showing different policy numbers, different dates for policy effective/expiration dates, and identification of three separate insurers.  Doc. 55-2, PageID 1257.  In fact, the Certificate of Liability Insurance under coverages even notes "Insr Ltr" and identifies A (Harleysville) for commercial general liability, automobile liability, and umbrella liability, while B (Associated General Contractors) covers Workers Compensation and Employers' Liability, and C (Westchester Surplus Lines Insur) for Pollution.  Again, making it clear that there are separate policies and the commercial general liability policy likely has a pollution exclusion.

Further, a sophisticated company like IP which continually deals with insurance policies and litigation would be well-aware that it contained a reasonable notice provision.  A general search on the Court's PACER Case Location resulted in over 5400 cases where International Paper Company was a party.  Further, a notice provision is a standard provision in any insurance contract. It is simply incredible to believe that IP, a sophisticated company that deals with insurance on a regular basis would not be aware that any insurance policy would have standard language requiring "reasonable notice" when a claim or lawsuit is filed.

Therefore, as a result, the Court finds that Harleysville did not violate the requirements of Ala. Code § 27-14-19 in failing to deliver a copy of the Policies to IP and even if it had, IP cannot show prejudice.

**B.     Coverage and the Pollution Exclusion – Duty to Defend**

As noted in its motion, there is no question that IP is considered an additional insured under

the policy Harleysville issued to Land Clearing.

> Harleysville's CGL Policies do not list IP by name as an additional insured, but include endorsements automatically adding "any person or organization for whom you [Land Clearing] are performing operations...as specified under a written contract...that requires that such person or organization be added as an additional insured"; provided, however, that "[s]uch person or organization is an additional insured only with respect to liability caused...by [Land Clearing's] acts or omissions" in the performance of work "only as specified in the [contract]" (Doc. 1-1, PageID.104, 106; Doc. 1-2, PageID.257, 259; Doc. 1-3, PageID.410, 412). Since Land Clearing performed operations for IP under the Waste Services Agreement, and since that agreement required that Land Clearing make IP an additional insured on Land Clearing's CGL insurance, IP is an additional insured under the Policies to the extent described in the endorsements.

Doc. 44 at 6.

"Liability insurance coverage includes two separate duties: (1) the duty to defend; and (2) the duty to indemnify." *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063 (Ala. 2003). Under Alabama law, an insurer's duty to defend is generally broader than its duty to indemnify. *See Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005).

Under Alabama law, while it is the insured's burden to establish coverage by showing that a claim potentially falls within the policy, *Nationwide Mut. Fire Ins. Co. v. David Grp., Inc.*, 294 So. 3d 732 (Ala. 2019), "[i]f the question involves the application of an exclusion or an assertion that the policy does not apply for some reason other than the scope of coverage, the burden is on the carrier." *Am. Safety Indem. Co. v. T.H. Taylor, Inc.*, 513 F. App'x 807, 813 (11th Cir. 2013); *see also Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 697 (Ala. 2001) (declaratory judgment action by insurer: "Twin City [the insurer] has the  burden of proof in asserting that a claim is excluded under its policy of insurance."); *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001) (bad faith breach of duty to defend action brought by insureds: "In general, the insurer bears the burden of proving the applicability of any policy exclusion.").

"Whether an insurance company owes its insured a duty to provide a defense in

proceedings instituted against the insured is determined primarily by the allegations contained in the complaint." *Tanner v. State Farm Fire & Cas. Co.*, 874 So.2d 1058, 1063 (Ala. 2003); *see also Ajdarodini v. State Auto Mut. Ins. Co.*, 628 So. 2d 312, 313 (Ala. 1993) ("An insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured."). The Alabama Supreme Court "has rejected the argument that the insurer's obligation to defend must be determined solely from the facts alleged in the complaint in the action against the insured." *Hartford Cas. Ins. Co.*, 928 So.2d at 1010 (quoting *Ladner & Co., Inc. v. S. Guar. Ins. Co.*, 347 So. 2d 100, 103 (Ala. 1977)). In deciding whether the complaint alleges a covered accident or occurrence, "the [C]ourt is not limited to the bare allegations of the complaint in the action against insured but may also look to facts which may be proved by admissible evidence in a suit for declaratory relief." *Pac. Indem. Co. v. Run-A-Ford Co.*, 161 So. 2d 789, 795 (Ala. 1964). However, district courts have recognized that a limitation exists as to how far beyond the allegations in a complaint a court may go to find coverage. *See Encompass Ins. Co. of Am. v. De Graft Hayford Yankah*, Civ. Act. No. 1:06-cv-337, 2007 WL 9717755, at *2 (S. D. Ala. Jan. 16, 2007);[3] *Canal Ins. Co. v. M&G Tank Lines, Inc.*, Civ. Act. No. 00-183, 2001 U.S. Dist. LEXIS 6444, at *8-9, 2001 WL 530450, at *3 (S.D. Ala. May 9, 2001) (quoting *Sentry Ins. Co. v. Miller*, 914 F. Supp. 496, 500 (M.D. Ala. 1996)). In *Miller*, the court noted in relevant part:

> While Alabama case law allows a court to go beyond the allegations in a complaint to find coverage, the cases reveal limited application of the rule. In *Pacific Indemnity Co.*, the court went beyond a complaint's general allegation of negligence to determine that the alleged negligence arose through the use of an automobile, an express condition of coverage. 161 So.2d at 793-94. Similarly, in *Alfa Mutual Ins. Co. v. Jones*, 555 So.2d 77 (Ala.1989), the court pierced a complaint alleging negligent supervision to determine that the injury occurred while operating a go-cart, triggering an exclusion of coverage for injuries arising out of the insured's ownership of a motor vehicle.

---

[3] No Lexis citation available.

These cases simply hold that a court may go outside the complaint to determine coverage when the determination cannot be made from the face of the complaint. No case cited to this court holds that coverage may be determined on the basis of evidence conflicting with a complaint's allegations. Such an inquiry would require a court in a declaratory judgment action to decide substantive issues pending in a previously filed legal action. This court is unwilling to engage in such decision making. Since the materials extrinsic to the Complaint either contradict its allegations or provide only surplusage, the court finds no reason to go beyond the Complaint's allegations. Thus, the court determines Miller's personal liability coverage by applying the policy provisions to the Complaint's allegations.

914 F. Supp. at 500.[4]

"Exclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company that drafted and issued the policy." *Cincinnati Ins. Co. v. Lee Anesthesia, P.C.*, 641 So. 2d 247, 249 (Ala. 1994). However, "[w]here there is no ambiguity in the terms of an insurance contract, the language must be enforced as written, and courts cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties." *St. Paul Fire & Marine Ins. Co. v. Britt*, 203 So. 3d 804, 814 (Ala. 2016) (quoting *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 806 (Ala. 2002) (emphasis in original)).

The Policies at issue include a Pollution Exclusion which states that the insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any insured.

. . .

(b) At or from any premises, site or location which is or was at any time used by or

---

[4] Although it partially reversed on other grounds, the Eleventh Circuit affirmed *Miller* in relevant part. 114 F.3d 1202 (11th Cir. 1997).

for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:
    (i) Any insured;

. . .

Doc. 1-1, PageID 65; Doc. 1-2, PageID 218; Doc. 1-3, PageID 370.  The Policies further define "pollutants" as: "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."  Doc. 1-1, PageID 77; Doc. 1-2, PageID 230; Doc. 1-3, PageID 382. IP argues that the exclusion does not apply because it contests that Organo-Ash is a pollutant, contaminant, or waste through expert opinions and instead it is a beneficial organic material safe for use in landscaping projects and athletic fields. *See* Doc. 55 at 26, PageID 1238.  However, this argument misses the mark.

First, the face of the complaint is the <u>first</u> place that the Court should look to determine a duty to defend.  The complaint in the Alabama Action is clear that it alleges that Organo-Ash placed on Dailey and JRD Contracting's "property contains harmful materials, substances, and/or toxins, including metallic elements, and these contaminants have damaged the land and soil."  Doc. 1-4 at 8.  While IP may disagree, the Court need not look further when the complaint clearly implicates the exclusion and the language of the exclusion is not ambiguous.  The "pollutants" definition includes "contaminants" and "waste" which "includes materials to be recycled, reconditioned or reclaimed."  Harleysville spends several pages of its motion reciting definitions. Doc. 44 at 12-18, PageID 1176-1182.  The Court agrees that the Organo-Ash placed on the land meets the definitions for discharge, dispersal, seepage, migration, release or escape of pollutants. Further, the fact that IP finds value in the substance for secondary purposes does not negate the

definition is inclusive of recycled, reconditioned, or reclaimed" materials. Moreover, the Court need not go further than the complaint in <u>this</u> factual situation because the complaint itself makes it clear that the pollution exclusion is implicated and applicable with regard to Harleysville's duty to defend. *See Sentry*, 914 F. Supp. at 500; c*f. Tapscott v. Allstate Ins. Co.*, 526 So. 2d 570, 572, 575 (Ala. 1988) (no duty to defend intentional-tort claims where policy contained intentional-injury exclusion; "whether [insured] actually intended to imprison, detain, arrest, or inflict emotional distress on [plaintiff]...goes to the merits of the complaint rather than the issue in this [declaratory-judgment action]," and insured's affidavit "denying the allegations in the complaint in no way affects the nature of the plaintiff's claim for an intentional tort, and...has no bearing on [insurer's] responsibility to defend or indemnify"); *Ladner*, 347 So. 2d at 103 (no duty to defend intentional-fraud claim; while insured "denies knowing that the lots . . . would flood, . . . that is a matter to be determined in the [underlying] lawsuit," and insured's "denial in no way changes the nature of the [plaintiffs'] claim").

Additionally, though the Alabama Action complaint asserts multiple claims: Negligence, Fraudulent Misrepresentation, Fraudulent Suppression/Concealment, Private Nuisance, Trespass, and Wantonness, it is clear that all the claims allege injury or damage arising out of the Organo-Ash and its placement on the property. *See Pa. Nat'l Mut. Cas. Ins. Co. v. Snead Door, LLC*, Civ. Act. No. 4:12–CV–3731, 2013 U.S. Dist. LEXIS 18535, at *15, 2013 WL 550483, *3-4, 6 (N.D. Ala. Feb. 12, 2013) (pollution exclusion barred coverage for negligence, fraud, and misrepresentation claims)

In sum, the Court need not consider evidence beyond the complaint to make the determination. However, even the WSA makes it clear that Organo-Ash is considered waste – nothing about it contradicts the complaint in the Alabama Action. The ultimate merits of the claim

have no bearing on the actual implication of the exclusion for the duty to defend in the Alabama Action.

The same result holds for the Tennessee Action.  The default judgment IP received against Land Clearing states that Land Clearing is "required to defend and indemnify [IP] in the [Alabama Action]…per the terms of the Waste Services Agreement" and that Land Clearing "breached the Waste Services Agreement by failing to defend and indemnify [IP] in the [Alabama Action.]" Doc. 28-2, PageID 1010-11.  IP counterclaims that because IP is a judgment creditor of Land Clearing, it may proceed directly against Harleysville for a defense and indemnity based on Harleysville's contractual obligation to Land Clearing.  The problem with this claim is that it ultimately requires a determination that Land Clearing is entitled to defense in the Alabama Action. The same analysis above that excludes coverage for the Alabama Action applies here.  A "judgment creditor's right under [Ala. Code] § 27-23-2 to proceed against the insur[er] . . . is dependent upon the rights of the insured against its insurer under the policy." *St. Paul Fire & Marine Ins. Co. v. Nowlin*, 542 So. 2d 1190, 1194 (Ala. 1988).  As the Court already determined that the Pollution Exclusion applies in the case at hand, Land Clearing would not be entitled to a defense and IP has no greater rights than Land Clearing.  *See, e.g., Cap. All. Ins. Co. v. Cartwright*, 512 S.E. 2d 666, 668-69 (Ga. Ct. App. 1999) (applying Alabama law, stating that "the automobile exclusion...bar[s] coverage [for] the underlying [plaintiff's] claim" against indemnitee, that "[e]ven though the claim against [insured] is a contractual indemnity action, the fact remains that [the underlying plaintiff's] injuries arose out of the use of a trailer, a risk excluded by the policy," and that as a result, insurer did not owe coverage to insured for contractual-indemnity claim).

**B.   Notice Requirements**

As the Court finds that the Pollution Exclusion applies and precludes any duty to defend

for the Alabama and Tennessee Actions, the Court technically need not analyze the additional assertion by Harleysville that IP and Land Clearing breached the Policies' notice conditions. However, out of an abundance of caution and as an alternative basis, the Court also will address the additional argument.

The Policies' "Conditions" state:

b. If a claim is made or "suit" is brought against any insured, you must

    . . .

    (2) Notify us as soon as practicable.
    You must see to it that we receive written notice of the claim or 'suit' as soon as practicable

c. You and any other involved insured must
    (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"

Doc. 1-1, PageID 73; Doc. 1-2, PageID 226; Doc. 1-3, PageID 378.

The Alabama Supreme Court has stated:

The requirement of notice "as soon as practicable" means that the insured must give notice "within a reasonable time under all the circumstances." *See American Liberty Insurance Co. v. Soules*, 288 Ala. 163, 258 So. 2d 872 (1972). In making this determination, the only factors to be considered are the length of the delay in giving notice and the reasons therefor.  Absence of prejudice to the insurer from the delay is not a factor to be considered.  *Southern Guaranty Insurance Co. v. Thomas*, 334 So. 2d 879 (Ala. 1976).

. . .

Where facts are disputed or where conflicting inferences may reasonably be drawn from the evidence, the question of the reasonableness of a delay in giving notice is a question … for the [trier of fact]. *Provident Life & Accident Ins. Co. v. Heidelberg*, 228 Ala. 682, 154 So. 809). Conflicting inferences concerning the reasonableness of a delay may sometimes be drawn where the insured offers evidence of mitigating circumstances.

However, where an insured fails to show a reasonable excuse or the existence of circumstances which would justify a  protracted delay, the Court should as a matter of law hold that there has been a breach of the condition as to notice….

> Thus, the determination of the fundamental issue, whether notice of the occurrence or claim was given to the insurer within a reasonable time, rests on the reasonableness of the delay. . . . If conflicting inferences can be drawn from the evidence, the question of reasonableness is submitted to the trier of fact. If the facts are undisputed, however, and the insured does not show justification for the protracted delay, the court may find the delay unreasonable as a matter of law.

*Nationwide Mut. Fire Ins. Co. v. Estate of Files*, 10 So. 3d 533 (Ala. 2008) (additional citations and quotations omitted.)

When an insured fails to timely notify its insurer about an accident or a lawsuit or fails to forward suit papers as required by the policy, the insurer may deny coverage. *Watts v. Preferred Risk Mut. Ins. Co.*, 423 So. 2d 171, 173 (Ala.1982) (failure of an insured to comply within a reasonable time with a provision in an insurance policy requiring the forwarding of lawsuit papers releases the insurer from obligations imposed by the contract). "The terms 'as soon as practicable' and 'immediately' (as they are used in the suit policy) have been generally construed to mean that notice must be given 'within a reasonable time' in view of all the facts and circumstances of the case." *Thomas*, 334 So. 2d at 882 (citations omitted).

> [T]he determination of the fundamental issue, whether notice of the occurrence or claim was given to the insurer within a reasonable time, rests on the reasonableness of the delay. … If conflicting inferences can be drawn from the evidence, the question of reasonableness is submitted to the trier of fact. If the facts are undisputed, however, and the insured does not show justification for the protracted delay, the court may find the delay unreasonable as a matter of law.

*Estate of Files*, 10 So. 3d at 535 (citations omitted).

The timeline here is not in dispute. JRD and Dailey filed the Alabama Action on May 18, 2018 and IP was served on May 21, 2018. None of the involved parties notified Harleysville of the lawsuit or sent the complaint at that time. IP states the Alabama Action plaintiffs disclosed for the first time that the source of the Organo-Ash on their property was Land Clearing on February 13, 2019. Then in July 2019, IP obtained the certificates of insurance identifying Harleysville as

Land Clearing's insurer.  On August 21, 2019, IP asked Land Clearing to notify its insurers of the lawsuit.  Land Clearing did not respond to the request nor did it notify its insurers.  On February 14, 2020, IP initiated the Tennessee Action against Land Clearing alleging that Land Clearing failed to notify its insurers of the Alabama Action.  Finally, on March 23, 2020, IP's counsel first notified Harleysville of the Alabama Action and included a copy of the complaint.  Then on March 30, 2020, Land Clearing first notified Harleysville of the Tennessee Action when it demanded coverage for the Tennessee Action.

As previously discussed, IP is a sophisticated company that is accustomed to litigation and insurance policies.  There is simply no reasonable fact finder that would say under the circumstances that IP gave reasonable notice to Harleysville or that it was unaware it would need to provide notice.  There was an almost two year delay between when IP was first served with the Alabama Action (May 21, 2018) and when Harleysville finally received notice of the underlying Alabama Action (March 23, 2020).  Even after IP obtained the Certificate of Liability Insurance, it waited an additional eight months to notify Harleysville.  Though it did request that Land Clearing provide notice to its insurers, it still waited and did nothing itself to provide notice.  Instead, IP filed the Tennessee Action against Land Clearing on February 14, 2020 before notifying Harleysville on March 23, 2020.

IP should have shown the identity of the insurance carriers since 2016 when the WSA was signed because the WSA included a contractual provision which required Land Clearing to provide IP with copies of policy endorsements reflecting IP's status as an additional insured.  The facts do not make it clear whether Land Clearing failed to comply with the contract term or IP simply did not pay attention to the carriers after receiving copies; but resolution of that fact does not matter for the reasonableness analysis in the facts of this case.  It was incumbent upon both WSA

signatories (IP and Land Clearing) to know the information required by the WSA.  Finally, even if IP did not know in 2016-2018, it found out the identities of the insurance carriers when it received the Certificate of Liability Insurance in July 2019 and it still took no direct action to notify Harleysville of the Alabama Action.

Land Clearing fares no better in the analysis.  Land Clearing also did not provide any notice to Harleysville until March 30, 2020 (one week after IP sent notice) when it demanded coverage for the Tennessee Action.  Land Clearing obviously knew who its insurance carriers were as to the various policies.

Under the facts and circumstances of the case, the notice provided to Harleysville was not reasonable for either IP or Land Clearing, and therefore they breached the notice conditions, which means Harleysville could deny coverage.

Further, to the extent IP attempts to make a claim against Harleysville under § 27-23-2 using the default judgment, that claim also fails.  In *Travelers Indemnity Co. v. Miller*, 86 So. 3d 338 (Ala. 2011), the Alabama Supreme Court specifically overruled *Haston v. Transamerica Insurance Services*, 662 So. 2d 1138 (Ala. 1995) "to the extent that it purports to give a right to an injured party who gives notice after a default judgment has been entered, a right the insured would not have had nor have been successful in pursuing." *Travelers Indem. Co.*, 86 So. 3d at 347.  In *Travelers*, the Supreme Court discussed a situation similar to the one at hand.  In that case, the insured failed to provide notice to the insurance company when it was sued.  As a result, the plaintiff obtained a default judgment and then asserted a claim under Ala. Code §§ 27-23-1 and -2 seeking to apply the proceeds of an insurance contract to satisfy a judgment.  The Alabama Supreme Court found that a judgment creditor under Ala. Code § 27-23-1 and -2 is ultimately bound by an insured's failure to comply with notice requirements.  "The purpose of a notice-of-

lawsuit provision in an insurance policy is to give the insurer the opportunity to control litigation on which its contractual liability hinges." *Id.* (citing *N. River Ins. Co. v. Overton*, 59 So. 3d 1 (Ala. 2010)).

> In the present case, Smith did not provide Travelers with notice of the occurrence nor did Smith forward copies of the complaint filed against it by Miller to Travelers. Miller did not offer any excuses for Smith's delay in notifying -- actually its failure to notify -- Travelers. Miller's notice to Travelers after the default judgment was entered was untimely. We note that it appears that Miller's counsel knew of Smith's certificate of insurance, which Smith was required to have, as early as when counsel served Smith. However, Travelers was not notified of the action until after a default judgment had been entered. Travelers never had the opportunity to control the litigation because a judgment had been entered before Travelers had knowledge of the lawsuit. Under our decision in *Files*, Miller is barred from recovering under the policies.

*Id.* at 347-48. The instant case is similar in that IP is trying to use § 27-23-2 to enforce coverage against Harleysville. Under Alabama law, such a claim fails when the insured is not entitled to coverage. It is clear that Land Clearing did not provide notice to Harleysville until March 30, 2020 which the Court found unreasonable.[5] Therefore, IP cannot use § 27-23-2 to claim coverage via Land Clearing's rights.

## D.    Counterclaims (Breach of Contract and Bad Faith) and Duty to Indemnify

As the Court has found that Harleysville had no duty to defend, IP's counterclaims for breach of contract and bad faith necessarily fail.

Next, Harleysville argues that if it owes no duty to defend in the underlying action, it also owes no duty to indemnify IP or Land Clearing as the duty to defend is more extensive than the duty to indemnify. IP argues that Harleysville's request for declaratory relief as to its duty to indemnify is premature.

The duty to defend is determined by the injured party's allegations against the insured,

---

[5] Even now, Land Clearing does not assert a claim of coverage as it has failed to answer and default was entered. *See* Docs. 25, 27.

whereas an insurer's duty to indemnify is determined by the insured's actual conduct. *Tanner*, 874 So. 2d at 1066. Harleysville is correct that the duty to defend is generally broader than the duty to indemnify. *See Hartford*, 928 So. 2d at 1013. Yet, an insurer's duty to indemnify its insured depends on "the facts adduced at the trial of the action" – i.e., the final resolution of the underlying action. *Id*. (finding no duty to defend but holding that determination on duty to indemnify was "premature"); *see also J.B.D. Constr., Inc. v. Mid-Continent Cas. Co.,* 571 F. App'x 918, 927 (11th Cir. 2014) (recognizing that duty to indemnify is dependent on final judgment, settlement, or final resolution of underlying action).

Admittedly, if the sole basis for denying the duty to defend was the pollution exclusion, it might be that the question of indemnity *could* be premature. Alabama and Eleventh Circuit case law is mixed on the subject. However, in this particular situation, as the Court also found that IP and Land Clearing violated the notice requirement, there are no facts that could be found at trial that would change the indemnity result. The failure to provide timely notice of the Alabama Action was fatal for the duty to defend and dictates an identical fatal result to the duty to indemnify in *both* the Alabama Action and the Tennessee Action. Therefore, the Court is able to make a finding that Harleysville has no duty to indemnify Land Clearing or IP for either action.

## V.  CONCLUSION

Based on the foregoing analysis, *Plaintiff's Motion for Judgment on the Pleadings on its Claims for a Declaratory Judgment Against All Defendants and on Defendant International Paper Co.'s Counterclaims* (Doc. 40) is **GRANTED** and *Defendant International Paper Company's…Cross Motion for Judgment on the Pleadings* (Doc. 55) is **DENIED**. Declaratory judgment is rendered that Harleysville does not owe coverage to IP for the Alabama Action and has no duty to defend or indemnify IP against that action. Declaratory judgment is also rendered

that Harleysville does not owe coverage to Land Clearing for the Tennessee Action and has no duty to defend or indemnify Land Clearing against that action.   IP's counterclaims are dismissed as a result of the declaratory judgment.

In addition, the Clerk entered default against JRD Contracting & Land Clearing, Inc. on August 27, 2020 (Doc. 27) and John R. Dailey, Sr. and JRD Contracting, Inc. on May 7, 2021.  At this time, the Court finds no hearing is necessary under Fed. R. Civ. P. 55(b) and default judgment is appropriate consistent with the findings for declaratory judgment on the pleadings.  This resolves all matters involving the Policies at issue from Harleysville.

Final judgment will issue separately pursuant to Fed. R. Civ. P. 58.

**DONE** and **ORDERED** this 7th day of October, 2022.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE